U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

**Mar 20 - 2024**

John M. Domurad, Clerk

UNITED STATES DISTRICT COURT

Northern District of New York

6th Judicial Division

| | | |
|---|---|---|
| _____ ) | | |
| JANE DOE, JOHN DOE, ) | | Case No.3:24-cv-274 (MAD/ML) |
| JOHN DOE, JANE DOE ) | | |
| ) | | |
| Plaintiffs ) | | |
| ) | | |
| -against- ) | | **AMENDED COMPLAINT** |
| ) | | |
| ) | | |
| JONATHAN REES aka GREG ELLIS ) | | |
| aka JOHNATHAN REES aka JONNY REES ) | | |
| aka JACOB LORENZO ) | | |
| ) | | |
| Defendant ) | | |
| _____ ) | | |

Plaintiff, Jane Doe et al pro se, as and for their Complaint hereby alleges, upon information and

belief, as follows:

## PRELIMINARY STATEMENT

1.  June 4th 2022, Plaintiff met JONATHAN REES aka GREG ELLIS aka JOHNATHAN

    REES aka JONNY REES aka JACOB LORENZO ("Defendant") on X (formally known as

    Twitter) who love bombed Plaintiff for months until an intimate relationship was

    established between them, abruptly ending after Defendant assaulted Plaintiff, and

    physically, mentally, emotionally and financially abused Plaintiff at his home beginning

    Thanksgiving Day 2022 leading to Plaintiff filing police reports to New York State Police,

the FBI and Chenango Sheriffs, with a family offense hearing scheduled in Broome Family Court on April 17th 2024 with Plaintiff asking for the issuance of a permanent restraining order against him for all four Plaintiffs in this action against him.

2.  November 2022, Defendant sexually exploited Jane Doe minor who was 12 years old at the time, hugging her inappropriately, insisting on stroking her long hair while making sounds of pleasure, and climbing into bed with Jane Doe minor pulling her close into him to lie her head on his chest in an intimate embrace not appropriate between a grown man of 56 years old and a 12 year old girl, creating duress for Jane Doe minor, John Doe minor who witnessed this unlawful act reporting to Jane Doe that Defendant is a creep.

3.  February 2023, when Plaintiff stepped away from Defendant he attempted intense love bombing, when that didn't work, he threatened suicide. These manipulation tactics did work on Plaintiff who became physically, mentally, emotionally hurt and drained by his threats to end his life and Plaintiff had no choice but to cut off all communication with Defendant in March 2023, at which time Defendant followed through on earlier threats to destroy Plaintiff and hurt her family, ongoing until the present day.

4.  After Plaintiff cut all ties in February 2023, Defendant continued to reach out to minor Jane Doe to be friends, referring to her as Dear Princess (Jane) grooming her and attempting to create a rift between Mother and Daughter. Defendant did not send cards to boys, only interested in being friends with a young girl, Jane Doe.

5.  In February 2023, Defendant sent threats to Plaintiff stating "they were in danger", "her reactivity would get them killed", "Keep your children safe" and similar disturbing messages over iMessage, Signal and Beacon.

6.  Fake accusations were filed against Plaintiff in Chenango County on 8th August 2023 with Defendant contacting Plaintiff's board members, business associates, crew members

working with Plaintiff on Film Projects reporting that she had attempted to murder Defendant, sharing Plaintiff was dangerous, mentally ill with a personality disorder, drug addict, abused her children, which Defendant also reported to CPS multiple times and Children's Schools sharing the exclusive websites of Plaintiff set up by Defendant with falsehoods and edited videos of Plaintiff trying to show her in a nefarious light to turn people against Plaintiff and destroy her business, her family and intentionally hurt Plaintiff. As a result, board members removed themselves from Plaintiff's business, contractors and crew from Plaintiff's latest Film project, also removed from Sales Agent and Distribution after they were sent the website with falsehoods and distorted edited videos to fit Defendant's narrative against Plaintiff.

7.      Accordingly, Plaintiff brings this action seeking injunctive, declaratory, and monetary relief against Defendant for intentional infliction of emotional distress, intentional interference with prospective economic advantage, and tortious interference with contract/prospective economic advantage.


## THE PARTIES

8.      Plaintiffs are residents of the County of Broome, State of New York.

9.      Plaintiff is a 23 year Film Veteran working in the Entertainment Industry as a Director, Writer and Producer, relying heavily on her reputation to earn a living to provide for her three minor children as their sole financial provider.

10.     Defendant Jonathan Rees aka Greg Ellis is a resident of the County of Kane, State of Illinois. His mailing address is 101, 1770 S.Randall Road, Suite A, Geneva IL. 60134-4646.

11.     Defendant Jonathan Rees aka Greg Ellis transacted business in the State of New York, contacted multiple people in the Entertainment Industry based in California and in New York State with the intention of interfering with Plaintiff's business and was aware that his

actions would directly affect a New York resident, and is the subject of this court's long arm jurisdiction statute.

## JURISDICTION AND VENUE

12.   This action is brought pursuant to 28 U.S.C § 1332(a)(1) based upon Diversity of Citizenship because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and it is between a citizen of New York and a citizen or subject of a different state.

13.   This action is also brought pursuant to 28 U.S.C. § 1391, federal question and pursuant to 18 U.S.C. § 2261A, and the Federal Child Abuse Prevention and Treatment Act (CAPTA) which prohibits anyone from committing an act of physical, sexual or mental injury upon a child.

14.   Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Northern District of New York is the Judicial District in which a substantial part of the events forming the basis of the Complaint occurred, where a substantial part of the evidence involved in the subject action is situated, and where the majority of the witnesses to the events forming the basis of the Complaint reside. Furthermore, Defendant meets the requisite minimum contacts for jurisdiction in this District.

## FACTUAL ALLEGATIONS

15.   Plaintiff first met Defendant on X in June 2022. Defendant initially emailed Plaintiff and asked for her number for Parties to talk on the phone and they spoke a couple of days later for three hours. Defendant introduced himself as Greg Ellis a 54 year old actor and producer who was very close friends with Johnny Depp, the CEO of a charity he founded called Children and Parents United ("CPU") and Owner/CEO of production company

Monkey Toes, which Defendant stated was an extremely successful production house working on active projects with Johnny Depp, Alec Baldwin, Kiefer Sutherland, Demi Moore, Andy Garcia, Sharon Stone and Stephen Fry with a film "The Respondent" green lit produced by Adam Fogelson. Plaintiff was initially struck by Defendant's respectful nature and kind words. Defendant kept up this charade for several months before his true colors began to show.

16. First, Plaintiff came to realize Defendant's real name was not Greg Ellis, but Jonathan Rees and that his charity CPU and his production house Monkey Toes were not successful, but in dire straits, just about to fold from poor mismanagement by Defendant.

17. Defendant pleaded with Plaintiff to help him stating he was a flawed man, not good in business, who was in an unholy mess due to his Divorce from his ex-wife, suffering from PTSD, but believed with Plaintiff's help, CPU and his Film/TV projects could be turned around positively.

18. By this time, Defendant had already firmly inserted himself into Plaintiff's life. Defendant asked Plaintiff to buy him a car as he was stuck at his remote home with an electric car that could only go 30 miles before recharging, began using her Amazon account stating he lost his banned for life over a misunderstanding with a female Amazon driver at his previous address in Culver City, Los Angeles, along with her Wegman's app to order himself groceries and alcohol worth thousands of dollars, even asking Plaintiff to share her location with him at all times as he was concerned about her safety and needed to know where she was.

19. The parties' relationship continued with Plaintiff helping Defendant in all aspects of his life, running his charity, his productions with the promise of payment.

20. On November 7th 2022, Defendant asked Plaintiff for $15,000 to pay legal fees, but wouldn't explain the details only stating it was because he defended Johnny Depp in his civil action against Amber Heard and some women were now targeting him due to Defendant's support. A few hours later Defendant called Plaintiff again begging for $15,000

stating he would do the same for Plaintiff if Plaintiff ever needed his help and without it Defendant would be destroyed. Plaintiff stood firm and said no with Defendant then blaming Plaintiff for him losing his legal case. Defendant called Plaintiff again an hour later and said he was sorry and asked for forgiveness, divulging some truth that the legal case was in fact in relation to his ex-girlfriend who he had broken off with in March 2022 alleging she had abused him and he was a victim of domestic violence spanning years, insisting Plaintiff go on a remote meeting with him so he could share audios from fights with his ex-girlfriend when he alleged she stabbed him with a knife, cutting his finger as he was holding his hand up to defend his face when he alleges she attacked his face. Given Plaintiff wouldn't help Defendant financially, Defendant manipulated Plaintiff into attending his hearing scheduled on November 8th 2022 in Los Angeles Superior Court on his behalf to explain to the Judge that the Defendant only got served on 7th November by Sgt. O'Hara, Chenango Sheriff and to request an extension. Defendant never takes no for an answer and Plaintiff reluctantly agreed to go to the Court and do what Defendant had asked. Defendant is not struggling financially, he just doesn't like to use his own money, when Defendant can manipulate others to pay his legal fees, fine dining, rent et cetera for him.

21. Defendant lost his case against his ex-girlfriend who supplied damning evidence to the Court that she was in fact abused by Defendant, and included extortion, threats to send out explicit images and set up an "exclusive website" of her with the intention to destroy her if she didn't do what he said. Defendant acted out on his threats and his ex-girlfriend was awarded a three year restraining order against him.

22. Defendant receiving another restraining order against him by another woman after his ex-wife was awarded a Domestic Violence Restraining Order previously to protect herself and their children from Defendant caused Plaintiff to lose income due to association to Defendant and him being cancelled in the Entertainment Industry with his family court case

and outcome circulating on social media leading to projects in the works being shut down after months of Plaintiff working on Defendant's projects with promises of payment.

23. Defendant invited Plaintiff to stay at his home on more than one occasion love bombing Plaintiff for four months until Plaintiff finally agreed to visit him for a weekend in October 2022. In early November 2022, Defendant told Plaintiff that he had invited a few people to his property for Thanksgiving 2022, including Thomas and Suzanne Harrison, his Talent Manager, which extended an invitation to Plaintiff, her minor children and their German Shepherd dog Wolfie. On arrival Plaintiff discovered they were the only guests at his property in the middle of nowhere, where Defendant committed multiple acts of violence towards Plaintiff, along with mental, physical, emotional and financial abuse, and child sexual exploitation and child abuse of her daughter Jane Doe minor aged 12 at the time, and child endangerment using an illegal firearm knowing Defendant was prohibited under Federal and New York State Law due to Title 18 Mentally Defective, and animal abuse of Plaintiff's dog Wolfie with Defendant leaving him outside in freezing conditions and hitting him.

24. Shortly after arriving at Defendant's home, he informed Plaintiff that his rent deposit of $3,500 had bounced by his ex-landlady Debbie Bernstein and he didn't understand why she would do that and even though Plaintiff was a guest at his home for Thanksgiving break, he insisted on Plaintiff paying him $3,000. Too embarrassed to say no, unsure what would happen if Plaintiff did, Plaintiff sent Defendant the money via Apple Pay.

25. Defendant yelled and was verbally abusive daily towards Plaintiff from November 24th 2022 until December 6th with Plaintiff attempting to leave his home multiple times, forced instead into high-stake conversations that began to wear on Plaintiff.

26. On one occasion over Thanksgiving 2022, Defendant slammed Plaintiff's MacBook down hard onto Plaintiff's hands hurting her fingers making her cry due to the pain for what Defendant perceived as Plaintiff not paying attention to Defendant when he was talking to her.

27. On another occasion during Thanksgiving break, Plaintiff woke up at just after 2am to find the Defendant standing over Plaintiff holding a cigar in his hand watching her, extremely drunk, intimidating Plaintiff who had become very scared of Defendant with his unstable, abusive and aggressive behavior, with Defendant pulling the sheets and covers off Plaintiff ongoing for 2 hours until eventually Defendant forced Plaintiff out of bed by pulling her up by her shoulder and her hair still holding his cigar, trapping her neck and face at one point with his hand and forearm after he fell over on to Plaintiff in a drunken state with the cigar ash falling on Plaintiff's face. With no more energy to fight off Defendant, Plaintiff now lying on the floor from being dragged out of bed, finally succumbed and went downstairs to talk only to be emotionally, mentally and verbally abused for 3 hours by the Defendant covering what she did wrong that day, how to improve on her communication, relationships, how she was a bad mom, not doing her job as a producer, how she needed to become a better writer to work with him, and most importantly, how Plaintiff had broken the Golden Rules, which were unforgivable and the Defendant would not tolerate.

28. When Defendant met minor Plaintiffs for the first time at his home on November 24th 2022, Defendant stated he was struck by how stunning John Doe was, but became mesmerized by Jane Doe and how beautiful she was, stating she was like a princess with long hair, insisting on stroking it while making sounds of pleasure. Unsure what to do, Jane Doe minor would slowly move away from Defendant towards Plaintiff to seek comfort and security that she was safe from this stranger who had quickly become obsessed with her.

29. During Thanksgiving Break 2022, Defendant would start drinking each day around 1pm, by 3pm Defendant would be extremely drunk, and would start yelling at Plaintiff for not cooking the peas the way he said to cook them, or for not resolving an issue he had with his ex-landlady with Defendant using Plaintiff's phone to send threatening texts to Debbie Bernstein in order to get his rent deposit back, which he regarded as "his money that she was stealing from him" and "she would return it or else", along with his obsession that it was the Plaintiff's fault "the copycat" which Defendant calls his ex-girlfriend, who won

against him and if Plaintiff had just given Defendant the $15,000 he asked for, Defendant wouldn't have another DVRO against him, with hours on a daily basis of incoherent verbal abuse from Defendant directed to Plaintiff. Defendant has access to hundreds of thousands of dollars, if not a million dollars or more.

30. During Thanksgiving break, Defendant would create a drama out of any small thing, for example, a stool not being pushed back into the right place after minor Plaintiff's finished eating, then would yell abuse at Plaintiff from a few minutes to hours, seeming to catch himself and would switch to shouting out "please don't hurt me" as he ran away from Plaintiff up to Plaintiff minors insisting on cocooning minors, Jane Doe, John Doe and John Doe all in one room with Defendant hugging them tight explaining to them that their mother was having a panic attack, a mental breakdown and Defendant would protect them from Plaintiff, insisting that Plaintiff wasn't acting rationally and Plaintiff needed mental intervention. This happened on multiple occasions.

31. During Thanksgiving break, Defendant insisted on playing Monopoly with Plaintiffs. When Defendant started to lose, he changed the rules and refused to let anyone leave the table even though the game had been going on for hours and at 3am Jane Doe and John Doe minors were falling asleep at the table, but Defendant wouldn't let them leave and go to bed. Eventually Plaintiff accepted that the game couldn't be played fairly and unless Defendant won, the night of hell would continue for longer and shortly thereafter Defendant won, insisting he had never lost a game of Monopoly in his life, not ever.

32. While intoxicated during Thanksgiving break, Defendant pulled out a loaded rifle insisting on hunting beavers with minor boys, which Plaintiff objected strongly to resulting in Defendant ridiculing Plaintiff that her boys weren't men, but too soft "mummy's boys" and he would make men of them. Plaintiff in fear of their safety refused to let them go hunting with Defendant who went hunting for Beavers alone stating they were ruining his land.

33. Another evening during Thanksgiving break 2022, Defendant was beyond outrageous towards Plaintiff with verbal abuse, leading to Plaintiff telling Defendant "enough is

enough and they were leaving right now" and when Plaintiff left the kitchen, Defendant
yelled after  Plaintiff that she was selfish, a low class bitch who had mental issues, and had
no choice but to stay because he had invited Matthias Wesner over for dinner and he
wouldn't allow Plaintiff to embarrass him by Plaintiff not being there when Matthias
arrived, and also expected Plaintiff to cook. At this moment, Ring notified Defendant that
someone was on his property and it was Matthias Wesner arriving for dinner. Defendant
handed Plaintiff his cocktail and told her not to embarrass Defendant or the rupture would
deepen. Plaintiff and Plaintiff minors were introduced to Defendant's guest who told
Plaintiff his name was Matthias Wesner, explaining to Plaintiff that he owned a production
company in Sidney, New York and a Bagel Factory and was introduced to Defendant from
their mutual friend Ronnie DeVito in the Summer of 2022.

34.  Defendant and Plaintiff went into the kitchen alone and Defendant told Plaintiff that he
accepted her apology for forcing him to get angry towards her, stating they can heal the
rupture quickly and grabbed hold of Plaintiff tightly stating they were best friends and for
her to please stay, that he loved her cooking and asked how long it would take for her to
make the Thai Curry Soup. Defendant directing where everyone should sit, insisting
Plaintiff sat next to him opposite Matthias Wesner. After the meal had finished and Plaintiff
minors were excused from the table, Plaintiff, Matthias Wesner and Defendant sat at the
table drinking Sambucca. Matthias and Defendant talked freely and openly about guns in
front of Plaintiff, with Matthias stating he was a firearms expert and proudly said he had
selected the guns for Defendant who had guns at his property the whole time Plaintiff and
Plaintiff minors stayed at his home. At this stage Plaintiff didn't know that Defendant
wasn't eligible for firearms under Title 18 Mentally Defective, but Defendant knew he
wasn't eligible given the FBI/DOJ had sent him a rejection letter denying his gun
application on August 24th 2022. Knowing this information didn't prevent Defendant from
breaking Federal and New York State Laws, possessing firearms illegally endangering
Plaintiff and Plaintiff minors. Over months on FaceTime Defendant would call Plaintiff

while out hunting Beavers late at night stating "I'm bringing you with me on my adventures" when he shot the Beavers on his land. Plaintiff found it disturbing seeing Beavers shot and screaming in pain with Defendant taking multiple shots to kill each Beaver. Defendant seemed to enjoy the Beavers suffering. Plaintiff struggled to comprehend these acts of violence towards animals, which included Defendant using Semtex to blow up whole families, and setting their damns on fire to kill them all, even the younglings. Having lived by the beach for many years with no need for a firearm nor having to shoot wildlife, Plaintiff tried to keep an open mind given Defendant's property was in a remote location with Defendant explaining that he had to control them or his property would be overrun, however, Plaintiff was extremely fearful and disturbed by the way Defendant smirked and seemed to get off on killing animals.

35. During Thanksgiving Break 2022, John Doe minor and Jane Doe minor spoke with Plaintiff in Defendants kitchen and told Plaintiff that Defendant was a creep, that something wasn't right with him, that he kept touching Jane Doe inappropriately hugging her and climbed into bed with Jane Doe minor, insisting he put his arm around her and pulled her close into his body and chest to read her a bedtime story. John Doe saw Defendant get into bed with Jane Doe minor unable to help her other than the two of them locking eyes for a moment with Jane Doe shocked unable to respond in fear of Defendant. Both afraid of Defendant and what might happen next, they asked Plaintiff if we could all leave his house immediately. Plaintiff told them we couldn't leave right then as it was dark, but she had found a hotel for the next day in Vestal, NY and they'd leave in the morning.

36. Plaintiff trying to keep the situation light, thanked Defendant for having them, but they'd be leaving earlier than planned the next morning. Defendant did not take the news well, crying, acting like a wounded animal. Plaintiff trying to keep the Defendant happy and to appease him for fear of retaliation, agreed with Defendant to come and stay with him for Christmas and New Years Eve even though she had no intention of doing so, but given how afraid they'd become of Defendant, it was important to leave without any more aggressive

outbursts or violence from Defendant either to Plaintiff, minor children, nor leave under a dark cloud with Plaintiff starting to acknowledge the consequences of walking away from Defendant.

37.  Plaintiff packed up her Vitamix and other personal items she brought with her for their stay and placed it by the front door in a Trader Joe's shopping bag and asked her children to pack their bags and started to pack up her belongings ready to leave early.

38.  As a filmmaker, Plaintiff frequently carries her camera equipment with her and given Plaintiff and Defendant were working together on documentary series called The Respondent, written and episodic breakdown by Plaintiff, planning to be in the area for months to interview experts, film B roll footage, Plaintiff had brought over $100k worth of camera gear, iMac and MacBooks with her from Los Angeles to Defendant's house.

39.  Plaintiff asked Defendant for access to the cabin, which had been assigned as the production office for documentary series, The Respondent, with a signed lease in place for 2 years signed by Defendant. Defendant still refused to give Plaintiff access to the production office to retrieve her camera equipment, iMac and MacBooks. The next morning while Plaintiff was showering, Defendant violently removed Jane Doe minor, John Doe minor, John Doe minor from his house, their belongings half packed half unpacked all onto his driveway along with Plaintiff's dog Wolfie, insisting Plaintiff gets out the shower, who had to throw on clothes quickly, then was guided down the stairs to outside where Plaintiff minors were standing and behind Plaintiff, the front door closed and Defendant closed all the curtains in the house.

40.  Plaintiff feeling humiliated and also embarrassed for her three children who had never been subjected to this level of dysfunction in their lives, begun packing all their personal belongings into their bags, taking a couple of hours in the freezing cold to pack everything up, then pack it all into the car so it would fit in one trip. On packing, Plaintiff noticed her items she had packed and left at the front door, including her Vitamix and accessories worth over $1500 were not with her belongings and Defendant was refusing to give her access to

her camera equipment, iMac and MacBooks still locked away in Defendant's cabin. As of this date, Defendant never gave Plaintiff back her Vitamix, accessories and other expensive items.

41.   For three days, Plaintiff contacted Defendant pleading for her camera equipment back given it was used for her role as a producer and director, along with iMac and MacBooks for post production and she started to become concerned Defendant wouldn't give her items back. Plaintiff happened to receive a call from a friend of the Defendant, Andrew Bishop with Plaintiff seeking his advice on what to do. Andrew Bishop told Plaintiff if she didn't get her film equipment back within the next day or two, Plaintiff would never see it again. They talked about how Defendant would respond to Plaintiff calling the Chenango Sheriff's, which Plaintiff didn't want to do unless it was absolutely necessary knowing Defendant would retaliate against her given Chenango Sheriff's knew of Defendant as they had conducted a welfare check on him on 24th October 2022 with Deputy Sheriff Justin Davy when Defendant was suicidal after receiving a Temporary Domestic Violence Restraining Order for extorting and sending out Revenge Porn of his ex-girlfriend insisting she contacts him after she broke off the relationship with him on August 21st 2022. Defendant applied for a gun 3 days later on August 24th 2022 denied by the FBI/DOJ due to Defendant being mentally defective under Title 18. Plaintiff sent a text message on iMessage insisting Defendant allows Plaintiff to pick up her film equipment at 10am the next day or she'd have no choice but to call Chenango Sheriff.

42.   Defendant filmed the encounter with Chenango Sheriffs and published videos online stating he was being victimized and someone was trying to "SWAT" him and was interviewed about his experience by Andy Signore from Popcorned Planet, The Umbrella Guy and others who believed his story with Defendant crying reaffirming over again that he had no idea why this had happened to him or who would do this to him, when his ex-girlfriend was simply trying to serve him Court papers with the TRO.

43. Defendant angrily responded to Plaintiff stating he was at the New York State Police in Chenango County filing a police report against his ex-girlfriend and shamed Plaintiff for lacking in compassion and empathy to help Defendant who was portraying himself as a victim to Law Enforcement, and asked Plaintiff why she hated him, when all Plaintiff wanted to do was to retrieve her film equipment from his property needed for Plaintiff's job creating anxiety and stress for Plaintiff.

44. Plaintiff arrived at Defendant's property around the 9th of December 2022 alone to avoid any further violence inflicted on Plaintiff minors, shortly after 11am to find all her camera equipment, iMac, MacBooks outside on his driveway in the rain. On documenting, select items were missing from the inventory, a 5K monitor cracked and other camera equipment unpacked by Defendant damaged in the rain. Plaintiff asked Defendant for her missing items back, including an Apple Magic Trackpad, Apple Mouse and Wireless Keyboard, Defendant denied taking them, only to give them back to Plaintiff a few months later in February 2023.

45. Around December 10th, Defendant in a drunken state called Plaintiff and told her that she needed to be careful who she speaks to about what happened at his home and insisted that Andrew Bishop was a snake, rat and a clown and told Plaintiff not to speak with Ajit Ninan, Andrew Bishop, Thomas Harrison or Eric Foster ever again, that he couldn't explain why, just that they weren't good for Plaintiff to know and she had to trust him insisting she promise not to speak with them again and block them from her life. Defendant then added that he had video footage of Plaintiff and Plaintiff minors recorded on his Ring cameras secretly situated around his home, including the bedrooms.

46. Plaintiff immediately felt violated and sick to her stomach, feeling extorted and concerned he might have videos of Plaintiff and her children naked coming out of the shower, changing for bed. This explained how Defendant knew information from Plaintiff's private phone calls conducted while in the privacy of the bedroom while Plaintiff stayed at Defendant's home.

14

47. In December 2022, Plaintiff blocked Defendant on X (formally Twitter) and on Instagram, followed by Facebook and LinkedIn in January 2023 and has been blocked ever since.

48. From December 2022 through to February 2023, Defendant would call Plaintiff multiple times in a day, one call after the other until eventually Plaintiff gave in and picked up or when ignored by Plaintiff, Defendant would start calling people around her, even calling her pending Landlord Thomas D'Angelo to speak with Plaintiff, who on one occasion happened to be with Plaintiff and his brother at their rental property, who received a call from Defendant and passed the phone to Plaintiff saying "it's Greg for you", which became an embarrassing situation with Defendant refusing to accept Plaintiff's decision to stop all communication with Defendant.

49. Defendant reached out to Plaintiff's minor daughter to become friends after Plaintiff had cut all ties with Defendant. He wrote a card to her with Dear Princess (Jane), grooming Plaintiff minor writing how kind she is and Defendant was glad to know her.

50. Defendant left multiple voicemails for Plaintiff insisting he loved her, reciting IF by Rudyard Kipling knowing it was a favorite of Plaintiff.

51. Plaintiff ignored Defendant love bombing her, with Defendant changing his strategy to being depressed and suicidal, which pulled Plaintiff back into Defendant's world in order to help him with hours of phone calls with Plaintiff talking Defendant off the ledge with Defendant crying hysterically, stating to Plaintiff that he believed, Private Investigator Kevin Berman was going to kill him and his ex-girlfriend was out to ruin him and if he didn't end up dead, he'd be in prison for the rest of his life. Plaintiff was traumatized by the Defendant's behavior.

52. On the 24th, 25th and 26th February 2023, at the pleading of Defendant, Plaintiff visited Defendant at his Barn situated within his property with Defendant refusing to talk just to write back and forth on a piece of paper convinced he was being recorded even asking Plaintiff if she was wearing a wire and to leave her phone in the car turned off. Due to below freezing levels and no heat in the Barn, after an hour, Plaintiff told Defendant she

was leaving as she was freezing cold. Defendant agreed to move to his Cabin in order for Plaintiff to help him through his depression and suicidal tendencies. Defendant had text Plaintiff prior to her arriving that his house was bugged, but had no explanation as to how he knew.

53.   Defendant fell off the sofa at one point rolling around on the floor crying that his life was over. Plaintiff was deeply concerned by Defendant's actions unable to sleep over this time period not sure on the best way to help Defendant with Defendant refusing mental intervention. Plaintiff helped Defendant off the ground on more than one occasion only to have Defendant feign shaking and falling over again, that begun to look staged and Plaintiff started to see a pattern of abuse and manipulation by Defendant.

54.   Plaintiff had never experienced anyone playing with her emotions the way Defendant did in a cruel intentionally callous way lying to Plaintiff about being suicidal and was not aware at this stage that it was a pattern of abuse mastered by Defendant spanning years and a manipulation tactic used by Defendant to get what he wants from multiple women.

55.   Defendant has been institutionalized in various mental asylums multiple times spanning years with Law Enforcement called to assist many of Defendant's victims who allege Defendant committed domestic violence against them. Defendant wouldn't be arrested, instead Law Enforcement would handcuff him on 5150 and 5152 holds suffering with mental illness and take him directly to facilities where to Plaintiff's knowledge and belief, Defendant has been diagnosed with narcissistic tendencies, sociopathy, bipolar, depression, PTSD and an undiagnosed personality disorder, believed to have gotten substantially worse over the years due to Defendant's Cocaine and Alcohol addiction, with Defendant treated in an addiction facility many times over years.

56.   Defendant was suffering from delusions believing he was under surveillance and insisted when Plaintiff visited his home to check on Defendant while he was on suicide watch that Plaintiff didn't park in Defendant's driveway, but had to park down the road (a mile away) because "they are watching our every move". If Plaintiff didn't succumb to Defendants

wishes, Defendant would become extremely violent very quickly and why Plaintiff went along with Defendant's requests avoiding Defendant escalating out of control.

57. On February 27th 2023, Defendant showed up at Plaintiffs home around 7am after she had not responded to Defendant's communication since she had left him the night before completely exhausted and broken down by months of abuse and drama by Defendant with Plaintiff unable to cope with anymore. Plaintiff was relieved her children had already left for school and living remotely Plaintiff was afraid of what Defendant might do given he seemed unstable, on edge and asked Plaintiff to turn off her phones, iPad, iMac believing "they" would locate him through Plaintiff's devices.

58. Defendant sat down on Plaintiff's sofa shaking, with Plaintiff having to appease Defendant to avoid any escalation if she didn't help him. Defendant spent three hours confessing all his crimes to Plaintiff, including that he had stolen covid money from the State of California while a resident in New York, public donations for his charity, production investment from investors, plus, that he had got into a fight over a loaded gun with Producer Eric Foster from Upfire Digital and his employee Max Lodien who witnessed this altercation in Chenango County, with Defendant believing he was going to prison for falsifying his gun application stating to Plaintiff that he didn't answer truthfully about his drug addiction or that he had been mentally institutionalized.

59. Defendant knew Plaintiff was doubting Defendant and his charade was falling apart. For weeks he had wanted Plaintiff to introduce Defendant to her wealthy friends giving him a legal fund to fight ongoing cases he said were active and to hire a criminal attorney for potential criminal cases against him.

60. Plaintiff had recently received 3 Ring cameras for security and forgetting they were on, captured confessions from Defendant's alleged crimes, unintentionally.

61. In or around early March, Plaintiff received a phone call from Dennis Vacco who told Plaintiff he was a Criminal Attorney instructed on behalf of Defendant who had told his attorney we both need representation and we should both be represented by the same

attorney. Dennis Vacco gave advice to Plaintiff talking about private details in order to represent Plaintiff.

62. Plaintiff knew she hadn't committed any crimes, it was just Defendant, but given how afraid she was of Defendant, she didn't want to tell him no directly knowing it would lead to violence, instead she answered Dennis Vacco's questions for almost 2 hours in regards to Defendant's ex-girlfriend, Defendant's gun crimes, covid relief funds, CPU money that Defendant had told Plaintiff he had misappropriated in 2020, 2021 and 2022 and how Plaintiff had met Matthias Wesner, with Dennis Vacco telling Plaintiff he knew about her immigration status from his client (Defendant) and as a non US citizen, Plaintiff could be deported and held in detention if she spoke with Law Enforcement about his client and to keep away in order to protect Plaintiff. This didn't come across as protecting Plaintiff, but threatening Plaintiff and her family unit.

63. Dennis Vacco followed up with this same information in an email to Plaintiff. Being told this by Defendant's attorney scared Plaintiff, which seemed to be the idea given all three of Plaintiff's children, John Doe, John Doe and Jane Doe are American Citizens from birth as Plaintiff's ex-husband is American and would prove problematic uprooting children if Plaintiff was forced to leave the United States and return to the United Kingdom of Great Britain, which she would never do without her children.

64. Dennis Vacco asked if Plaintiff had spoken to the FBI. Plaintiff said yes, because she had in February 2023 knowing crimes had been committed by Defendant against Plaintiff and others. Dennis Vacco also asked if Plaintiff had spoken with New York State Police. Plaintiff said yes, she had, but didn't elaborate further.

65. During these conversations with Defendant's attorney, Defendant continued to send more text messages to Plaintiff "this is my last will and testament", "I'll be dead in a month", "your reactivity will get us killed", "we are in danger", "keep your children safe" with hundreds of texts sent to Plaintiff in a similar theme. Plaintiff felt very afraid not just for herself and her children, but for Defendant who still had firearms illegally, threatening

suicide, acting in a delusional state texting "they were going to kill him" and "he would rather die than go to prison". Plaintiff felt Defendant suffered with serious mental illnesses that could lead to further delusions by Defendant and the deaths of innocent people with Defendant claiming he was connected to the Founder of Proud Boys.

66. In early March, Plaintiff decided to cut Defendant totally off physically ill from the stress of dealing with Defendant, mentally and emotionally drained, financially impacted due to Defendant destroying projects and Plaintiff subjected to abuse on social media by women groups due to Plaintiff's association with Defendant believing Plaintiff was supporting Defendant after he received another DVRO against him for domestic violence, extortion and sending out revenge porn against his ex-girlfriend.

67. Plaintiff does not support Defendant or his misogynistic behavior towards Plaintiff and other women.

68. Defendant continued to send suicidal texts and Plaintiff unable to cope with the burden alone, finally had no choice but to file a report in-person with New York State Police on March 8th 2023 on Main Street in Endwell, Upstate New York, sharing text messages with the Troopers and providing them with a full statement that Plaintiff was afraid and needed protection from Defendant who would retaliate when he found out Plaintiff had filed a police report against him. The Troopers felt it necessary to do a Welfare Check on Defendant given the suicide text messages from Defendant. Plaintiff immediately started panicking and was reassured this report would be anonymous and Defendant would never know it was Plaintiff.

69. Within 2 hours of Plaintiff's report, Defendant retaliated contacting people in Plaintiff's circle to ruin her reputation, blaming and shaming Plaintiff to volunteers within the charity, including Patrick Brennan and Brian Vandiver.

70. Defendant kept reaching out to people within Plaintiff's circle to find out information about her living arrangements, who Plaintiff was working with spanning months becoming an obsession for Defendant stalking and harassing Plaintiff spanning March 8th 2023 until

August 8th 2023 leading Plaintiff to file further police reports in May, June and July 5th 2023 with the FBI, NYSP and Chenango Sheriffs, with final conversations with Lt. Barton and Sgt. Justin Davy on the 19th July 2023 when Chenango Sheriffs retrieved a firearm from Defendant.

71. Between March 2023 until August 2023, Plaintiff was contacted by Eric Foster a few times informing Plaintiff that he had read statements submitted by Defendant from Plaintiff to Los Angeles Superior Court against Defendant's ex-girlfriend with Defendant using Plaintiff's identity, submitting her signature fraudulently from a letter intended to go out to guests for the doc series, seemingly to support Defendant's claims that he was the victim of crimes, not his ex-girlfriend. Plaintiff reported these crimes to NYSP.

72.  Kevin Berman, private investigator for Defendant's ex-girlfriend reached out to Plaintiff and asked if they could talk, which Plaintiff agreed to do. Kevin Berman also sent two statements to Plaintiff via iMessage asking if she wrote the two statements. Plaintiff responded back she had not written the statements or signed them. Kevin Berman asked if Plaintiff had been with Defendant over Halloween 2022 in New York City as stated in Defendant's statement submitted to the court under oath at risk of perjury. Plaintiff said she had not been with Defendant, that she was in Los Angeles with her children for Halloween 2022 and could prove she was in Los Angeles not with Defendant in New York City like he claims. Defendant told Plaintiff he was at home avoiding Kevin Berman who Defendant said was trying to kill him.

73. Defendant told Plaintiff that Thomas Harrison, his Talent Manager, Totem pole, and his guiding light was checking in with him daily concerned by Defendant's accusations about Kevin Berman. Defendant stated "Tom is a close friend who would do anything for me, even lie to help and protect me and get me through these dark times. I wouldn't know what to do without him in my life."

74. On or about August 4th Plaintiff received signal messages from Defendant that disappeared within 5 seconds explaining to Plaintiff that Defendant was in a disaster, unable to resolve

for himself begging Plaintiff to help him sell his home, that he needed a strategy to pay off debts from people coming after him including doc series investors, his ex-girlfriend, charity workers who were owed money for work, his ex-landlady and would pay Plaintiff what she was due, unable to cope, overwhelmed, begging for help.

75. Plaintiff ignored him, but knew if she didn't respond, he would show up at any time night or day at her home with her three minor children out of school for the Summer holidays.

76. Plaintiff had already filed multiple reports to Law Enforcement with Trooper Reese telling Plaintiff at her home in Broome County on July 5th 2023 "they are a reactive agency" which Plaintiff interpreted to mean they'd do a great job of investigating Plaintiff or minors death, but wouldn't do anything to prevent or protect Plaintiffs from Defendant until a serious offense occurred. He told Plaintiff he didn't believe her.

77. Plaintiff felt there weren't any good options. First option, Plaintiff and minors could flee the State and disappear into hiding, slightly problematic with Plaintiff's career and minors liked their school, friends and didn't want to leave the area now they were in High School and felt settled. Second option, ignore Defendant knowing he would show up at Plaintiff's home as per his pattern while she was unprepared off guard at any time day or night and with Defendant potentially showing up in a delusional state, deemed a bad idea with minor children at home on Summer break leading to minors potentially being hurt if Defendant believed they were the enemy while suffering from another psychosis. Third option, wasn't great or ideal, but seemed the best decision at the time given the other two options.

78. Plaintiff on high alert, lacking in sleep, afraid for her family not in a position to make these decisions and wouldn't have had to if Law Enforcement had done their job and protected Plaintiff and Plaintiff minors from ongoing abuse and violence from Defendant with more than 6 months of stalking, harassment and death threats by Defendant towards Plaintiff with a history of abuse and violence towards Plaintiff since November 24th 2022, and child sexual exploitation towards Jane Doe minor, and child abuse, child endangerment, yet Defendant seemed to be protected by his friends in Law Enforcement, including Rubin

Roach, Chief of Norwich Police, Chenango County who went to Defendants house for dinner with his wife, and Defendant's girlfriend, Laura Greenman Heine during an active investigation into gun crimes, domestic violence, fraud, with an active 3 year DVRO against Defendant for domestic violence and revenge porn.

79.  Plaintiff believing there were no other viable options reluctantly agreed to go and see Defendant at his home in Chenango County at around 11am on August 7th 2023, turning around close to his home and instead going for a hike, mentally broken down, vomiting, clearing her head, not sure what was going on, could she be walking into a trap, did Defendant still have guns illegally. Plaintiff's mind was spinning.

80.  On August 8th 2023 believing she had no other choice but to go and help Defendant or suffer his delusional wrath putting her children in harms way when he showed up at her home, thinking if she helped him to sell his home and settle his debts, he'd pack up and leave the State and go and live with his girlfriend Laura Greenman Heine in Geneva, Kane County, Illinois State and Plaintiff would be finally left alone by Defendant with water under the bridge.

81.  Plaintiff followed Defendant's typical plan of her parking down the road due to his paranoia. Due to light rain, Plaintiff put on a lightweight black North Face jacket which was folded in a pouch stored in her day pack.

82.  Plaintiff was suffering with anxiety as she reached Defendants home, unsure if she was making the right decision knowing Defendant had kept his ex-girlfriend captive multiple times and also refused to let producer Eric Foster leave Defendant's home when Eric Foster and Defendant got into an altercation over a loaded firearm while staying at his home in November 2022.

83.  On arriving at the Barn, where Plaintiff had met Defendant every time she had visited his home during 2023, including throughout the suicidal watch, Plaintiff heard Defendant yelling on the phone, which from what Plaintiff heard was typical Defendant and almost word for word what he had yelled at Plaintiff on more than one occasion with Plaintiff

realizing she had made a mistake going there, that Defendant was never going to change, and doubted that if Plaintiff helped Defendant to sell the house and offered a payment strategy for him to settle debts, he still wouldn't pay anyone back. Plaintiff started to walk back down the side of the barn towards the main road when Defendant saw her and ran to the road to block her exit. Afraid, Plaintiff took precautionary measures to ensure she left Defendant's property alive.

84.  Defendant filed a complaint with Chenango Sheriffs against Plaintiff stating she tried to kill him, which is outlandish and completely false.

85.  Defendant sold his house for one cent shy of USD $1 million dollars and didn't pay Plaintiff what he owed her, or the other people he owed money to, instead he fled New York State for Illinois with all the proceeds from the sale of his property.

86.  On August 8th Defendant created a video of Plaintiff walking towards the road on his property and using dramatic music, outrageous copy, to insinuate that Plaintiff was an attempted murderer, dangerous, a fraudster, thief even setting up two websites sometime between August 8th 2023 and August 31st 2023 using Plaintiff's full name within the URL to discredit her with falsehoods sending flyers, websites and videos to Plaintiff minors friends in school to humiliate and embarrass Plaintiff minors, contacting CPS and their school stating unfounded claims that Plaintiff had abused minors, left them alone for weeks while filming resulting in minors being interviewed by various CPS officers multiple times, all deemed unfounded each time.

87.  Even though abuse, stalking, extortion, harassment, doxing, violence begun on November 24th 2022, Defendant escalated his obsession of Plaintiff by one thousand percent from August 8th 2023 until present day in order to hurt Plaintiff, destroy her career, create financial instability, reputation savaging, ruining her business relationships, to ensure no-one believed Plaintiff's allegations against Defendant.

88. Defendant is using aliases online including Jacob Lorenzo to abuse Plaintiff and has created a hate campaign and frenzy against Plaintiff with Defendant's narrative to damage Plaintiff and impact her livelihood, lifestyle and family unit.

89. Plaintiff is a witness against Defendant for his intentional criminal acts committed against his charity, hoodwinking the public for monetary donations, fraud and theft from sophisticated and unsophisticated investors who invested money in Defendant's projects under false pretenses, using Plaintiff to meet with investors to reassure them Defendant and his production company Monkey Toes were legit.

90. Plaintiff is a witness against Defendant for intentionally submitting fraudulent statements on behalf of Plaintiff while committing identify theft and forgery to Law Enforcement, Los Angeles Superior Court, and Chenango County Court submitting statements on Plaintiff's behalf without her consent or knowledge in order to win his case against his ex-girlfriend, even by Defendant intentionally committing crimes of fraud and perjury.

91. Defendant has caused Plaintiffs Emotional Distress, Privacy, and Dignitary Torts: Appropriation of name or likeness, Intrusion upon seclusion, False light, Public disclosure of private facts, along with child sexual exploitation of Jane Doe minor, child maltreatment, child endangerment, cyberstalking and ongoing abuse, bullying and harassment of all four Plaintiffs.

**FIRST CAUSE OF ACTION**

NY Penal Law § 260.10: Endangering the welfare of a child

92.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

93.   Defendant Mr. Rees knowingly acted in a manner likely to harm the physical, mental or moral welfare of Jane Doe minor who at the time of violations was under 17 years old with Doe

24

12 years old. Child endangerment does not only involve activities that place a child in physical danger, but also activities that put the mental and moral well-being of a child in jeopardy.

94.    Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

95.    Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to Jane Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Plaintiff putting herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark at risk of injury or death.

96.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.


**SECOND CAUSE OF ACTION**

NY Penal Law § 260.10: Endangering the welfare of a child


97.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

98.    Defendant Mr. Rees knowingly acted in a manner likely to harm the physical, mental or moral welfare of Jane Doe minor who at the time of violations was under 17 years old with Doe 12 years old. Child endangerment does not only involve activities that place a child in physical danger, but also activities that put the mental and moral well-being of a child in jeopardy.

99.   Defendant climbed into bed with Jane Doe minor while intoxicated frightening 12 year old Jane Doe, Defendant grooming her, stroking her hair and pulling Doe into his arms with her head resting on his chest in an intimate embrace normally for "lovers", with Doe silent, afraid not able to call out to Plaintiff or say anything to Defendant, who would talk frequently and brag about bedding virgins, including telling Plaintiff that Defendant bedded Catherine Zeta-Jones taking her virginity when she was 15 years old.

100.   Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**THIRD CAUSE OF ACTION**

NY Penal Law § 260.10: Endangering the welfare of a child

101.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

102.   Defendant Mr. Rees knowingly acted in a manner likely to harm the physical, mental or moral welfare of John Doe minor who at the time of violations was under 17 years old with Doe 13 years old. Child endangerment does not only involve activities that place a child in physical danger, but also activities that put the mental and moral well-being of a child in jeopardy.

103.   Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

104.     Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to John Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Plaintiff putting herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark at risk of injury or death.

105.     John Doe witnessed Defendant climbing into bed with his younger sister Jane Doe minor while intoxicated frightening 13 year old John Doe, who told Plaintiff that Defendant is a creep.

106.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## **FOURTH CAUSE OF ACTION**

NY Penal Law § 260.10: Endangering the welfare of a child

107.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

108.     Defendant Mr. Rees knowingly acted in a manner likely to harm the physical, mental or moral welfare of John Doe minor who at the time of violations was under 17 years old with Doe 16 years old. Child endangerment does not only involve activities that place a child in physical danger, but also activities that put the mental and moral well-being of a child in jeopardy.

109.     Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

110.     Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to John Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Plaintiff putting herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark at risk of injury or death.

111.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FIFTH CAUSE OF ACTION

### (Stalking/Cyberstalking) 18 U.S.C. § 2261A

### Against Defendant Jonathan Rees aka Greg Ellis

112.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

113.     From November 2022 until filing, Defendant with intent to kill, injure, harass, and intimidate "Jane Doe," used an interactive computer service, an electronic communication service, an electronic communication service of interstate commerce, and facilities of interstate and foreign commerce, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of Title 18, United States Code, Section 2261A(2).

114.     Defendant intent on destroying Doe, stalked Doe and all aspects of her life, setting up two exclusive websites to harm Doe and ruin her reputation with multiple amendments to his websites spanning months showing Defendant's obsession with Plaintiff. Defendant has been

adding further derogatory information to websites on a regular basis to continue to humiliate and harm Plaintiff with falsehoods and distorted facts ongoing as of filing action against Defendant in Federal Court showing Defendant did not make a one off mistake or is full of regret, but acted in a calculated and revengeful way in his pursuit to hurt and destroy Doe.

115.     Defendant clearly intent on harming Doe, created a flyer with falsehoods about Doe to negatively impact Plaintiff by sharing the flyer and website links electronically to Plaintiff's board members, business associates, talent management team, contractors working with Plaintiff on her film projects, friends and volunteers in his charity, and other industry people to cancel Doe in the Entertainment Industry and prevent her from distributing her projects.

116.     Defendant intent on revenge for what he perceives is betrayal by Doe, created a hate campaign on social media platforms against Doe using aliases, including Jacob Lorenzo, on X (formally known as Twitter) and Facebook, recruiting enablers to his campaign against Plaintiff to harm, embarrass and reputation savage Doe and her projects, destroying her Drone Business and standing as a Producer and Director in the Entertainment Industry.

117.     Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until her children turn 27 years old, impacting Plaintiff now and in the future.

118.     Defendant stated in video recorded on Trooper Winter's body cam footage that ICE were looking for Plaintiff, showing that Defendant is stalking Plaintiff to find out information about her immigration status.

119.     Defendant contacted Doe minor's school stating Doe was dangerous and harming her children creating chaos and causing harm to Doe with falsehoods.

120.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest,

attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SIXTH CAUSE OF ACTION

### (Stalking/Cyberstalking) 18 U.S.C. § 2261A

### Against Defendant Jonathan Rees aka Greg Ellis

121.   Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

122.   From December 2022 until filing, Defendant, with intent to harm, harass, and intimidate "Jane Doe minor," used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of Title 18, United States Code, Section 2261A(2).

123.   Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that she might be taken away from her mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm, sleeping in Mother's bed for over 4 months as of filing complaint in Federal Court due to needing to feel safe and secure at night.

124.   Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and Snapchat spreading the information around their school not aware their actions were wrong

given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming and bullying Doe, also subjected to extreme bullying by some of her peers from information on the website where Doe's name is noted, stating she was abused by her father, who Defendant shares is a convicted sex offender, resulting in harm, mental torture and emotional distress, with Doe afraid to go back to school for a period of time until the drama stopped and her confidence was restored.

125.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SEVENTH CAUSE OF ACTION

### (Stalking/Cyberstalking) 18 U.S.C. § 2261A

### Against Defendant Jonathan Rees aka Greg Ellis

126.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

127.    From August 2023 until filing, Defendant, with intent to harm, harass, and intimidate "John Doe minor," used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of Title 18, United States Code, Section 2261A(2).

128.    Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with

Doe's School Counselor on more than one occasion by more than one CPS Officer due to
Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for
Doe with Doe experiencing anxiety that he might be taken away from his mother. Defendant has
bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in
emotional, mental and physical harm.

129.    Defendant made sure the websites he set up about Plaintiff and the video he created to
build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were
sent to Plaintiff's children's friends who shared information with their peers on TikTok and
Snapchat spreading the information around their school not aware their actions were wrong
given they are children aged between 12 and 16 years old, with Defendant knowing exactly what
he was doing by befriending younglings to do his dirty work harming and bullying Doe, also
bullied by some of her peers resulting in harm, mental torture and emotional distress, not
wanting to go back to school for a period of time until the drama stopped and his confidence was
restored, referred to on websites and social media with Defendant stating in one post that
"April's ex-husband, father of her 3 children is a child rapist."

130.    Plaintiff demands judgment against Defendant in an amount to be determined upon the
trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well
as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful
conduct constituting a complete and reckless disregard for Doe together with interest, attorneys'
fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits
of all lower courts which would otherwise have jurisdiction.

## EIGHTH CAUSE OF ACTION

### (Stalking/Cyberstalking) 18 U.S.C. § 2261A

### Against Defendant Jonathan Rees aka Greg Ellis

131.    Plaintiff repeats and realleges each and every allegation in all of the preceding

paragraphs as if fully set forth herein.

132.    From August 2023 until filing, Defendant, with intent to harm, harass, and intimidate "John Doe minor," used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of Title 18, United States Code, Section 2261A(2).

133.    Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that he might be taken away from his mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm.

134.    Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and Snapchat spreading the information around their school not aware their actions were wrong given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming and bullying Doe, also bullied by some of her peers resulting in harm, mental torture and emotional distress, not wanting to go back to school for a period of time until the drama stopped and his confidence was restored, referred to on websites and social media with Defendant stating in one post that "April's ex-husband, father of her 3 children is a child rapist."

135.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful

conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## NINETH CAUSE OF ACTION

### (Child Maltreatment) New York Code Section 411-428

136.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

137.    From November 2022 until filing, Defendant, with intent to harm, harass, and intimidate "Jane Doe minor," abused her at his home in person and used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of Title 18, United States Code, Section 2261A(2).

138.    Defendant climbed into bed with Jane Doe minor while intoxicated frightening 12 year old Jane Doe, Defendant grooming her, stroking her hair and pulling Doe into his arms with her head resting on his chest in an intimate embrace normally for "lovers", with Doe silent, afraid not able to call out to Plaintiff or say anything to Defendant, who would talk frequently and brag about bedding virgins, including telling Plaintiff that Defendant bedded Catherine Zeta-Jones taking her virginity when she was 15 years old.

139.    Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

140.    Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to Jane Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Plaintiff putting

herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark at risk of injury or death.

141.    Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that she might be taken away from her mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm, sleeping in Mother's bed for over 4 months as of filing complaint in Federal Court due to needing to feel safe and secure at night.

142.    Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and Snapchat spreading the information around their school not aware their actions were wrong given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming and bullying Doe, also subjected to extreme bullying by some of her peers from information on the website where Doe's name is noted, stating she was abused by her father, who Defendant shares is a convicted sex offender, resulting in harm, mental torture and emotional distress, with Doe afraid to go back to school for a period of time until the drama stopped and her confidence was restored.

143.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys'

fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**TENTH CAUSE OF ACTION**

**(Child Maltreatment) New York Code Section 411-428**

144. Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

145.    From November 2022 until filing, Defendant, with intent to harm, harass, and intimidate "John Doe minor," abused him at his home in person and used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of Title 18, United States Code, Section 2261A(2).

146.    Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

147.    Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to John Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Plaintiff putting herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark at risk of injury or death.

148.    John Doe witnessed Defendant climbing into bed with his younger sister Jane Doe minor while intoxicated frightening 13 year old John Doe, who told Plaintiff that Defendant is a creep.

149.    Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that he might be taken away from his mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm.

150.    Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and Snapchat spreading the information around their school not aware their actions were wrong given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming and bullying Doe, also bullied by some of her peers resulting in harm, mental torture and emotional distress, not wanting to go back to school for a period of time until the drama stopped and his confidence was restored, referred to on websites and social media with Defendant stating in one post that "April's ex-husband, father of her 3 children is a child rapist."

151.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## ELEVENTH CAUSE OF ACTION

### (Child Maltreatment) New York Code Section 411-428

152.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

153.    From November 2022 until filing, Defendant, with intent to harm, harass, and intimidate "John Doe minor," abused him at his home in person and used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of Title 18, United States Code, Section 2261A(2).

154.    Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

155.    Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to John Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Plaintiff putting herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark at risk of injury or death.

156.    Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that he might be taken away from his mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm.

157.    Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and

Snapchat spreading the information around their school not aware their actions were wrong given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming and bullying Doe, also bullied by some of her peers resulting in harm, mental torture and emotional distress, not wanting to go back to school for a period of time until the drama stopped and his confidence was restored, referred to on websites and social media with Defendant stating in one post that "April's ex-husband, father of her 3 children is a child rapist."

158.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TWELFTH CAUSE OF ACTION

### (Harassment) NY PENAL LAW 240.26

### Against Defendant Jonathan Rees aka Greg Ellis

159.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

160.    From November 2022 until filing, Defendant with intent to kill, injure, harass, and intimidate "Jane Doe," in person and via an interactive computer service, an electronic communication service, an electronic communication service of interstate commerce, and facilities of interstate and foreign commerce, to engage in a course of harassing conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of New York Penal Law 240.26.

161.     Defendant intent on destroying Doe, stalked Doe and all aspects of her life, setting up two exclusive websites to harm Doe and ruin her reputation with multiple amendments to his websites spanning months demonstrating Defendant's harassment and obsession with Plaintiff. Defendant has been adding further derogatory information to websites on a regular basis to continue to humiliate and harm Plaintiff with falsehoods and distorted facts ongoing as of filing action against Defendant in Federal Court showing Defendant did not make a one off mistake or is full of regret, but acted in a calculated, vengeful and malicious way in his pursuit to hurt and destroy Doe.

162.     Defendant clearly intent on harming Doe, created a flyer with falsehoods about Doe to negatively impact Plaintiff by sharing the flyer and website links electronically to Plaintiff's board members, business associates, talent management team, contractors working with Plaintiff on her film projects, friends and volunteers in his charity, and other industry people to cancel Doe in the Entertainment Industry and prevent her from distributing her projects.

163.     Defendant intent on revenge for what he perceives is betrayal by Doe, created a hate campaign on social media platforms against Doe using aliases, including, but not limited to, Jacob Lorenzo, on X (formally known as Twitter) and Facebook, recruiting enablers to his campaign against Plaintiff to harm, embarrass and reputation savage Doe and her projects, destroying her Drone Business and standing as a Producer and Director in the Entertainment Industry.

164.     Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until her children turn 27 years old, impacting Plaintiff now and in the future.

165.     Defendant stated in video recorded on Trooper Winter's body cam footage that ICE were looking for Plaintiff, showing that Defendant is harassing and stalking Plaintiff to find out information about her lifestyle, including her whereabouts and immigration status.

166.     Defendant contacted Doe children's school stating Doe was dangerous and harming her children creating chaos and causing harm to Doe with falsehoods.

167.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

### THIRTEENTH CAUSE OF ACTION

**(Harassment) NY PENAL LAW 240.26**

**Against Defendant Jonathan Rees aka Greg Ellis**

168.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

169.    From November 2022 until filing, Defendant, with intent to harm, harass, and intimidate "Jane Doe minor," abused her at his home in person and used an interactive computer service, an electronic communication service, to engage in a course of harassing conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of New York Penal Law 240.26.

170.    Defendant climbed into bed with Jane Doe minor while intoxicated frightening 12 year old Jane Doe, Defendant harassing and grooming her, stroking her hair and pulling Doe into his arms with her head resting on his chest in an intimate embrace normally for "lovers", with Doe silent, afraid not able to call out to her Mother or say anything to Defendant, who would talk frequently and brag about bedding virgins, including telling Plaintiff that Defendant bedded Catherine Zeta-Jones taking her virginity when she was 14 years old.

171.    Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally

defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

172.    Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to Jane Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Doe protected by her Mother who put herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark drunk at risk of injury or death.

173.    Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that she might be taken away from her mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm, sleeping in Mother's bed for over 4 months as of filing complaint in Federal Court due to needing to feel safe and secure at night.

174.    Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and Snapchat spreading the information around their school not aware their actions were wrong given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming, harassing and bullying Doe, also subjected to extreme bullying by some of her peers from information on the website where Doe's name is noted, stating she was abused by her father, who Defendant shares is a convicted sex offender, resulting in harm, mental torture and emotional distress, with Doe afraid to go back to school for a period of time until the drama stopped and her confidence was restored.

175.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## FOURTEENTH CAUSE OF ACTION

### (Harassment) NY PENAL LAW 240.26

### Against Defendant Jonathan Rees aka Greg Ellis

176.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

177.     From November 2022 until filing, Defendant, with intent to harm, harass, and intimidate "John Doe minor," abused him at his home in person and used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of New York Penal Law 240.26.

178.     Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

179.     Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to John Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Doe's Mother putting herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark drunk at risk of injury or death or witnessing other horrors.

180.    John Doe witnessed Defendant climbing into bed with his younger sister Jane Doe minor while intoxicated frightening 13 year old John Doe, who told Plaintiff that Defendant is a creep.

181.    Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that he might be taken away from his mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm.

182.    Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and Snapchat spreading the information around their school not aware their actions were wrong given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming and bullying Doe, also bullied by some of her peers resulting in harm, mental torture and emotional distress, not wanting to go back to school for a period of time until the drama stopped and his confidence was restored, referred to on websites and social media with Defendant stating in one post that "April's ex-husband, father of her 3 children is a child rapist."

183.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**FIFTEENTH CAUSE OF ACTION**

**(Harassment) NY PENAL LAW 240.26**

**Against Defendant Jonathan Rees aka Greg Ellis**

184.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

185.     From November 2022 until filing, Defendant, with intent to harm, harass, and intimidate "John Doe minor," abused him at his home in person and used an interactive computer service, an electronic communication service, to engage in a course of conduct that caused, attempted to cause, and would reasonably be expected to cause substantial emotion distress to Doe in violation of New York Penal Law 240.26.

186.     Defendant endangered Doe by possessing and using firearms illegally around Doe intoxicated knowing he was prohibited from possessing firearms under Title 18 mentally defective as labeled by the FBI/DOJ due to Cocaine addiction and involuntary stays in Mental Institutions suffering with a myriad of mental illness spanning years.

187.     Defendant authorizing a child who is less than 17 years old to engage in a dangerous activity hunting beavers that involved a substantial risk of danger to John Doe minor life or health with Defendant inebriated after drinking non-stop for more than 5 hours. Doe's Mother put herself in harms way against Defendant, standing her ground to prevent Defendant from taking minor out hunting in the dark drunk at risk of injury or death to Doe or witnessing other horrors.

188.     Defendant filed deliberately misleading information to CPS on numerous occasions deemed unfounded after investigation by multiple CPS Officers with information on file until Doe turns 27 years old, impacting Doe now and in the future. Doe interviewed by CPS with Doe's School Counselor on more than one occasion by more than one CPS Officer due to

Defendant filing multiple fake reports, resulting in embarrassment, mental, emotional harm for Doe with Doe experiencing anxiety that he might be taken away from his mother. Defendant has bullied and harmed Doe, a minor with an unconscionable attack against Doe resulting in emotional, mental and physical harm.

189.   Defendant made sure the websites he set up about Plaintiff and the video he created to build a narrative that Plaintiff was an "attempted murderer", a fraud, a thief, and dangerous were sent to Plaintiff's children's friends who shared information with their peers on TikTok and Snapchat spreading the information around their school not aware their actions were wrong given they are children aged between 12 and 16 years old, with Defendant knowing exactly what he was doing by befriending younglings to do his dirty work harming and bullying Doe, also bullied by some of her peers resulting in harm, mental torture and emotional distress, not wanting to go back to school for a period of time until the drama stopped and his confidence was restored, referred to on websites and social media with Defendant stating in one post that "April's ex-husband, father of her 3 children is a child rapist."

190.   Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## SIXTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### Against Defendant Jonathan Rees aka Greg Ellis

191.   Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

192.   Defendant has engaged in the intentional, extreme, and outrageous conduct of possessing and disseminating videos of Plaintiff's and sharing two exclusive websites about Plaintiff with Falsehoods, Privacy, and Dignitary Torts: Appropriation of name or likeness, Intrusion upon seclusion, False light, and Public disclosure of private facts.

193.   Defendant also contacted Plaintiff's board members, contractors, film crew, management team, volunteers Plaintiff worked alongside, and Plaintiff's friends falsely reporting that Plaintiff was dangerous, an attempted murderer, fraud and thief.

194.   Defendant did all of this knowing that his decision to do so would have irreversible, lifelong consequences for all Plaintiffs and their mental well-being.

195.   Defendant's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

196.   Defendant's sole purpose in sharing the videos and websites was to harass and/or embarrass Plaintiffs and cause her harm.

197.   Defendant intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress. Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

198.   As a direct and proximate result of Defendant's conduct, Plaintiff suffered severe emotional distress.

199.   Defendant acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

200.   Here, the acts of Defendant were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that his actions would harm Plaintiff's reputation and mental well-being, that, in addition to all the damages inflicted upon Plaintiff and in addition to all the measure of relief to which Plaintiff may properly be entitled herein, Defendant should also be required to pay punitive damages to punish him for his reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be

determined by the trier of fact, in order to deter him and others similarly situated from engaging in such conduct in the future.

201.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## **SEVENTEENTH CAUSE OF ACTION**

### **(Intentional Infliction of Emotional Distress)**

### **Against Defendant Jonathan Rees aka Greg Ellis**

202.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

203.    Defendant has engaged in the intentional, extreme, and outrageous conduct of endangering, abusing and harming "Jane Doe minor", with Falsehoods, Privacy, and Dignitary Torts: Appropriation of name or likeness, Intrusion upon seclusion, False light, and Public disclosure of private facts.

204.    Defendant falsely reporting that Plaintiff was dangerous, an attempted murderer, fraud and thief directly impacts Doe inflicting intentional emotional distress with long term ramifications.

205.    Defendant acted knowing that his decision to do so would have irreversible, lifelong consequences for Doe and her mental well-being.

206.    Defendant's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

207.    Defendant's sole purpose in sharing the videos and websites to Doe's school friends, school and CPS was to harass, bully and/or embarrass Doe and cause ongoing harm to Doe.

208.    Defendant intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress. Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

209.    As a direct and proximate result of Defendant's conduct, Doe suffered severe emotional distress.

210.    Defendant acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

211.    Here, the acts of Defendant were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that his actions would harm Doe's family name, potential remove Doe from Plaintiff, and impact her mental well-being, that, in addition to all the damages inflicted upon Doe and in addition to all the measure of relief to which Doe may properly be entitled herein, Defendant should also be required to pay punitive damages to punish him for his reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter him and others similarly situated from engaging in such conduct in the future.

212.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## EIGHTEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)

### Against Defendant Jonathan Rees aka Greg Ellis

213.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

214.    Defendant has engaged in the intentional, extreme, and outrageous conduct of endangering, abusing and harming "John Doe minor", with Falsehoods, Privacy, and Dignitary Torts: Appropriation of name or likeness, Intrusion upon seclusion, False light, and Public disclosure of private facts.

215.    Defendant falsely reporting that Plaintiff was dangerous, an attempted murderer, fraud and thief directly impacts Doe inflicting intentional emotional distress with long term ramifications.

216.    Defendant acted knowing that his decision to do so would have irreversible, lifelong consequences for Doe and her mental well-being.

217.    Defendant's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

218.    Defendant's sole purpose in sharing the videos and websites to Doe's school friends, school and CPS was to harass, bully and/or embarrass Doe and cause ongoing harm to Doe.

219.    Defendant intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress. Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

220.    As a direct and proximate result of Defendant's conduct, Doe suffered severe emotional distress.

221.    Defendant acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

222.    Here, the acts of Defendant were so egregious and were done so clearly with malice and/or reckless indifference in the face of a perceived risk that his actions would harm Doe's family name, potentially removing Doe from Plaintiff, and impacting his mental well-being, that, in addition to all the damages inflicted upon Doe and in addition to all the measure of relief to which Doe may properly be entitled herein, Defendant should also be required to pay punitive

damages to punish him for his reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter him and others similarly situated from engaging in such conduct in the future.

223.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.


## NINETEENTH CAUSE OF ACTION

### (Intentional Infliction of Emotional Distress)
### Against Defendant Jonathan Rees aka Greg Ellis


224.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

225.    Defendant has engaged in the intentional, extreme, and outrageous conduct of endangering, abusing and harming "John Doe minor", with Falsehoods, Privacy, and Dignitary Torts: Appropriation of name or likeness, Intrusion upon seclusion, False light, and Public disclosure of private facts.

226.    Defendant falsely reporting that Plaintiff was dangerous, an attempted murderer, fraud and thief directly impacts Doe inflicting intentional emotional distress with long term ramifications.

227.    Defendant acted knowing that his decision to do so would have irreversible, lifelong consequences for Doe and her mental well-being.

228.    Defendant's conduct was so extreme in degree and so outrageous in character that it goes beyond all possible bounds of decency.

229.    Defendant's sole purpose in sharing the videos and websites to Doe's school friends, school and CPS was to harass, bully and/or embarrass Doe and cause ongoing harm to Doe.

230.    Defendant intended to cause severe emotional distress or recklessly disregarded the likelihood that such conduct would tend to cause severe emotional distress. Such outrageous behavior is beyond the limits of decency and is intolerable in a civilized society.

231.    As a direct and proximate result of Defendant's conduct, Doe suffered severe emotional distress.

232.    Defendant acted with the intent to cause severe emotional distress, or alternatively, disregarded the substantial probability that his actions would cause severe emotional distress.

233.    Here, the acts of Defendant were so egregious and were done so clearly with malice and/ or reckless indifference in the face of a perceived risk that his actions would harm Doe's family name, potentially removing Doe from Plaintiff, and impacting his mental well-being, that, in addition to all the damages inflicted upon Doe and in addition to all the measure of relief to which Doe may properly be entitled herein, Defendant should also be required to pay punitive damages to punish him for his reckless conduct in the further amount greater than the jurisdictional limit of all lower courts to be determined by the trier of fact, in order to deter him and others similarly situated from engaging in such conduct in the future.

234.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## TWENTIETH CAUSE OF ACTION

**Violation of the Victims of Gender-Motivated Violence**

**Against Defendant Jonathan Rees aka Greg Ellis**

235.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

236.    The above-described conduct of Defendant Mr. Rees, including, but not limited to, Mr. Rees physical assaults and repeated abuse of Plaintiff in New York State, constitutes a "crime of violence" and a "crime of violence motivated by gender" against Plaintiff.

237.    The above-described conduct of Defendant Mr. Rees, including, but not limited to, Mr. Ree's repeated abuse and physical assaults of Plaintiff in New York State, constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

238.    Defendant Corporation Monkey Toes and Charity Children and Parents United helped enable Mr. Rees's commission of the crime of violence motivated by gender, and are therefore also liable.

239.    As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Plaintiff has sustained and will continue to sustain, monetary damages, physical injury, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

240.    The above-described conduct of Defendant Mr. Rees constitutes Child Sexual Exploitation of Jane Doe minor, an offense under New York State Law and Federal Law.

241.   Pursuant to § 10-1105(a), this cause of action is timely because it is commenced within "one year and four months after November 24th, 2022."

## TWENTY FIRST CAUSE OF ACTION

### Violation of the Victims of Gender-Motivated Violence
### Against Defendant Jonathan Rees aka Greg Ellis

242.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

243.    The above-described conduct of Defendant Mr. Rees, including, but not limited to, Mr. Rees repeated abuse of "Jane Doe minor" in New York State, constitutes a "crime of violence" and a "crime of violence motivated by gender" against Doe

244.    The above-described conduct of Defendant Mr. Rees, including, but not limited to, Mr. Ree's repeated abuse Plaintiff in New York State, constitutes a "crime of violence" against Plaintiff and is a "crime of violence motivated by gender" as defined in § 10-1103 ("The term 'crime of violence' means an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction," and "The term 'crime of violence motivated by gender' means a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.").

245.    As a direct and proximate result of the aforementioned crime of violence and gender-motivated violence, Doe has sustained and will continue to sustain, pain and suffering, and serious psychological and emotional distress, entitling her to an award of compensatory and punitive damages, injunctive and declaratory relief, attorneys fees and costs, and other remedies as this Court may deem appropriate damages, as set forth in § 10-1104.

246.    The above-described conduct of Defendant Mr. Rees constitutes Child Sexual

Exploitation of Jane Doe minor, an offense under New York State Law and Federal Law.

247.    Pursuant to § 10-1105(a), this cause of action is timely because it is commenced

within "one year and four months after November 24th, 2022."


**TWENTY SECOND CAUSE OF ACTION**

**Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New**

**York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq*. ("NYSHRL")**

**Against Defendant Jonathan Rees aka Greg Ellis**


248.  Plaintiff repeats and realleges each and every allegation in all of the preceding

paragraphs as if fully set forth herein.

249.  Defendants discriminated against Plaintiff on the basis of her gender in violation

of the NYSHRL by subjecting Plaintiff to disparate treatment based upon her gender, including,

but not limited to, subjecting her to sexual assault and/or harassment, and a hostile work

environment.

250.  As a direct and proximate result of Defendants' unlawful discriminatory conduct

in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, monetary and/or

economic harm for which she is entitled to an award of monetary damages and other relief.

251.  As a direct and proximate result of Defendants' unlawful discriminatory conduct

in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental

anguish and emotional distress for which she is entitled to an award of monetary damages and

other relief.

252.  Defendants' unlawful and discriminatory actions were intentional, done with

malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights

under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

253.  This action is timely because it falls within CPLR § 214-j and is brought during

the one-year time period set forth in that section. The claims brought herein allege intentional and negligent acts and/or omissions for physical, psychological, and other injury suffered as a result of conduct that would constitute abuse under New York Penal Law, and such acts and/or omissions were committed against Jane Doe when she was over eighteen years of age.

## TWENTY THIRD CAUSE OF ACTION

**Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human Rights Law, N.Y. Exec. Law §§ 290,** *et seq***. ("NYSHRL")**

**Against Defendant Jonathan Rees aka Greg Ellis**

254.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

255.     Defendants discriminated and harassed "Jane Doe minor" on the basis of her gender in violation of the NYSHRL by subjecting Doe to disparate treatment within Defendant's home based upon her gender, including, but not limited to, subjecting her to grooming and/or harassment, and a hostile environment while Doe stayed at Defendant's home.

256.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Doe has suffered, and continues to suffer and she is entitled to an award of monetary damages and other relief.

257.    As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of the NYSHRL, Plaintiff has suffered, and continues to suffer, severe mental anguish and emotional distress for which she is entitled to an award of monetary damages and other relief.

258.    Defendants' unlawful and discriminatory actions were intentional, done with malice and/or showed a deliberate, willful, wanton and reckless indifference to Plaintiff's rights under the NYSHRL for which Plaintiff is entitled to an award of punitive damages.

259.   This action is timely because it falls within CPLR § 214-j and is brought during

the one-year time period set forth in that section. The claims brought herein allege intentional and negligent acts and/or omissions for physical, psychological, and other injury suffered as a result of conduct that would constitute abuse under New York Penal Law, and such acts and/or omissions were committed against Jane Doe when she was under the age of eighteen years old.

## **TWENTY FOURTH CAUSE OF ACTION**

### **(Violation of Civil Rights Law §52-b)**

### **Against Defendant Jonathan Rees aka Greg Ellis**

260.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

261.    Plaintiff had a reasonable expectation that the videos when captured while at Mr. Rees property at the invitation of Mr. Rees, would remain private, along with Ring videos captured while staying at his property, at his invitation that Plaintiff had no knowledge or gave consent to be recorded.

262.    The content disclosed by Defendant contained the Plaintiff walking on Defendant's property edited to look nefarious and to share falsehoods about Plaintiff.

263.    Defendant disseminated and published videos of Plaintiff without Plaintiff's permission or consent.

264.    Defendant threatening to disclose videos recorded of Plaintiff captured at his home without her knowledge or consent is a violation of Doe's civil rights §52-b.

265.    Defendant extortion threats to Plaintiff of sharing content captured in the privacy of his Guest bedroom were for the purpose of harassing, annoying, or alarming Plaintiff and in retaliation for filing police reports against him and decision to cut off communication.

266.    As a result of Defendant's actions, Plaintiff demands judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, injunctive relief preventing Defendant from disseminating

videos or images from videos captured, and such other relief as the Court deems equitable and just.

### TWENTY FIFTH CAUSE OF ACTION

**(Violation of Civil Rights Law §52-b)**

**Against Defendant Jonathan Rees aka Greg Ellis**

267.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

268.    Jane Doe minor had a reasonable expectation of privacy that she would not be captured on video by Mr. Rees while staying at his property at the invitation of Mr. Rees.

269.    Defendant threatening to disclose videos recorded of Doe at his home without their knowledge or consent is a violation of Doe's civil rights §52-b)

270.    Defendant extortion threats are for the purpose of harassing, annoying, or alarming Doe and in retaliation for her mother filing police reports against him and decision to cut off communication.

271.    As a result of Defendant's actions, Plaintiff demands judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, injunctive relief preventing Defendant from disseminating videos or images from videos captured, and such other relief as the Court deems equitable and just.

### TWENTY SIXTH CAUSE OF ACTION

**(Violation of Civil Rights Law §52-b)**

**Against Defendant Jonathan Rees aka Greg Ellis**

272.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

273.     John Doe minor had a reasonable expectation of privacy that he would not be captured on video by Mr. Rees while staying at his property at the invitation of Mr. Rees.

274.     Defendant threatening to disclose videos recorded of Doe at his home without their knowledge or consent is a violation of Doe's civil rights §52-b)

275.     Defendant extortion threats are for the purpose of harassing, annoying, or alarming Doe and in retaliation for his mother filing police reports against Defendant and decision to cut off communication.

276.     As a result of Defendant's actions, Plaintiff demands judgment for any actual damages which exceed the jurisdictional limits of all lower courts which would have otherwise have jurisdiction of this matter, together with damages for pain and suffering and punitive damages, attorney's fees, costs of this litigation, injunctive relief preventing Defendant from disseminating videos or images from videos captured, and such other relief as the Court deems equitable and just.


## TWENTY SEVENTH CAUSE OF ACTION

### (Violation of Civil Rights Law §52-b)

### Against Defendant Jonathan Rees aka Greg Ellis

277.     Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

278.     John Doe minor had a reasonable expectation of privacy that he would not be captured on video by Mr. Rees while staying at his property at the invitation of Mr. Rees.

279.     Defendant threatening to disclose videos recorded of Doe at his home without their knowledge or consent is a violation of Doe's civil rights §52-b)

280.     Defendant extortion threats are for the purpose of harassing, annoying, or alarming Doe and in retaliation for his mother filing police reports against Defendant and decision to cut off communication.

281.    As a result of Defendant's actions, Plaintiff demands judgment for any actual damages
which exceed the jurisdictional limits of all lower courts which would have otherwise have
jurisdiction of this matter, together with damages for pain and suffering and punitive damages,
attorney's fees, costs of this litigation, injunctive relief preventing Defendant from disseminating
videos or images from videos captured, and such other relief as the Court deems equitable and
just.

## TWENTY EIGHTH CAUSE OF ACTION

### (Tortious Interference with Contract/Prospective Economic Advantage)
### Against Defendant Jonathan Rees aka Greg Ellis

282.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

283.    In placing false calls and sending emails to Plaintiff's talent management agency,
publicists, business associates, and distributors directly and via Defendant's enablers throughout
New York State, California State, United Kingdom and Canada, Defendant interfered with
Plaintiff's affiliations and prospective affiliations and business opportunities.

284.    In interfering with her affiliations and prospective affiliations, Defendant acted with the
sole purpose of harming Plaintiff or used improper or illegal means that amounted to a crime or
independent tort.

## TWENTY NINETH CAUSE OF ACTION

### (Intentional Interference with Prospective Business Relations)
### Against Defendant Jonathan Rees aka Greg Ellis

285.    Plaintiff repeats and realleges the allegations stated above as if fully set forth herein.

286.    Plaintiff is a Professional Filmmaker working in the Entertainment Industry as a Director, Producer and Writer, affiliated with multiple talent agencies and production houses throughout New York State and Los Angeles, California.

287.    In her position, Plaintiff is entrusted with cast and talent private information, content and personal matters, with her reputation central to her job as a Director and Producer.

288.    Defendant knew that falsely reporting that Plaintiff was an "attempted murderer, dangerous, thief, fraudster" would adversely impact her ability to retain and find new work and engaged in such conduct for that purpose.

289.    As a result of Defendant's actions, Plaintiff has been damaged.

290.    Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Plaintiff for her severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Plaintiff, together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.


### THIRTY CAUSE OF ACTION

**Forced Labor under 18 U.S.C. § 1589, *et seq*.**

**Against Defendant Jonathan Rees aka Greg Ellis**


291.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

292.    Plaintiff is a victim of Forced Labor by Mr. Rees within the meaning of 18 U.S.C. § 1589 and is therefore entitled to bring a civil action under 18 U.S.C. § 1595.

293.    The Defendants' acts and omissions, taken separately and/or together, as outlined

above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendant Mr. Rees groomed Plaintiff luring her to relocate from Los Angeles, California to New York State to work from his assigned Production Office with Mr. Rees on his documentary series, The Respondent. Defendant benefitted from Plaintiff's creativity, business acumen coercing Plaintiff to work on his documentary series project The Respondent, his feature film The Respondent, all under the illusion of fair pay, along with Plaintiff forced into running his charity Children and Parents United, dealing with Defendant's daily personal needs, all without pay. Section 1589 broadens the definition of the kinds of coercion that might result in forced labor with Plaintiff captive to Mr. Rees's demands and desires working 16 hour days, 7 days per week. At all relevant times, Defendant participated in and facilitated the harboring and grooming of Plaintiff induced by force, fraud, or coercion.

294.    The Defendant has financially and otherwise benefited as a result of these acts and omissions.

295.    Defendant, his company Monkey Toes and his charity Children and Parent's United formed a venture as defined by 18 U.S.C. § 1591 given that they constituted a"group of two or more individuals associated in fact, whether or not a legal entity."

296.    As a direct and proximate result of Defendant's unlawful conduct as alleged hereinabove, Plaintiff has suffered physical injury, severe emotional distress and anxiety, humiliation, embarrassment, economic harm and other consequential damages.

297.    Plaintiff also seeks reasonable attorneys' fees as provided under 18 U.S.C. § 1595(a).

## THIRTY FIRST CAUSE OF ACTION

### Forgery

298.    Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

299.     Defendant intentionally submitted fraudulent statements on behalf of Plaintiff while committing forgery to Law Enforcement in New York State, Los Angeles Superior Court, and Chenango County Court stating statements/affidavits submitted by Defendant were signed by Plaintiff, without her consent or knowledge in order to win his case against his ex-girlfriend.

300.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

## THIRTY SECOND CAUSE OF ACTION

### Identity Theft

301.     Plaintiff repeats and realleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

302.     Defendant intentionally used Plaintiff's identity to submit fraudulent statements and affidavits to Law Enforcement in New York State, Los Angeles Superior Court, and Chenango County Court submitting statements on Plaintiff's behalf without her consent or knowledge in order to benefit and win his case against his ex-girlfriend,

303.     Plaintiff demands judgment against Defendant in an amount to be determined upon the trial of this action; said amount being sufficient to compensate Doe for his severe injuries as well as an amount sufficient to punish Defendant for his willful, wanton, reckless, and unlawful conduct constituting a complete and reckless disregard for Doe together with interest, attorneys' fees, costs, and disbursements in this action; and said amount exceeding the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

304.   Plaintiff requests permission from the Court to file such additional causes of action Plaintiff deems necessary as a result of further investigation by Plaintiff and the production of Defendant's discovery responses.

## JURY DEMAND

305.   Plaintiff hereby demands a trial of this action by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgement in their favor and against Defendant, containing the following relief:

A.      An award of damages against Defendant in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiffs for all non-monetary and/or compensatory damages, including, but not limited to, compensation for her emotional distress;

B.      An injunction and order permanently restraining Defendant from disseminating Plaintiff's intimate images and videos taken on his Ring cameras while Plaintiffs stayed at his home without Plaintiffs knowledge, permission or consent;

C.      An award of punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

D.      Prejudgment interest on all amounts due;

E.      An award of costs that Plaintiffs have incurred in this action, including, but not limited to, expert witness fees, as well as Plaintiffs' reasonable attorneys' fees and costs to the fullest extent permitted by law; and

F.      Such other and further relief as the Court may deem just and proper.

Dated: Broome County, New York

     March 20, 2024

                                    Respectfully submitted,

                                    _Jane Doe_

                                    _____

                                        Jane Doe