U.S. DISTRICT COURT – N.D. OF N.Y.

FILED

May 30 - 2024

John M. Domurad, Clerk

## UNITED STATES DISTRICT COURT

### Northern District of New York

### 6th Judicial Division

|  |  |
|---|---|
| ———————————————— ) | |
| JANE DOE, JOHN DOE, ) | Case No. 3:24-cv-00274 |
| JOHN DOE, JANE DOE ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| -against- ) | |
| ) | **LETTER TO JUDGE** |
| ) | |
| JONATHAN REES aka GREG ELLIS ) | |
| aka JOHNATHAN REES aka JONNY REES ) | |
| aka JACOB LORENZO ) | |
| ) | |
| Defendant ) | |
| ———————————————— ) | |

Your Honor,

I do understand your reasoning and appreciate your underlying principle to protect my children, however, with the utmost respect, I do not agree with your order ECF 26 and kindly request a review of your decision.

Almost 100 years ago, the Supreme Court rejected the notion that every child is a ward and the notion that any organ of government, state or federal, has some sort of freestanding power to gainsay parents' choices. See Pierce v. Soc'y of Sisters, 268 U.S. 510, 534–35 (1925) ("The child is not the mere creature of the state; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations."). Rather, the Court has recognized that parents' interests "in the care, custody, and control of their

1

children" is "perhaps the oldest of the fundamental liberty interests." Troxel v. Granville, 530 U.S. 57, 65 (2000) (plurality op.). Consequently, the court cannot "infringe on the fundamental right of parents to make child rearing decisions simply because a . . . judge believes a 'better' decision could be made." Id. at 72–73 (plurality op.).

28 U.S.C. § 1654 gives children the choice to litigate pro se or by counsel. Under your order, § 1654 offers minors a Hobson's choice: litigate with counsel, or don't litigate at all. It's a heads-I-win-tails-you-lose approach to § 1654 and plainly defies the text of the statute and centuries of Anglo-American law dating as far back as the Magna Carta. This position would have baffled the Founders. As the Supreme Court explained in Faretta, "the basic right to self-representation was never questioned" at the Founding, and "the notion of compulsory counsel was utterly foreign to [the Founders]." 422 U.S. at 827–28, 833; see also id. at 834 ("To force a lawyer on a [litigant] can only lead him to believe that the law contrives against him.").

Fundamentally, your order seems to misunderstand both the law and the parent-child relationship. As to the law, I believe your decision confuses who has the authority to exercise the § 1654 pro se right (and other legal rights) when a parent acts as their child's legal guardian and sues on behalf of her child. State and federal law assign to parents the right to "represent the child in legal action" and "make other decisions of substantial legal significance" on the child's behalf. NY Family Code. It is thus incorrect to say that there's no "individual choice" for "courts to respect." Cheung, 906 F.2d at 61. It's the parent's choice on the child's behalf—a choice written law recognizes and requires the Court to honor. So while the § 1654 pro se right is the child's, the parent as legal guardian is authorized to exercise that right on her child's behalf.

As to the parent-child relationship, I believe this is misunderstood too. Parents make decisions all the time for their children, including decisions that children could not make on their own. See, e.g., NY Family Code (recognizing various rights and duties of parents); see also Smith v. Org.

of Foster Fams. for Equal. & Reform, 431 U.S. 816, 841 n.44 (1977) (noting that children "lack the capacity to make [certain] decision[s], and thus their interest is ordinarily represented in litigation by parents or guardians"); Parham v. J.R., 442 U.S. 584, 602 (1979) (explaining that the law "presume[es] that parents possess what a child lacks in maturity, experience, and capacity for judgment required for making life's difficult decisions"). Parents sometimes use their rights to give legal effect to the child's wishes. See, e.g., 10 U.S.C. § 505(a) (prohibiting 17-year-olds from enlisting in the armed forces, even if they want to, without parental consent); NY Family Code (recognizing parent's "right to consent to the child's . . . enlistment in the armed forces"). Other times, parents use their rights to do things their children might not like. See, e.g., NY Family Code (recognizing parent's "right to the services and earnings of the child"); id. § 151.001(a)(2) (recognizing parent's "duty of . . . reasonable discipline of the child"); id. § 151.001(a)(10) (recognizing parent's "right to make decisions concerning the child's education").

On your order, none of the judgments parents make on a daily basis deserve Courts respect because none are "true choices" for minors. That cannot be so. Minors lack capacity to make "true choices" until they reach the age of majority, which is precisely why the law recognizes parents' rights to make myriad decisions for them—including whether to litigate without an attorney. It would make little sense to "reserve[] this particular litigation choice—whether to be represented by counsel—to child litigants without explanation for why this litigation choice should be set apart from all other choices routinely reserved to children's legal representatives," like "whether, when, and where to bring suit, what claims to advance, what information to disclose, and whom to sue." No Right, No Access, supra, at 848; see also id. at 860–72. To say nothing of the myriad other life-altering choices that parents make concerning their children's education, medical care, financial affairs, and even military service.

In the context of child-rearing, control of a child entails the power and authority to make

important decisions about the child's life. . . . [T]o have control of a child is to govern, oversee, and direct the child. This means more than day-to-day or hour-to-hour supervision and discipline —and certainly more than deciding 'when a child gets up and goes to bed, how much television she watches, and whether she gets dessert.' Ante at 158. It means responsibility for the important choices that must be made for the child—choices about where she will live, her medical care, her education, and her future. Such control is by its nature, and by law, the exclusive right and duty of parents in the first instance. When important decisions must be made for a child, someone bears ultimate responsibility for them no matter how many other caregivers may be involved in the child's life or consulted on the decision. Unless the child's parents refuse or shirk this responsibility, it is theirs both in law and in fact.

In re H.S., 550 S.W.3d 151, 169–70 (Tex. 2018) (Blacklock, J., dissenting) (quotation omitted).

It's true, of course, that the best-interest-of-the-child standard is an important one. The best-interest-of-the-child doctrine derives from the parens patriae doctrine, and it is unclear that federal courts have inherent powers under either one. As the Supreme Court has explained: Parens patriae means literally "parent of the country." The parens patriae action has its roots in the common-law concept of the royal prerogative. The royal prerogative included the right or responsibility to take care of persons who are legally unable, on account of mental incapacity, whether it proceed from 1st. nonage: 2. idiocy: or 3. lunacy: to take proper care of themselves and their property. Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez, 458 U.S. 592, 600 (1982) (quotation omitted); see also Saavedra v. Schmidt, 96 S.W.3d 533, 544 (Tex. App.—Austin 2002) (describing the best-interests standard as a subset of the parens patriae doctrine). But when our Nation inherited these doctrines from Mother England, we bequeathed them to the States—not the federal government. See Hawaii v. Standard Oil Co. of Cal., 405 U.S. 251, 257 (1972) ("In the United States, the 'royal prerogative' and the 'parens patriae' function of the King passed to the States."); Fontain v. Ravenel, 58 U.S. (1 How.) 369, 384 (1855)

4

("Powers not judicial, exercised by the chancellor merely as the representative of the sovereign, and by virtue of the king's prerogative as parens patriae, are not possessed by the [federal] courts."). And when States use their parens patriae powers to protect the best interests of the child, they do so because the parents cannot agree or because the child has no parents at all. See NY. Civ. Procedures. For example, in a contested divorce proceeding, the state court must use the best interest standard to mediate ex-spouses' disagreement over their children's educations. See, e.g., Magro v. Magro, 2020 WL 7251864, at *11–12 Dec. 10, 2020. Likewise, when the parents are absent or so abusive as to be no parents at all, the state courts have numerous powers (including the power to terminate the parental relationship) to protect the best interests of the child. See, e.g., Interest of P.W., 2023 WL 68146 Waco Jan. 4, 2023. But I am aware of no authority, to suggest States can use their parens patriae powers to impose blanket prohibitions on parental choices simply because the government does not trust an otherwise-present-and-fit parent to choose wisely. And even if States had such limitless powers, you cite no authority to suggest federal courts somehow share them.

The invocation of the best-interest-of-the-child standard also proves too much. Even if state courts had freestanding best interest powers, and even if federal courts had them too, it would prove that we need not create a general prohibition on parents' rights to sue on behalf of their children. It's precisely because some courts can sometimes intervene to prevent truly egregious harms that all courts cannot all-the-time intervene to prevent everyday parental decision-making. Thus, we need not decide here whether a federal court could intervene in a truly outrageous case to prevent a parent from prejudicing her unrepresented child's legal rights. See, e.g., Fed. R. Civ. P. 17(c) (authorizing federal courts under limited circumstances to appoint guardians and other representatives). It's enough to hold that neither federal nor state law generally requires a parent to hire an attorney before suing on behalf of her children.

In regards to the majority opinion, it may claim that this lawsuit "starts and ends with the text of

28 U.S.C. § 1654." Ante, at 3. And recall that the statute provides "parties may plead and conduct their own cases personally or by counsel." The majority puts great weight on the phrase, "their own." See id. at 3–4. It says that I can represent my children pro se if, and only if, state or federal law clearly assigns the children's case to me—thus making their claims her "own." Id. at 3–7. And the majority intimates that state and federal law might not be sufficiently clear in this regard. Id. at 7 n.5. The majority's rigid construction of § 1654 renders other run-of-the-mill cases problematic. See United States v. Palomares, 52 F.4th 640, 647–49 (5th Cir. 2022) (Oldham, J., concurring) (explaining why "hyperliteralism is bad textualism"); see also Bostock v. Clayton Cnty., 140 S. Ct. 1731, 1754 (2020) (Alito, J., dissenting).

If you, and the majority all agree that I can hire a lawyer to bring my children's claims. E.g., ante, at 7 n.5 ("[A] represented guardian can sue on behalf of a child."). Why doesn't that run afoul of the majority's interpretation of § 1654? After all, the phrase "their own" modifies both "personally" and "by counsel." If the children's claims aren't my "own," then what authority does § 1654 give me to exercise my children's "own" option to proceed "by counsel"? The more natural reading of § 1654 in this context would be: "In all courts of the United States the parties [parent representative] may plead and conduct their own [children's] cases personally or by counsel". 28 U.S.C. § 1654 (alterations added).

Even if the majority's interpretation of § 1654 is the right one, New York State law satisfies it. The majority says that "Congress left open to [S]tates the choice to authorize nonattorney parents to represent their children." Ante, at 7 (emphasis added). The key word here is "represent."5 And the New York Family Code assigns parents that very right: "A parent of a child has . . . the right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child." New York Family Code (emphasis added). The majority attempts to sidestep New York Family Code's clear statement by suggesting it might not be clear enough. In the majority's words, § 151.001(a)(7) "does not expressly state that a parent can proceed pro se."

Ante, at 7 n.5 (emphasis added). But such an exacting clear-statement rule is usually reserved for an area—like preemption or abrogation of state sovereign immunity—where the Legislature is acting in derogation of some otherwise well-established background principle. See, e.g., Gregory v. Ashcroft, 501 U.S. 452, 460–61 (1991) (preemption); Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank, 527 U.S. 627, 634–35 (1999) (abrogation). We do not require clear statements when the legislature merely confirms a notion—like the parent's right to make decisions for her child—that's centuries older than the American Republic itself.

The majority puts undue emphasis on the general common-law presumption that non-attorneys can't represent others. Here's how the analysis goes. The majority cites a bevy of cases establishing a general presumption that, "at common law, nonattorneys could not litigate the interests of others," ante, at 4–5; then, armed with one citation to a Supreme Court partial dissent, the majority extends this general common-law presumption to encompass parental pro se advocacy in particular, id. at 5; finally, it suggests that to litigate on their children's behalf, pro se parents must identify a state or federal law that "expressly" "abrogates th[e] common-law rule or its corollary that non-attorney parents cannot act as attorneys for their children," id. at 7 n.5; see also id. at 5–7. If I wanted to represent my neighbor or a friend from pickleball, then the majority's conclusion might follow. But the parent-child relationship is far different from the relationship between an unlicensed non-attorney and a would-be client from the neighborhood or gym. The parent-child relationship is a sacred, pre-political bond that preexists both the United States and New York, and which is uniquely enshrined into state and federal law. That's likely why none of the cases the majority cites points to any evidence that parents were prohibited from making legal decisions for their children at common law. The closest the majority comes is its citation to one footnote in Justice Scalia's partial dissent in Winkelman ex rel. Winkelman v. Parma City School District. 550 U.S. 516, 536 n.1 (2007) (Scalia, J., concurring in the judgment in part and dissenting in part); see ante, at 5. The footnote says, in relevant part:

[P]etitioners also argue that even if parents do not have their own rights under the statute, they nonetheless may act on behalf of their child without retaining a lawyer. Both sides agree, however, that the common law generally prohibited lay parents from representing their children in court, a manifestation of the more general common-law rule that non attorneys cannot litigate the interests of another. See Brief for Petitioners 37; Brief for Respondent 9–10; see also, e.g., Collinsgru v. Palmyra Bd. of Ed., 161 F.3d 225, 232 (C.A.3 1998). Nothing in the IDEA suggests a departure from that rule.

550 U.S. at 536 n.1.

The sources Justice Scalia cited do not prove there was a common-law rule "prohibit[ing] lay parents from representing their children in court." Id. at 536 n.1. Justice Scalia cited Collinsgru v. Palmyra Board of Education, 161 F.3d 225, 232 (3d Cir. 1998). But Winkelman abrogated Collinsgru, and Collinsgru only said there's a general common-law presumption that "a non-lawyer may not represent another person in court"—not that there was a common law rule prohibiting parents from representing their children pro se. Ibid. The Winkelman petitioner, for example, discussed the general common-law principle that nonattorneys cannot represent others, then cited two cases that also did not discuss parents or children. Petitioner Br. at 37. And the Winkelman respondent cited Collinsgru, which—as explained above—only discussed the general pro se rule. Respondent Br. at 9–10. The Respondent then relied upon various circuit court cases holding that nonattorney parents must be represented by counsel when suing on behalf of their children. Ibid. That, of course, merely begs the question. Those cases also uniformly relied upon the general common-law presumption against pro se representation—not any text, history, or tradition regarding parents and their children.

Too many parents today do not share my passionate desire to fight for their children, who have been subjected to horrific abuse and other bad acts by Defendant. Sadly, too many organs of

government today share the view to stand between parents and their children. Me deciding to fight back against this decision, is my right to do so and is both ancient and deeply rooted in American law and history. There is nothing in Law that justifies mine and my children to chose, as so many litigants understandably do, not to hire an attorney.

I believe the court should adopt a multi factor test to determine when a parent can proceed pro se and not just rely on unpublished caselaw and points to decisions from ten other circuits applying a per se rule against pro se parent representation. Holding an absolute bar on pro se parent representation is inconsistent with § 1654, which allows a pro se parent to proceed on behalf of her child in federal court when the child's case is the parent's "own." 28 U.S.C. § 1654.

In relevant part, § 1654 says that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel." 28 U.S.C. § 1654. We have understood this provision to comprehensively list all the ways that a party may appear in federal court. See Gonzales v. Wyatt, 157 F.3d 1016, 1021 (5th Cir. 1998). So, "a party can represent himself or be represented by an attorney," id., because § 1654 says he can. On the other hand, he "cannot be represented by a nonlawyer," id., because the statute does not include the phrase, "or by a nonlawyer."

But the right to proceed pro se under § 1654 is not limited to cases where the pro se party is a named plaintiff. The statute provides for pro se representation in any case that is a party's "own." 28 U.S.C. § 1654. This language is rooted in the Judiciary Act of 1789, which said that "parties may plead and manage their own causes personally or by the assistance of . . . counsel[.]" Judiciary Act of 1789, 1 Stat. 73, 92 (emphasis added). At the Founding, "own" meant "belonging to" oneself, Samuel Johnson, A Dictionary of the English Language (1755) (Beth Rapp Young et al. eds., 2021); see, e.g., U.S. Const., art. I § 5 ("Each House shall be the Judge of the Elections, Returns and Qualifications of its own Members[.]" (emphasis added)), and it

means the same thing today, Own, MerriamWebster Dictionary Online, https://www.merriamwebster.com/dictionary/own (last visited Feb. 6, 2023) (same). Accordingly, for a person to invoke § 1654, the only requirement is that the case he seeks to prosecute must belong to him. Taken by itself, § 1654 does not say when a child's case belongs to the parent. However, at common law, nonattorneys could not litigate the interests of others. See Guajardo v. Luna, 432 F.2d 1324, 1324 (1970) (per curiam); see, e.g., Collinsgru v. Palmyra Bd. of Educ., 161 F.3d 225, 232 (3d Cir. 1998), abrogated on other grounds by Winkelman ex rel. Winkelman v. Parma City Sch. Dist., 550 U.S. 516 (2007); Russell v. United States, 308 F.2d 78, 79 (9th Cir. 1962) (per curiam); Collins v. O'Brien, 208 F.2d 44, 45 (D.C. Cir. 1953) (per curiam), cert. denied, 347 U.S. 944 (1954); Acme Poultry Corp. v. United States, 146 F.2d 738, 740 (4th Cir. 1944) (rule for corporations); Schifrin v. Chenille Mfg. Co., 117 F.2d 92, 94 (2d Cir. 1941) (describing whether and what kind of remedies are appropriate for violation of this rule, and collecting cases); Heiskell v. Mozie, 82 F.2d 861, 863 (D.C. Cir. 1936); Turner v. Am. Bar Ass'n, 407 F. Supp. 451, 477 (S.D. Tex. 1975); In re Looney, 262 F.209, 212 (W.D. Tex. 1920); Weir v. Slocum, 3 How. Pr. 397, 398 (N.Y. Sup. Ct. 1849); see also Faretta v. California, 422 U.S. 806, 828 (1975) ("The right of self-representation was guaranteed in many colonial charters and declarations of rights," and those documents gave "the colonists a right to choose between pleading through a lawyer and representing oneself." (emphases added)); Ex parte Secombe, 60 U.S. 9, 13 (1856) ("[I]t has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed."). Nothing in § 1654 abrogates this commonlaw rule or its corollary that nonattorney parents cannot act as attorneys for their children, see Winkelman, 550 U.S. at 536 n.1 (Scalia, J., concurring in the judgment in part and dissenting in part). Thus, a child's case only belongs to the parent under § 1654 if some other source of law alters the common-law backdrop.

Other federal statutes can overwrite the general rule against pro se parent representation. For example, the Courts have previously decided that a child's appeal from certain administrative

decisions under the Social Security Act, 42 U.S.C. § 405(g), belongs to the parent such that the parent can proceed pro se on the child's behalf in federal court. See Harris v. Apfel, 209 F.3d 413, 416-17 (5th Cir. 2000); Machadio v. Apfel, 276 F.3d 103, 107 (2d Cir. 2002) (similar). And the Supreme Court has left open the question of whether the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., similarly "entitles parents to litigate their child's claims pro se." Winkelman, 550 U.S. at 535. Courts also look to state law in determining whether one person's case belongs to another under § 1654. See Rodgers v. Lancaster Police & Fire Dep't, 819 F.3d 205, 211-12 (5th Cir. 2016). For example, if state law affords a parent the right to proceed pro se on behalf of her child, the child's case is the parent's "own" within the meaning of § 1654. This is because the state, in giving a parent this right, assigns to the parent the child's "individual choice to proceed pro se," Cheung v. Youth Orchestra Found. of Buffalo, Inc., 906 F.2d 59, 61 (2d Cir. 1990), signals that "the minor's interests would be furthered by [the parent's] representation," id., permits the parent to waive the child's right to counsel, see Osei-Afriyie ex rel. Osei-Afriyie v. Med. Coll. of Pa., 937 F.2d 876, 883 (3d Cir. 1991), and trusts the parent to represent the child. Where state law has this effect, the parent acts within the parent-child relationship—"a traditional area of state concern," Moore v. Sims, 442 U.S. 415, 435 (1979)— as the child's pro se alter ego. § 1654 does not disturb these state law determinations about the substance of the parent-child relationship. See Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979) ("State family and family-property law must do major damage to clear and substantial federal interests before the Supremacy Clause will demand that state law be overridden," and then Congress must have "positively required by direct enactment that state law be pre-empted." (cleaned up)); Hillman v. Maretta, 569 U.S. 483, 490-91 (2013) (same). To the contrary, Congress left open to states the choice to authorize nonattorney parents to represent their children.

The absolute bar in Court circuits is designed to ensure that when children "have claims that require adjudication," they receive "trained legal assistance so their rights may be fully

protected." Cheung, 906 F.2d at 61. This policy concern is reflected in the common law and prevails absent federal or state law to the contrary. But where a state has decided that pro se parental representation does adequately protect children's rights, the text of § 1654 does not allow Courts to interfere absent extenuating circumstances.8 See, e.g., Hoffert v. Gen. Motors Corp., 656 F.2d 161, 164 (5th Cir. Unit A Sept. 1981) (holding that courts "have inherent power to appoint a guardian ad litem when it appears that the minor's general representative has interests which may conflict with those of the person he is supposed to represent"). Moreover, in some circumstances, the absolute bar may not protect children's rights at all. When counsel is unavailable, the absolute bar "undermine[s] a child's interest in having claims pursued for him or her," and "may force minors out of court altogether." Tindall v. Poultney High Sch. Dist., 414 F.3d 281, 286 (2d Cir. 2005). "Children represent a disproportionate number of those living in poverty in the United States," and "[t]here is a dearth of legal services available" in this country "to meet the legal needs of those who cannot afford to pay." Lisa V. Martin, No Right to Counsel, No Access Without: The Poor Child's Unconstitutional Catch-22, 71 Fla. L. Rev. 831, 856 (2019). As a result, "the mandate that parents retain counsel to advance their children's claims cannot be met by a substantial portion of families." Id. at 858.

Congress did not write an absolute bar into § 1654. We live on a pro se planet. Between 2000 and 2019, twenty-seven percent of all civil cases had at least one pro se plaintiff or defendant. Pro se litigants routinely practice in courtrooms, as § 1654 permits.

To add further context, it wasn't necessary for my children to be named as a direct party in the family court case, although they were named in my claim against Defendant to ensure they too received an Order of Protection against Defendant, and not just me. After I brought light to the Judge that CPS had been called multiple times by Defendant, who under New York State Law had to interview my children each time they received a complaint, all deemed unfounded, along with Defendant contacting their school, their friends…, creating anxiety, emotional distress and

harm to my children, Honorable Judge Young ordered a guardian Rob Kilmer to interview my children so they didn't have to attend the Court case, therefore avoiding further distress to them, and allowed Rob Kilmer to speak to the Judge on their behalf outlining Defendant's outrageous bad acts towards them, and the Judge ordered protections for them too, not just for me. We have a 3 year OOP in place, which has been ignored by Defendant who has continued to abuse my children and myself ongoing. He knows Law Enforcement won't be able to extradite him back to New York to face charges for violating the Order of Protection.

My children and I discussed the pros and cons of them as Plaintiff's with me. We deemed it important for each of them to file action against Defendant to receive a permanent injunction stopping Defendant from contacting them or harming them any further. They are also learning from their experience as a Plaintiff, that this is the way to deal with people who harm others in a civilized society, the way Defendant has harmed them. Our case is not just about damages, although my children have definitely been harmed by Defendant that is indefinite, and therefore they should be awarded relief for what he's done to them, but it's also about them feeling safe and holding their abuser accountable - this is important for their own growth and to move on from victimhood. They are learning in real time the right way to hold people accountable in society, regardless of who they are, their age, their gender, or position in society. They are standing up for themselves, with me as their advocate, speaking on their behalf in the best interest for them, which they trust me to do as their mother given I've protected them their whole lives. As Plaintiffs they may inspire other minors to stand up for themselves too, however, it's simply not realistic in the world we live in for a child to be forced to hire an attorney to represent their interests in Court, which will be hugely expensive with the financial burden on the parent to pay the attorney, along with the burden to find the "right" attorney who is trustworthy to work in their best interests. Bottomline, I don't trust anyone to protect their interests better than me. I trust myself to make the best decisions for them, I wouldn't trust their care in the hands of an attorney who would not only be a stranger to them, magnifying the abuse they have suffered

13

further, but there's not many attorney's admitted into the Northern District who have the patience, bandwidth, experience, time or inclination to represent children in sensitive child abuse cases, which could cause more harm than good, when they feel safe with me and they know I will always put them first like I've done their whole lives. We are an extremely close family unit. Defendant has intentionally harmed all four of us, so makes logical sense to bring this action together as a family against him, pro se.

My children are not babies, they are critical thinkers aged 17, 15, 14, and trust my judgment. Could an attorney represent them better? It's subjective, an "unknown", a risk I'd rather not take unless the Court gives me no choice. What is "known" is my ability to protect my children and make sound decisions for them, like I've done their whole lives.

The Founding generation maintained an abiding "appreciation of the virtues of self-reliance." Ibid. Informed by "the 'natural law' thinking that characterized the Revolution's spokesmen," the "Founders believed that self-representation was a basic right of a free people." Id. at 830 n.39. That's primarily because the Founders understood "the freedom to state one's own case" as "a defense against government oppression" and "a guarantee of individual dignity and autonomy." No Right, No Access, supra, at 846. Thomas Paine, for example, argued in support of the 1776 Pennsylvania Declaration of Rights by explaining that people had "a natural right to plead [their] own case." Faretta, 422 U.S. at 830 n.39 (quoting Thomas Paine on a Bill of Rights, 1777, reprinted in 1 Bernard Schwartz, The Bill of Rights: A Documentary History 314, 316 (1971)). Equally strong as the Founding generation's belief in the "virtues of self-reliance" was its "distrust of lawyers." Id. at 826.

When the time came to draft and ratify the Constitution, such anti-lawyerism and anti-elitism reached a crescendo. Ibid. One Anti-Federalist captured the zeitgeist this way when expressing his frustration with some supporters of the Constitution:

> [M]any undesigning citizens may wish [the Constitution's] adoption from the best
> motives, but these are modest and silent, when compared to the greater number, who
> endeavour to suppress all attempts for investigation; these violent partizans are for having
> the people gulp down the gilded pill blind-folded, whole, and without any qualification
> whatever, these generally, of the noble order of Cincinnatus, holders of public securities,
> men of great wealth and expectations of public office, Bankers and Lawyers: these with
> their train of dependants from the Aristocratick combination—the Lawyer in particular,
> keep up an incessant declamation for its adoption, like greedy gudgeons they long to
> satiate their voracious stomacks with the golden bait—The numerous tribunals to be
> erected by the new plan of consolidated empire, will find employment for ten times their
> present numbers; these are the loaves and fishes for which they hunger . . . .

Considering the Founding generation's self-reliance and distaste for attorneys, it is unsurprising that "the right of self-representation has been protected . . . since the beginnings of our Nation." *Faretta*, 422 U.S. at 812.

Federal law allows children to litigate pro se. Congress was quite clear on that. Nothing in § 1654 limits the right to proceed "personally"—that is, pro se— to those who are at least 18 years old. To the contrary, unless context dictates otherwise, congressional enactments generally treat adults and minors as equal "persons." 1 U.S.C. § 8(a).

Federal Rules direct Courts to consider state law in determining who has the capacity to sue in federal court. *See* Fed. R. Civ. P. 17(b)(3) ("Capacity to sue is determined . . . by the law of the state where the court is located."). A child's "access to the [federal] courts, or capacity to sue or be sued, is determined by state not federal law."

Federal law gives Plaintiff's minor children the unequivocal right to "conduct their own cases personally," 28 U.S.C. § 1654; Federal Rule of Civil Procedure 17 directs Courts to consider

state law in determining who has the capacity to sue; and New York law plainly lodges that capacity in Plaintiff as the parent of Plaintiff minors.

New York Legislature unequivocally sides with me: The "parent of a child" has the "right to represent the child in legal action and to make other decisions of substantial legal significance concerning the child."

Since the First Judiciary Act in 1789, every person—including a minor—has enjoyed a right to litigate pro se in federal court. The question is whether you will allow me as a parent to vindicate that right for my children, just as I can vindicate my children's other rights.

If it would please your Honor I can bring my children to the courthouse in Binghamton to meet with you to answer any questions you may have in order to assist you in making your determination whether I'm deemed fit to represent them.

I kindly ask for you to grant my request for my children to proceed pro se.

Jane Doe

_Jane Doe_

_____