UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANE DOE and JOHN DOE, II,

                      **Plaintiffs,**

  vs.                                                  3:24-cv-00274
                                                       (MAD/ML)

JONATHAN REES,

                      **Defendant.**
_____

APPEARANCES:                               OF COUNSEL:

JANE DOE
200 Washington Avenue, 7181
Endicott, New York 13760
Plaintiff, *Pro se*

JOHN DOE, II
200 Washington Avenue, 7181
Endicott, New York 13760
Plaintiff, *Pro se*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

On February 2, 2024, Plaintiff *pro se* Jane Doe commenced this action, on behalf of herself and her minor children, Plaintiffs John Doe, II, John Doe, III, and Jane Doe, IV, bringing thirty-two claims against Defendant "Jonathan Rees aka Greg Ellis aka Johnathan Rees aka Jonny Rees aka Jacob Lorenzo" ("Defendant"). *See* Dkt. Nos. 1, 14.[1] On April 27, 2024, Plaintiff requested that the Clerk of the Court enter a certificate of entry of default. *See* Dkt. No. 18. The Clerk denied the requested default on April 30, 2024. *See* Dkt. No. 19. On April 30, 2024,

---

[1] Plaintiffs' amended complaint was filed within 21 days of service of the summons and complaint. *See* Dkt. Nos. 13, 14, 17; Fed. R. Civ. P. 15(a)(1).

Plaintiff again requested that the Clerk of the Court enter a certificate of entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 20. The Clerk entered the requested default on May 1, 2024. *See* Dkt. No. 21. On May 13, 2024, Plaintiff moved for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Northern District of New York Local Rule 55.2. *See* Dkt. No. 24 at 3; Dkt. No. 24-5 at 1.

On February 27, 2025 the Court ordered Plaintiffs to show cause why this action should not be dismissed pursuant to the prior pending action doctrine and denied the motion for default judgment with leave to renew. *See* Dkt. No. 53. The Court ordered Plaintiffs to show cause because another case pending in the Northern District of New York brings similar claims against the same Defendant for nearly identical conduct. *See Doe v. Rees et al.*, No. 3:23-CV-1352 (N.D.N.Y. Oct. 31, 2023). In response, Plaintiffs offered substantiation that this other action was brought by a different anonymous plaintiff, also proceeding as "Jane Doe," who allegedly suffered many of the same abuses by Defendant around the same time period. *See* Dkt. No. 54 at 1-4. As Plaintiffs have shown cause that this case should not be dismissed pursuant to the prior pending action doctrine, the Court now addresses the motion for default judgment. *See* Dkt. Nos. 24, 49.

For the reasons that follow, Plaintiffs' motion for default judgment is denied and the amended complaint is dismissed with leave to amend.

## II. BACKGROUND

Plaintiffs allege that Jane Doe ended an intimate relationship with Defendant who had harassed, abused, and assaulted her. *See* Dkt. No. 14 at ¶ 1. According to the amended complaint, Defendant assaulted Jane Doe and "physically, mentally, emotionally and financially abused [her] at his home beginning Thanksgiving Day 2022[.]" *Id.* Plaintiffs also allege that,

2

during Jane Doe's relationship with Defendant, he engaged in acts "likely to harm the physical, mental or moral welfare of" her twelve-year-old daughter Jane Doe, IV, *id.* at ¶¶ 93, 98, her thirteen and sixteen-year-old sons John Doe, II and John Doe, III, *id.* at ¶¶ 102, 108, and "with intent to harm, harass, and intimidate" all three of the minor children. *Id.* at ¶¶ 122, 127, 132, 137, 145, 153, 169, 177, 185.[2]

Plaintiffs' many claims include allegations that Defendant possessed firearms illegally in the home where Jane Doe and her minor children visited him, *see id.* at ¶ 34, "got into an altercation over a loaded firearm" while Plaintiffs were staying in his home, *id.* at ¶ 82, stalked Jane Doe and harassed her online, *see id.* at ¶¶ 161-63, and endangered Jane Doe's children by encouraging them to hunt beavers while Defendant was inebriated. *See id.* at ¶¶ 34, 95, 104, 110, 140, 147, 155, 172, 179, 187.

As the case currently stands, Plaintiffs Jane Doe and John Doe, II purport to bring thirty-two causes of action, nearly half of which appear to be for alleged criminal conduct. *See id.* at ¶¶ 92-304. Plaintiffs invoke this Court's diversity and federal question jurisdiction. *See id.* at ¶¶ 12-14. The causes of action in the amended complaint are labeled as follows: (1) "NY Penal Law § 260.10: Endangering the welfare of a child"; (2) "NY Penal Law § 260.10: Endangering the welfare of a child"; (3) "NY Penal Law § 260.10: Endangering the welfare of a child"; (4) "NY Penal Law § 260.10: Endangering the welfare of a child"; (5) "(Stalking/Cyberstalking) 18 U.S.C. § 2261A"; (6) "(Stalking/Cyberstalking) 18 U.S.C. § 2261A"; (7) "(Stalking/Cyberstalking) 18 U.S.C. § 2261A"; (8) "(Stalking/Cyberstalking) 18 U.S.C. § 2261A"; (9) "(Child Maltreatment) New York Code Section 411-428"; (10) "(Child

---

[2] Plaintiffs' claims and allegations related to John Doe, III or Jane Doe, IV have been terminated and disregarded by virtue of the termination of the minor parties from this action, and John Doe, II has reached the age of eighteen and appeared *pro se*. *See* Dkt. Nos. 43, 44.

3

Maltreatment) New York Code Section 411-428"; (11) "(Child Maltreatment) New York Code Section 411-428"; (12) "(Harassment) NY PENAL LAW 240.26"; (13) "(Harassment) NY PENAL LAW 240.26"; (14) "(Harassment) NY PENAL LAW 240.26"; (15) "(Harassment) NY PENAL LAW 240.26"; (16) "Intentional Infliction of Emotional Distress"; (17) "Intentional Infliction of Emotional Distress"; (18) "Intentional Infliction of Emotional Distress"; (19) "Intentional Infliction of Emotional Distress"; (20) "Violation of the Victims of Gender-Motivated Violence"; (21) "Violation of the Victims of Gender-Motivated Violence"; (22) Sexual Harassment, Gender Discrimination, and Hostile Work Environment under New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.* ([']NYSHRL['])"; (23) "Sexual Harassment, Gender Discrimination, and Hostile Work Environment under [NYSHRL]"; (24) "Violation of Civil Rights Law § 52-b"; (25) "Violation of Civil Rights Law § 52-b"; (26) "Violation of Civil Rights Law § 52-b"; (27) "Violation of Civil Rights Law § 52-b"; (28) "Tortious Interference with Contract/Prospective Economic Advantage"; (29) "Intentional Interference with Prospective Business Relations"; (30) "Forced Labor under 18 U.S.C. § 1589, *et seq.*"; (31) "Forgery"; and (32) "Identity Theft." *See id.* at ¶¶ 92-304.

### III. DISCUSSION

A.    **Subject Matter Jurisdiction**

Before reaching the merits of Plaintiffs' claims, the Court has an obligation, "on its own motion, to inquire as to subject matter jurisdiction and satisfy itself that such jurisdiction exists." *Da Silva v. Kinsho Int'l Corp.*, 229 F.3d 358, 361-62 (2d Cir. 2000) (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977)). "Prior to entering a default judgment, the Court must ascertain that subject matter jurisdiction exists over plaintiff's claims." *Centra Developers Ltd. v. Jewish Press Inc.*, No. 16 CV 6737, 2018 WL 1788148, *5 (E.D.N.Y. Feb. 20,

2018) (citing *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 153 (E.D.N.Y. 2010); *Wynn v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001)).

Plaintiffs allege that this Court has jurisdiction pursuant to both diversity and federal question jurisdiction. *See* Dkt. No. 14 at ¶¶ 12-14.

As for diversity jurisdiction, although most or all of Defendant's alleged conduct occurred at his property located in New York State, Plaintiffs allege that Defendant is a "resident" of Illinois. *See id.* at ¶ 10. For the purposes of diversity jurisdiction, "[t]he citizenship of a natural person . . . is determined . . . by the person's domicile," *Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 836 (S.D. Ill. 2006), and "a statement of the parties' residence is insufficient to establish their citizenship," *Leveraged Leasing Admin. Corp. v. PacifiCorp Cap., Inc.*, 87 F.3d 44, 47 (2d Cir. 1996). Therefore, Plaintiffs' allegation that Defendant is a "resident" of Illinois is insufficient to confer diversity jurisdiction.

Alternatively, Plaintiffs bring several causes of action under federal law, ostensibly invoking this Court's federal question jurisdiction. *See* Dkt. No. 14 at ¶¶ 112-35, 291-97. However, for the reasons set forth below, Plaintiffs have failed to state a colorable federal claim. *See* Part III.C.1. The amended complaint, therefore, fails to allege facts that establish this Court's original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.[3]

**B.    Entry of Default Judgment Standard**

---

[3] The Court follows the approach taken by other district courts in the Second Circuit and declines to address personal jurisdiction at this time, as personal jurisdiction over Defendant is not "clearly lacking." *Kaplan v. Hezbollah*, No. 19-CV-3187, 2022 WL 2207263, *2 (E.D.N.Y. June 21, 2022); *accord Weiss v. Shree Baidyanath Ayurved Bhawan Pvt. Ltd.*, No. 21-CV-00155, 2024 WL 1556888, *4 (E.D.N.Y. Apr. 10, 2024). Plaintiffs' submissions "raise a reasonable inference" that the Court has personal jurisdiction over Defendant. *Weiss*, 2024 WL 1556888 at *4.

Once the Clerk enters a party's default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Court may enter a judgment against the defaulting party. *See* Fed. R. Civ. P. 55(b)(2). "That rule, in tandem with the Northern District of New York Local Rule 55.2, sets forth certain procedural prerequisites that must be met before a default judgment may be entered." *Pert 35, Inc. v. Amari Aviation Ltd.*, No. 09-CV-0448, 2010 WL 1257949, *3 (N.D.N.Y. Mar. 5, 2010) (citation omitted). The moving party must "1) show that the defendant was properly served with a summons and complaint; 2) obtain the entry of default; and 3) provide an affidavit setting forth the salient facts including, if the defendant is a person, showing that he or she is not an infant or incompetent, or a member of the United States Military Service." *Id.* (citing Fed. R. Civ. P. 55(b); N.D.N.Y. L.R. 55.1, 55.2) (other citation omitted).

The Second Circuit has "generally disfavored" granting default judgment because it is an extreme remedy, and while it may be efficient, the court must weigh its interest in expediency against the need to afford all litigants the opportunity to be heard. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993) (citing *Merker v. Rice*, 649 F.2d 171, 174 (2d Cir. 1981); *Gill v. Stolow*, 240 F.2d 669, 670 (2d Cir. 1957)). Although the Second Circuit has a clear preference for deciding cases on the merits, district courts are given discretion to assess the individual circumstances of each case and grant default judgment where appropriate. *See Enron Oil Corp.*, 10 F.3d at 95-96. However, when a motion for default judgment is unopposed, the movant only needs to satisfy the "modest burden of demonstrating entitlement to the relief requested." *Rusyniak v. Gensini*, No. 5:07-CV-0279, 2009 WL 3672105, *1 n.1 (N.D.N.Y. Oct. 30, 2009) (quoting *Cossey v. David*, No. 04-CV-1501, 2007 WL 3171819, *7 (N.D.N.Y. Oct. 29, 2007)).

Here, Plaintiffs have satisfied the procedural prerequisites for obtaining a default judgment. Plaintiffs properly served Defendant with the summons and complaint, *see* Dkt. Nos.

13, 15, 17, obtained an entry of default, *see* Dkt. No. 21, and provided an affidavit showing that Defendant is not an infant, incompetent, or a member of the United States Military Service, *see* Dkt. No. 24-3 at ¶ 3.  Accordingly, the Court turns to whether Plaintiffs have met their burden of demonstrating that they are entitled to the relief requested.[4]

When deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in [his or her] favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Pineda v. Masonry Constr., Inc.*, 831 F. Supp. 2d 666, 675 (S.D.N.Y. 2011) ("[T]he court must accept all well-pleaded allegations in the complaint as true, except those pertaining to the amount of damages") (citations omitted).  "Only after the district court is convinced that the facts meet the elements of the relevant cause of action—whether those facts are established by well-pleaded allegations or proven by admissible evidence—may the district court enter a default judgment."  *Henry v. Oluwole*, 108 F.4th 45, 55 (2d Cir. 2024).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Laby's Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (quotation and

---

[4] Before granting default against a *pro se* party, courts must consider the Rule 55(c) "good cause" standard and its three factors, which include "willfulness on the part of the defaulting party, prejudice to the adversary, and the presentation of a meritorious defense." *See Weitsman v. Levesque*, No. 3:17-CV-00727, 2018 WL 1990218, *2 (N.D.N.Y. Apr. 25, 2018). Plaintiffs have submitted affidavits of service indicating that the summons and complaint, as well as the pending motion, were personally served on the Defendant, but he has failed to appear in this action or offer an explanation for his failure to appear.  These circumstances are sufficient to satisfy the Rule 55(c) "good cause" standard. *See Miller v. County of Erie*, No. 17-CV-00928, 2019 WL 1244196, *3 (W.D.N.Y. Feb. 27, 2019).

internal quotation marks omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedure § 2688.1 (4th ed. 2022) ("Once the default is established, [the] defendant has no further standing to contest the factual allegations of [the] plaintiff's claim for relief.  Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law") (footnote omitted).

**C.    Entitlement to Relief**

*1. Federal Criminal Claims*

Plaintiffs allege that causes of action five through eight are brought for violation of 18 U.S.C. § 2261A.  *See* Dkt. No. 14 at ¶¶ 112-35.  As courts in this Circuit have observed, there exists no private right of action for cyberstalking claims, brought pursuant to 18 U.S.C. § 2261A—a criminal statute.  *See Cain v. Christine Valmy Int'l Sch. of Esthetics, Skin Care, & Makeup*, 216 F. Supp. 3d 328, 335 (S.D.N.Y. 2016) ("Case law is . . . unanimous that no private right of action is available under § 2261A") (collecting cases); *Cain v. Rambert*, No. 13-CV-5807, 2014 WL 2440596, *10 n.9 (E.D.N.Y. May 30, 2014) ("[T]here is no private right of action to enforce this criminal statute, which, as a general matter, is prosecuted by the government and not by private individuals") (collecting cases).  Accordingly, Plaintiffs have not met their burden of establishing entitlement to relief for these claims and default judgment is denied as to causes of action five, six, seven, and eight.

*2. Federal Forced Labor Claim*

Plaintiffs' thirtieth cause of action alleges that Jane Doe "is a victim of [f]orced [l]abor by [Defendant] within the meaning of 18 U.S.C. § 1589 and is[,] therefore[,] entitled to bring a civil action under 18 U.S.C. § 1595."  Dkt. No. 14 at ¶¶ 291-97.

18 U.S.C. § 1595(a) provides a private right of action to "an[y] individual who is a victim of a violation of [the Trafficking Victims Protection Act ('TVPA')]." Here, Plaintiffs allege forced labor violations under 18 U.S.C. § 1589 of the TVPA ("Section 1589"). *See* Dkt. No. 14 at ¶¶ 219-97.

"Section 1589 was intended to broaden the punishable conduct under the [TVPA] beyond [what] constitutes involuntary servitude." *Akhtar v. Vitamin Herbal Homeopathic Ctr. Inc.*, No. 19-CV-1422, 2021 WL 7186030, *6 (E.D.N.Y. Apr. 30, 2021) (citing *Walia v. Veritas Healthcare Sols., L.L.C.*, No. 13 Civ. 6935, 2015 WL 4743542, *4 (S.D.N.Y. Aug. 11, 2015)). "[T]he fundamental purpose of [Section] 1589 is to reach cases of servitude achieved through nonviolent coercion—namely serious harm, the threat of serious harm, or the abuse or threatened abuse of legal process." *Paguirigan v. Prompt Nursing Emp. Agency LLC*, 286 F. Supp. 3d 430, 439 (E.D.N.Y. 2017) (citing 18 U.S.C. § 1589(a)); *Franco v. Diaz*, 51 F. Supp. 3d 235, 247 (E.D.N.Y. 2014)). Specifically, Section 1589 provides as follows:

> (a) Whoever knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means –
>
> > (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
> >
> > (2) by means of serious harm or threats of serious harm to that person or another person;
> >
> > (3) by means of the abuse or threatened abuse of law or legal process; or
> >
> > (4) by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint,
>
> shall be punished as provided under subsection (d).

18 U.S.C. § 1589(a).  "The term 'serious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person . . . to perform or to continue performing labor or services in order to avoid incurring that harm."  *Id.* at § 1589(c)(2).

Plaintiffs allege that Defendant "groomed [Jane Doe,] luring her to relocate from Los Angeles, California to New York State to work from his assigned Production Office."  Dkt. No. 14 at ¶ 293.  And "Defendant benefitted from [Jane Doe's] creativity [and] business acumen[,] coercing [her] to work on his documentary series project The Respondent . . . all under the illusion of fair pay, along with Plaintiff forced into running his charity Children and Parents United, [and] dealing with Defendant's daily personal needs, all without pay."  *Id.*  Jane Doe alleges that she was "captive to [Defendant's] demands and desires of working [sixteen] hour days, [seven] days per week . . . [and that] Defendant participated in and facilitated the harboring and grooming of Plaintiff induced by force, fraud, or coercion."  *Id.*

The majority of the amended complaint describes abuses unconnected to any alleged forced labor—allegations more akin to a domestic dispute.  Plaintiffs do allege that Defendant threatened Jane Doe with reputational harm, however, the amended complaint states that the threats to "ruin [Jane Doe's] reputation" occurred on March 28, 2023, in response to the filing of a police report.  *See id.* at ¶¶ 68-69.  Jane Doe and Defendant's working and personal relationship deteriorated to the point that Defendant removed Jane Doe from his residence in December 2022.  *See id.* at ¶¶ 37-47.  Therefore, although Section 1589 explicitly provides that a threat of reputational harm constitutes the type of "serious harm" contemplated by the statute, *see* 18 U.S.C. § 1589(a)(2), (c)(2), the alleged threats here occurred *after* Jane Doe performed unpaid work.  Accordingly, Plaintiffs have not established a causal connection between any threats and

the alleged unpaid labor. *See David v. Signal Int'l, LLC*, No. CIV.A. 08-1220, 2012 WL 10759668, *19 (E.D. La. Jan. 4, 2012) ("[A] determination of . . . forced labor requires a causal connection between what the defendant did, what the victim did, *and why the victim did it*") (citing *United States v. Kozminski*, 487 U.S. 931, 952 (1988)) (emphasis in original).

For these reasons, the Court finds that Jane Doe's allegations are not sufficient to establish a violation of Section 1589 and Plaintiffs are not entitled to default judgment.[5]

**D.    Supplemental Jurisdiction over State Law Claims**

As the amended complaint fails to establish subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because it does not plead Defendant's citizenship and federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have failed to assert a colorable federal claim, the issue that remains is whether the Court should exercise supplemental jurisdiction over Plaintiffs' remaining claims which arise under state law.

A district court has discretion to "decline to exercise supplemental jurisdiction" after "dismiss[ing] all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c); *see Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y.*, 464 F.3d 255, 263 (2d Cir. 2006) ("[T]he decision to retain jurisdiction is discretionary and not a litigant's right"). "Whether to exercise supplemental jurisdiction under 28 U.S.C. § 1367 'is within the sound discretion of the district court.'" *Hosseini v. Miilkiina LLC*, No. 22-CV-1459, 2023 WL 2136390, *6 (S.D.N.Y. Feb. 21, 2023) (quoting *Lundy v. Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 117 (2d Cir. 2013)). "'[A] court may decline to exercise supplemental jurisdiction over state law claims at the default judgment stage if it denies default judgment as to all federal claims—so long as doing so serves

---

[5] There are no allegations that John Doe, II was subjected to any violations of Section 1589, therefore, he would not be entitled to default judgement in any event. *See, generally*, Dkt. No. 14.

11

'judicial economy, convenience, fairness and comity.'" *Guanglei Jiao v. Shang Shang Qian Inc.*, No. 1:8-CV-5624, 2020 WL 5105063, *3 (E.D.N.Y. Aug. 31, 2020) (quoting *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998)).

Because Plaintiffs have failed to establish subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332, and default judgment is denied as to all federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiffs' pendant state law claims "to avoid '[n]eedless decisions of state law.'" *Id.* (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). As a result, the amended complaint is dismissed without prejudice. *See Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (stating that a dismissal based on a lack of subject matter jurisdiction "must be entered *without prejudice*") (emphasis in original). Nevertheless, the Court will provide Plaintiffs with an opportunity to file a second amended complaint to address deficiencies in their pleading, as described below.

**E.     Leave to Amend**

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] causes of action is substantive "such that "better pleading will not cure it." *Id.* (citation omitted).

Here, Plaintiffs have amended their complaint once as of right. *See* Dkt. No. 14. Additionally, the Court guided Plaintiffs with regard to the claims improperly brought on behalf of minor parties, gave Plaintiffs the opportunity to obtain counsel, and permitted John Doe, II to appear *pro se* on his own behalf when he reached the age of eighteen nearly a year after this

action was commenced. *See* Dkt. Nos. 26, 28, 31, 32, 34, 37, 38, 39, 40, 42, 44. Certain claims brought by Plaintiffs cannot be cured by better pleading, however, amendment would not be futile as to all of Plaintiffs' claims.

### 1. *Dismissal of Incognizable Claims*

The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and *a pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation and internal quotation marks omitted). However, "a district court has inherent authority to 'dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee.'" *Hariprasad v. New York*, 722 Fed. Appx. 102, 102 (2d Cir. 2018) (quoting *Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000)). And, even given the "'special solicitude'" afforded to *pro se* submissions, *see Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quotation omitted), a court may dismiss claims that are "based on an indisputably meritless legal theory," *Hariprasad*, 722 Fed. Appx. at 103 (quotation and internal quotation marks omitted).

Here, a number of Plaintiffs' claims are incognizable or based on meritless legal theories. First, it is well-established that "[t]here is no private right of action to enforce state or federal criminal statutes." *Ming v. Brouillete*, No. 23-CV-86, 2023 WL 5779558, *3 (N.D.N.Y. Apr. 7, 2023) (collecting cases), *report and recommendation adopted*, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023). Therefore, causes of action one through eight and twelve through fifteen, brought pursuant to state and federal criminal statutes, are dismissed. *See* Dkt. No. 14 at ¶¶ 92-111, 112-35, 159-90.

Second, Plaintiffs state that causes of action nine through eleven are for "(Child Maltreatment) New York Code Section 411-428." Dkt. No. 14 at ¶¶ 136-58. Construing the *pro se* amended complaint liberally, the Court interprets these allegations to mean that Plaintiffs seek to sue Defendant under New York Social Services Law, chapter 55, article 6, title 6. *See* N.Y. Soc. Serv. L. §§ 411-28. However, New York courts do not recognize a private right of action to enforce title 6 of the Social Services Law. *See Rivera v. Cnty. of Westchester*, 31 Misc. 3d 985, 991 (N.Y. Sup. Ct. 2011) (observing that "in the absence of a statutory provision permitting a private right of action, . . . there is no private right of action for claims made pursuant to title 6 of article 6 of the Social Services Law") (citing *McLean v. City of N.Y.*, 12 N.Y.3d 194, 200-01 (2009)); *Lara v. City of N.Y.*, 187 Misc. 2d 882, 890-91 (N.Y. Sup. Ct. 2001) ("There is no evidence in the Social Services Law or otherwise that any applicable law or contract was intended to create a private right of action for money damages; rather, a logical reading of the statute as a whole indicates otherwise").[6] Accordingly, causes of action nine, ten, and eleven are dismissed.

Third, based upon Plaintiffs' reference to "§ 10-1103" and "§ 10-1104," the Court deduces that Plaintiffs' twentieth and twenty-first causes of action are brought pursuant to Title 10, Chapter 11 of the New York City Administrative Code, entitled the "Victims of Gender-Motivated Violence Protection Law" ("VGMVPL"). Dkt. No. 14 at ¶¶ 237-39; *see*

---

[6] There is one exception: "an independent right of action exists under N.Y. Soc. Serv. L. § 420(2) where a mandated reporter willfully and knowingly fails to report an instance of suspected child abuse or maltreatment." *Ingrao v. Cnty. of Albany*, No. 1:01-CV-730, 2006 WL 2827856, *7 (N.D.N.Y. Oct. 2, 2006) (citing *Doe v. Jefferson Cnty.*, 985 F. Supp. 66, 70 (N.D.N.Y. 1997)); *see Mark G. v. Sabol*, 93 N.Y.2d 710, 722 (1999) ("The Legislature specifically concentrated on the statutory scheme's enforcement provisions, which, except for the unique motivations that underlie Social Services Law § 420, have never included private rights of action for money damages. In sum, we conclude that a private right of action for money damages cannot be fairly implied from title 6 of the Social Services Law") (citation omitted). There is no indication that Defendant was a mandated reporter and, therefore, the amended complaint does not—even liberally construed—state a claim under Section 420(2).

N.Y.C. Admin. Code §§ 10-1103-10-1107.  According to N.Y.C. Admin. Code § 2-201, "the boundaries, jurisdictions and powers of the city are for all purposes of local administration and government hereby declared to be co-extensive with the territory" of the five boroughs.  In other words, "[t]he NYC Code . . . applies only to acts occurring within the boundaries of New York City." *Beverley v. 1115 Health & Benefits Fund*, 420 F. Supp. 2d 47, 56 n.2 (E.D.N.Y. 2005) (quotation, internal quotation marks, and emphasis omitted).  None of Defendants' alleged conduct occurred in New York City; the incidents that give rise to Plaintiffs' VGMVPL claims allegedly occurred at or near Defendant's home located in either Chenango or Broome County, New York.  *See* Dkt. No. 14 at ¶¶ 1, 6, 8, 235-47.  Therefore, Plaintiffs cannot bring a claim under the VGMVPL and causes of action twenty and twenty-one are dismissed.  *See Doe v. Telemundo Network Grp. LLC*, No. 22 CIV. 7665, 2023 WL 6259390, *12 (S.D.N.Y. Sept. 26, 2023) (dismissing VGMVPL claim because the complaint lacked any allegations connecting the claim to New York City).[7]

In sum, causes of action one through fifteen, twenty, and twenty-one are dismissed with prejudice because a liberal reading of the amended complaint fails to provide "any indication that a valid claim might be stated" and amendment of these claims would be futile.  *Harisprasad*, 722 Fed. Appx. at 103.

### 2. Leave to Amend the Balance of the Amended Complaint

---

[7] The Court has also attempted to liberally construe Plaintiffs' twentieth and twenty-first causes of action under federal law; however, no federal analogue to these claims exists.  The Supreme Court has expressly rejected a private cause of action under the Federal Violence Against Women Act, *see United States v. Morrison*, 529 U.S. 598, 627 (2000), and the VGMVPL was enacted by the New York City Counsel expressly to fill the "void left by the [S]upreme [C]ourt's decision [in *Morrison*]," N.Y.C. Admin. Code § 10-1102.

In light of the special latitude afforded to *pro se* litigants, the Court will, however, grant Plaintiffs the opportunity to augment the balance of their claims, as well as their jurisdictional allegations, because amendment of such allegations would not be futile. *See Cuoco*, 222 F.3d at 112. Thus, Plaintiffs are granted thirty days to amend the amended complaint consistent with this Memorandum-Decision and Order. The revised pleading should set forth allegation that could establish this Court's subject matter jurisdiction. Moreover, any amended pleading should also remove any causes of action or allegations related to the terminated minor Plaintiffs. *See* Dkt. No. 44; Dkt. No. 53 at 2. If Plaintiffs file a second amended complaint, it must be a wholly-integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See Jeanty v. Sciortino*, 669 F. Supp. 3d 96, 118-19 (N.D.N.Y. 2023).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiffs' submissions, and the applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that causes of action one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, twenty, and twenty-one are **DISMISSED with prejudice**; and the Court further

**ORDERS** that the balance of the amended complaint (Dkt. No. 14) is **DISMISSED without prejudice and with leave to amend** for lack of subject matter jurisdiction; and the Court further

**ORDERS** that Plaintiffs' motion for default judgment (Dkt. No. 24) is **DENIED**, and the Court further

**ORDERS** that Plaintiffs shall file a second amended complaint within **thirty (30) days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that if Plaintiffs fail to file a second amended complaint within thirty (30) days of the date of this Memorandum-Decision and Order, the Clerk of the Court shall enter judgment against Plaintiffs and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.[8]

**IT IS SO ORDERED.**

Dated: March 17, 2025
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[8] As Defendant has not yet appeared in this action, it remains Plaintiffs' responsibility to serve a copy of this Memorandum-Decision and Order upon Defendant and then file proof of service with the Court.