## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

JANE DOE, JOHN DOE,

                    Plaintiffs,

v.

JONATHAN REES aka GREG ELLIS aka
JONATHAN REES aka JONNY REES aka
JACOB LORENZO,

                    Defendant.

Case No. 3:24-cv-00274-MAD-ML

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JONATHAN REES'S CROSS-MOTION TO VACATE DEFAULT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT

---

**GORDON REES SCULLY MANSUKHANI, LLP**
Ronald A. Giller, Esq.
Stephanie Imbornone, Esq.
290 West Mount Pleasant Avenue, Suite 3310
Livingston, New Jersey 07039
Telephone: (973) 549-2500
*Attorneys for Defendant*
*Jonathan Rees*

## <u>TABLE OF CONTENTS</u>

**Page**

I.   PRELIMINARY STATEMENT ................................................................................ 1

II.  PROCEDURAL HISTORY ................................................................................... 1

III. LEGAL ARGUMENT ......................................................................................... 5

    A.   Any default with respect to John Doe's purported claims should be
         vacated because Jane Doe cannot litigate this case on his behalf .......................... 5

    B.   Default should be vacated because Rees was not properly served ........................ 6

    C.   Default should be set aside ............................................................................... 8

        1.   Default was not willful ............................................................................... 9

        2.   Plaintiffs will not be prejudiced if default is vacated .............................. 11

        3.   Rees has meritorious defenses to the claims asserted .............................. 12

            a.   Intentional Infliction of Emotional Distress ................................. 12

            b.   New York State Human Rights Law .............................................. 14

            c.   New York Civil Rights Law .......................................................... 15

            d.   Tortious Interference with a Contract/Prospective
                Economic Advantage ..................................................................... 16

            e.   Intentional Interference with Prospective Business
                Relations ....................................................................................... 19

            f.   Forced Labor Under 18 U.S.C. § 1589 et seq. .............................. 19

            g.   Forgery .......................................................................................... 21

            h.   Identity Theft ................................................................................ 21

IV.  CONCLUSION .................................................................................................. 22

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re 45 John Lofts LLC*,
    648 B.R. 16 (2023)..................................................................................................11, 12

*Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*,
    92 F.3d 57 (2d Cir. 1996)..........................................................................................9, 10

*Atlantic Gas & Walsh LLC v. 3170 Atlantic Ave. Corp.*,
    2012 WL 5974068 (Sup. Ct. Kings Cty. Nov. 14, 2012) ........................................17

*Austin Energy, LLC v. Eco Lumens, LLC*,
    No. 11-cv-5749, 2013 WL 6835192 (E.D.N.Y. Dec. 19, 2023)...............................10

*AYDM Assocs., LLC v. Town of Pamelia*,
    205 F.Supp.3d 252 (N.D.N.Y. 2016) ......................................................................17

*Ayers v. Bloomberg, L.P.*,
    203 A.D.3d 872 (2nd Dep't 2022) ...........................................................................14

*Bayside Carting, Inc. v. Chic Cleaners*,
    240 A.D.2d 687 (2d Dept. 1997) ..............................................................................17

*Chrysler Capital Corp. v. Hilltop Egg Farms, Inc.*,
    129 A.D.2d 927 (3d Dept. 1987) ..............................................................................17

*Davis v. Musler*,
    713 F.2d 907 (2d. Cir. 1983).................................................................................8, 11

*De Curtis v. Ferrandina*,
    529 F. App'x 85 (2d Cir. 2013) ..................................................................................6

*Deutsche Bank Natl. Trust Co. v O'King*,
    148 A.D.3d 776 (2d Dep't 2017) ................................................................................6

*Elco v. Aguiar*,
    226 A.D.3d 649 (2nd Dep't 2024) ...........................................................................14

*Enron Oil Corp. v. Diakuhara*,
    10 F.3d 90 (2d. Cir. 1993)...........................................................................................9

*Executive Trim Construction, Inc. v. Gross*,
    525 F.Supp.3d 357 (N.D,N.Y. 2021) .......................................................................19

*Feliciano v. Reliant Tooling Co.*,
  691 F.2d 653 (3d Cir. 1982)................................................................................11

*Friedman v. Coldwater Creek, Inc.*,
  321 Fed.Appx. 58 (2d Cir. 2009)........................................................................18

*GS Plasticos Limitada v. Bureau Veritas*,
  88 A.D.3d 510 (1st Dep't 2011) .........................................................................18

*Howell v. N.Y. Post Co.*,
  612 N.E.2d 699 (N.Y. 1993)...............................................................................12

*Indymac Fed. Bank, FSB v Jones*,
  173 A.D.3d 702 (2d Dep't 2019) ..........................................................................6

*J&L American Enterprises, Ltd. v. DSA Direct, LLC*,
  2006 WL 216680 (Sup. Ct. N.Y. Cty. Jan. 27, 2006)..........................................17

*Lama Holding Co. v. Smith Barney Inc.*,
  88 N.Y.2d 413 (N.Y. 1996) .................................................................................17

*Meehan v. Snow*,
  652 F.2d 274 (2d. Cir. 1981)..................................................................................8

*Mira v. Harder (Evans)*,
  177 A.D.3d 426 (1st Dep't 2019) ...................................................................14, 16

*Moynihan v. N.Y.C. Health and Hospitals Corp.*,
  120 A.D.3d 1029 (1st Dept. 2014).......................................................................18

*NBT Bancorp v. Fleet/Norstar Fin. Group*,
  87 N.Y.2d 614 (1996) ..........................................................................................17

*New York v. Green*,
  420 F.3d 99 (2d. Cir. 2005)....................................................................................8

*Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*,
  301 F.3d 54 (2d Cir. 2002)......................................................................................7

*Penrose Computer Marketgroup, Inc. v. Camin*,
  682 F.Supp.2d 202 (N.D.N.Y. 2010) ...................................................................18

*Reeves v. Wilkins*,
  No. 10-cv-2766, 2012 WL 3835902 (E.D.N.Y. Aug. 31, 2012) ...........................21

*In re Rymsbran Continental Corp.*,
  177 B.R. 163 (1995)............................................................................................8, 9

*S.E.C. v. McNulty*,
  137 F.3d 732 (2d. Cir. 1998)..................................................................9

*S.E.C. v. McNulty*,
  147 F.3d 732 (2d. Cir. 1998)..................................................................12

*Sentementes v. General Elec. Co.*,
  No. 14-cv-0131, 2014 WL 2881441 (D. Conn. June 25, 2014) ...............................21

*Shidagis v. Broome County D.S.S.*,
  No. 3:23-cv-00031, 2023 WL 198143 (N.D.N.Y. Jan. 17, 2023), *adopting
  report and recommendation*, 2023 WL 2140019 (N.D.N.Y. Feb. 21, 2023) ........................21

*Specht v. City of N.Y.*,
  15 F.4th 594 (2d Cir. 2021) .................................................................12

*In re Suprema Specialties, Inc.*,
  330 B.R. 40 (2005).......................................................................9, 11

*Truman v. Brown*,
  434 F. Supp. 3d 100 (S.D.N.Y. 2020).......................................................13

*U.S. Bank N.A. v Henry*,
  219 A.D.3d 854 (2d Dep't 2023) .............................................................6

*Wardak v. Cavanaugh*,
  No. 5:13-mc-00047, 2022 WL 16854349 (N.D.N.Y. Nov. 10, 2022)................................6, 7

*Waterscape Resort LLC v. 70 West 45th Street Holding LLC*,
  No. 21-cv-7350, 2022 WL 1558314 (S.D.N.Y. May 17, 2022) ...............................10

## Statutes

18 U.S.C. § 1589...............................................................................3, 19, 20

18 U.S.C. § 1589(a)..............................................................................20

18 U.S.C. § 1589(c)(2)...........................................................................20

N.Y. Civ. Rights Law § 52-b ................................................................14, 15, 16

N.Y. Civ. Rights Law § 52-b(1)(b)(i)-(ii)..........................................................15

N.Y. Exec. Law § 296...........................................................................14

N.Y. Exec. Law § 296(1)(a)......................................................................14

iv

**Rules**

CPLR 308(4) .................................................................................................................4, 6, 7

Fed. R. Civ. P. 55(c) .........................................................................................................8

Fed. R. Civ. P. 60(b) ........................................................................................................8

## I.  **PRELIMINARY STATEMENT**

Across jurisdictions, Plaintiff Jane Doe, *pro se*, has placed Defendant Jonathan Rees ("Rees") in the burdensome position of having to defend himself against the many fictitious claims she has made as part of her never-ending harassment campaign against him.  Most alarmingly, on August 8, 2023, Jane Doe entered his premises in New York and shot at him with a rifle, resulting in her being charged with reckless endangerment in the first degree, criminal possession of a weapon in the fourth degree, and menacing in the second degree.  As a result of this incident, Rees was left with no choice but to flee New York to escape her.

Unsuccessful in her attempt to physically harm Rees, Jane Doe initiated this action six months later.  Jane Doe never successfully served the Summons or the operative pleading, the Second Amended Complaint, on Rees.  On that basis alone, default should be vacated.  Furthermore, Rees did not willfully ignore the Summons, Jane Doe has not been prejudiced by the delay in serving him with the Summons, and Rees has meritorious defenses to Jane Doe's causes of action – many of which fail to state any claim upon which relief can be granted as a matter of law.  Rees hereby opposes Jane Doe's motion for default judgment and cross-moves to vacate default.

## II.  **PROCEDURAL HISTORY**

On February 24, 2024, Jane Doe initiated this lawsuit on behalf of herself and her three minor children.  (ECF 1).  On March 12, 2024, Jane Doe filed a motion requesting leave to serve Rees via email, at a post office box, or through his former counsel.  (ECF 11).  Jane Doe noted in her moving papers that the Broome County Family Court previously granted Rees's application in a separate matter to keep his address confidential.  (*Id.*)  On March 14, 2024, Judge Miroslav Lovric, U.S.M.J. entered an Order denying Jane Doe's motion for alternative service.  (ECF 12).

On March 20, 2024, Jane Doe filed an Amended Complaint on behalf of herself and her three minor children.  (ECF 14).  On April 27, 2024, Jane Doe filed a request for entry of default, claiming that she served Rees with the Summons and Amended Complaint via "nail and mail" at 2251 West Roscoe Street, Chicago, Illinois 60618 (the "Roscoe Street Address").  (ECF 18-1 ¶ 15).  On April 30, 2024, Jane Doe filed an amended request for entry of default, again asserting that Rees had been served via "nail and mail" at the Roscoe Street Address.  (ECF 20-1 ¶ 15).  On May 1, 2024, the clerk entered default against Rees.  (ECF 21).  On May 13, 2024, Jane Doe filed a motion for default judgment.  (ECF 25).

On May 29, 2024, Judge Lovric entered an Order precluding Jane Doe from bringing claims *pro se* on behalf of her minor children.  (ECF 26).  On May 30, 2024, Jane Doe filed a letter motion requesting that the Court reconsider its decision with regard to her representing her minor children.  (ECF 27).  On May 31, 2024, Judge Lovric denied her letter motion requesting reconsideration.  (ECF 28).  On May 31, 2024, Jane Doe appealed the decision to Judge Mae A. D'Agostino, U.S.D.J.  (ECF 29).  On June 25, 2024, Judge D'Agostino entered a Memorandum-Decision and Order denying Jane Doe's appeal.  (ECF 32).  On November 14, 2024, Judge D'Agostino entered an Order permitting one of Jane Doe's children, John Doe, to proceed *pro se*.  (ECF 44).

On March 27, 2025, Judge D'Agostino entered a Memorandum-Decision and Order denying Jane Doe's motion for default judgment.  (ECF 55).  The Court *sua sponte* raised the issue of whether it had subject matter jurisdiction over this action.  (*Id.* at p. 4).  Based on the allegations in the Amended Complaint, the Court concluded that Plaintiffs had not sufficiently demonstrated that Rees was a resident of Illinois to establish diversity jurisdiction.[1]  (*Id.* at p. 5).

---

[1] Plaintiffs allege to be residents of New York.  (ECF 14 ¶ 9).  As explained in Rees's

The Court further concluded that Plaintiffs had not sufficiently pled any cause of action under federal law to invoke federal question jurisdiction. (*Id.*)

Specifically, with respect to Jane Doe's forced labor claim under 18 U.S.C. § 1589 *et seq.*, the Court noted the allegations in the Amended Complaint -- that Rees lured her to relocate from California to New York, he benefited from her creativity and business acumen while she operated under the illusion that she would receive fair pay, she worked 16-hour days, and he induced such labor by force, fraud, and coercion -- were insufficient to demonstrate a cognizable forced labor claim. (*Id.* at p. 10). The Court further noted that "[t]he majority of the amended complaint describes abuses unconnected to any alleged forced labor – allegations more akin to a domestic dispute." (*Id.*) Because Jane Doe alleged that Rees threatened her reputation on March 28, 2023, which only occurred *after* Jane Doe performed unpaid work, the Court concluded that she had not established a causal connection between the threats and unpaid labor. (*Id.* at pp. 10-11).

The Court dismissed with prejudice causes of action one through fifteen, twenty, and twenty-one of the Amended Complaint wherein Plaintiffs alleged that Rees violated state and federal criminal statutes, the New York Social Services Law (which does not provide a private right of action), and the Victims of Gender-Motivated Violence Protection Law (which does not apply to acts outside the boundaries of New York City). (*Id.* at pp. 8. 13-16). The Court declined to exercise supplemental jurisdiction over her remaining state law claims. (*Id.* at p. 12). Aside from the causes of action dismissed with prejudice, the balance of the Amended Complaint was dismissed without prejudice. (*Id.* at p. 16).

---

declaration, he has significant safety concerns about disclosing his exact whereabouts to Jane Doe. However, Rees concedes that he did not reside in New York at the time Jane Doe initiated this action or any time thereafter. (*See* Rees Decl. ¶ 18).

On March 21, 2025, Jane Doe filed the Second Amended Complaint asserting eight causes of action. (ECF 56). Her son, John Doe, who is also named as a plaintiff and allegedly reached the age of majority during this litigation, did not sign the Second Amended Complaint. Nor does he appear to have made any attempt to serve the Summons or Second Amended Complaint on Rees. On May 9, 2025, Jane Doe submitted a request for entry of default. (ECF 63). In connection with that request, Jane Doe submitted a declaration setting forth the alleged efforts she made to serve the Summons and Second Amended Complaint (ECF 63-2) as well as a declaration from John Doe that does not identify any attempt he made to serve the Summons or Second Amended Complaint (ECF 63-1).

In Jane Doe's declaration in support of her request for entry of default, she admits that attempts at personal service on Rees were unsuccessful. (ECF 63-2 ¶ 14). Instead, she claims to have served Rees via "nail and mail" on April 10, 2025 and April 17, 2025, respectively, under CPLR 308(4) at the Roscoe Street Address. (ECF 60; ECF 63-2 ¶¶ 14-15). Rees does not own and has never resided at the Roscoe Street Address. (*See* Rees Decl. ¶ 3). Nor had he visited the Roscoe Street Address at any time in the month of April 2025. (*Id.*) Rees also does not work at the Rosco Street Address.[2] (*Id.*)

Jane Doe claims that on April 18, 2025, she mailed – but did *not* affix – the Summons and Second Amended Complaint to the following locations:

1.    Roscoe Street Address;

2.    1552 Country Squire Drive, Geneva, Illinois 60134 ("Squire Drive Address");

3.    101, 1770 South Randall Road, Suite A, Geneva, Illinois 60134 ("Randall Road Address");

---

[2] The photograph of the Roscoe Street Address purportedly taken by a process server further demonstrates that it is a residence, not a commercial property. (ECF 18-1, *Exhibit 6*).

    4.      2309 Florimond Avenue, Long Beach, Indiana 46360 ("Florimond Avenue Address"); and

    5.      522 North Central Avenue, #831 SMB #77452, Phoenix, Arizona 85004 ("Central Avenue Address").

(ECF 63-2, ¶ 16). Putting aside for now the insufficiency of mailing papers without affixing them to doors at these locations, they are not Rees's actual places of business, dwelling places, or usual places of abode. Rees does not work or reside at the Squire Drive Address or the Florimond Avenue Address. (*See* Rees Decl. ¶ 5). Rees has not visited the Squire Drive Address or the Florimond Avenue Address at any time in April 2025. (*Id.* at ¶ 6). A UPS Store is located at the Randall Road Address. (*Id.* at ¶ 7, *see also Exhibit A*). A branch of the United States Postal Service is located at the Central Avenue Address. (*See* Rees Decl. ¶ 9, *see also Exhibit B*). Rees does not work for UPS or the United States Postal Service. (*See* Rees Decl. ¶¶ 7-10).

On May 12, 2025, the clerk entered default against Rees. (ECF 66). On May 13, 2025, Jane Doe filed a motion for default judgment on behalf of "Plaintiffs". (ECF 71). Rees cross-moves to vacate default and to oppose Jane Doe's motion for default judgment.

## III.    LEGAL ARGUMENT

### A.    Any default with respect to John Doe's purported claims should be vacated because Jane Doe cannot litigate this case on his behalf

As an initial matter, Jane Doe, who does not allege to be an attorney, cannot serve or file any papers or otherwise litigate this case on behalf of John Doe. John Doe has not signed the Second Amended Complaint, attempted to serve the Summons or Second Amended Complaint on Rees, filed a request for entry of default, or filed a motion for default judgment.[3] Jane Doe

---

[3] Instead, John Doe submitted declarations in support of the request for entry of default filed and signed by Jane Doe and the motion for default judgment filed and signed by Jane Doe that she attempted to make on behalf of "Plaintiffs".

continues to file papers, including the request for entry of default and the pending motion for

default judgment, to seek relief for both herself and John Doe.  Jane Doe's engaging in the

unauthorized practice of law cannot result in a valid default with respect to any claims

purportedly brought by John Doe.  Therefore, any default entered against Rees with respect to

John Doe's purported claims should be vacated.

### B.    Default should be vacated because Rees was not properly served

"Service of process upon a natural person must be made in strict compliance with the

statutory methods of service set forth in CPLR 308."  *Indymac Fed. Bank, FSB v Jones*, 173

A.D.3d 702, 703 (2d Dep't 2019).  To serve a defendant in accordance with CPLR 308(4), the

summons must be affixed to the "actual place of business, dwelling place or usual place of abode

within the state of the person to be served and by either mailing the summons to such person at

his or her last known residence or by mailing the summons by first class mail to the person to be

served at his or her actual place of business."  Put more simply, "[w]here service is effected

pursuant to CPLR 308(4), the affix and mail method, the plaintiff must demonstrate that the

summons was affixed to the door of the dwelling place or usual place of abode of the person to

be served and mailed to such person's last known residence."  *U.S. Bank N.A. v Henry*, 219

A.D.3d 854, 857 (2d Dep't 2023).  "The 'dwelling place' is one at which the defendant is

actually residing at the time of delivery."  *Deutsche Bank Natl. Trust Co. v O'King*, 148 A.D.3d

776, 777 (2d Dep't 2017).  "The 'usual place of abode' is a place at which the defendant lives

with a degree of permanence and stability and to which he intends to return."  *Id.*

"A process server's 'sworn statement of service creates a presumption that service has

been effectuated.'"  *Wardak v. Cavanaugh*, No. 5:13-mc-00047, 2022 WL 16854349, at *3

(N.D.N.Y. Nov. 10, 2022) (quoting *De Curtis v. Ferrandina,* 529 F. App'x 85, 86 (2d Cir.

2013)).  "[A] defendant's 'sworn denial of receipt of service . . . rebuts the presumption of proper

service established by the process server's affidavit and necessitates an evidentiary hearing.'" *Id.* (quoting *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002)). "However, an evidentiary hearing is only necessary if the defendant "swear[s] to specific facts to rebut the statements in the process server's affidavits." *Id.* (quoting *Old Republic*, 301 F.3d at 58).

Here, aside from the Roscoe Street Address (which will be discussed further below), Jane Doe made no attempt to comply with the strict requirements of CPLR 308(4) when sending out the Summons and Second Amended Complaint.  Jane Doe claims to have mailed the summons to the Squire Drive Address, the Florimond Avenue Address, the Randall Road Address, and the Central Avenue Address.  (ECF 63-2, ¶ 16).  Because Jane Doe did not have the Summons and Second Amended Complaint affixed to the doors of the Squire Drive Address, the Florimond Avenue Address, the Randall Road Address, or the Central Avenue Address, these attempts at service did not comply with the "nail" requirement of CPLR 308(4) and therefore could not possibly be deemed adequate service.  Additionally, Rees did not use the Squire Drive Address, the Florimond Avenue Address, the Randall Road Address (a UPS Store), or the Central Avenue Address (a United States Postal Service branch) as his actual place of business, dwelling place, or usual place of abode or visit either residence at any point in April 2025.  (*See* Rees Decl. ¶¶ 5-10).  For that reason as well, Jane Doe's attempts to mail the Summons and Second Amended Complaint to those locations cannot be deemed adequate service under CPLR 308(4).  Likewise, Jane Doe's attempts to send the Summons and Second Amended Complaint to Rees via email or to the attorneys who purportedly represented him in other matters via email or mail cannot be deemed adequate service per this Court's prior ruling.  (*See* ECF 12).

The only location where Jane Doe claims that the Summons and Second Amended Complaint were nailed and mailed was the Roscoe Street Address.  However, the Roscoe Street Address is not Rees's actual place of business, dwelling place, or usual place of abode.  As established by Rees's declaration, he does not own and has never resided at the Roscoe Street Address.  (*See* Rees Decl. ¶ 3).  Nor had he visited the Roscoe Street Address at any time in the month of April 2025 when Jane Doe claims the Summons and Second Amended Complaint were mailed and affixed to the door at that location.  (*Id.*)  Rees also does not work at the Roscoe Street Address, which is further supported by the photograph purportedly taken by Jane Doe's process servicer clearly depicting a residence rather than a commercial enterprise at that location.  (*Id.*; ECF 18-1, *Exhibit 6*).  Whether the process server mailed or affixed the Summons and Second Amended Complaint to the door of Roscoe Street Address is irrelevant, making an evidentiary hearing unnecessary.  This location does not qualify as Rees's actual place of business, dwelling place, or usual place of abode, and therefore, Rees was never properly served.

## C.    Default should be set aside

Even assuming *arguendo* that Rees was properly served (which he was not), default should be set aside.  Pursuant to Fed. R. Civ. P. 55(c), a defendant can move to set aside an entry of default for "good cause."   When considering a motion to set aside default, the "court should be guided by the liberal standards of Fed. R. Civ. P. 55(c) rather than the more rigorous ones of Rule 60(b)…" *Davis v. Musler*, 713 F.2d 907, 918 (2d. Cir. 1983); *Meehan v. Snow*, 652 F.2d 274, 276-277 (2d. Cir. 1981).  Any and all doubts should be resolved in favor of those seeking relief under Rules 55(c) and 60(b).  *Davis v. Musler*, 713 F.2d 907, 915 (2d. Cir. 1983); *In re Rymsbran Continental Corp.*, 177 B.R. 163, 168 (1995).  Generally, there is a strong preference for resolving disputes on the merits.  *New York v. Green*, 420 F.3d 99, 104 (2d. Cir. 2005); *In re Rymsbran Continental Corp.*, 177 B.R. 163, 168 (1995).  When determining whether default

should be set aside, three factors should be considered: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d. Cir. 1993); *In re Rymsbran Continental Corp.*, 177 B.R. 163, 169 (1995). "Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96.

### 1.    <u>Default was not willful</u>

With respect to the first factor, Courts have interpreted "willfulness," in the context of a default, to refer to conduct that is more than merely negligent or careless. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d. Cir. 1998). "Gross negligence can weigh against the party seeking relief from a default judgment," the Court noted that such negligence "does not necessarily preclude relief," whereas "the subjective inquiry into willfulness effectively distinguishes those defaults that, though due to neglect, are excusable, from those that are not." *In re Suprema Specialties, Inc.*, 330 B.R. 40, 52 (2005). The court may find a default to have been willful where the conduct of counsel or the litigant was egregious and was not satisfactorily explained. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d. Cir. 1998).

In *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57 (2d Cir. 1996), the court vacated default judgment – not just default – when the defendant's in-house counsel mistakenly failed to respond to the complaint. In that case, the defendant received the summons and complaint at its main office in Lynbrook, New York and then forwarded the pleadings to its Uniondale, New York office. *Id.* at 58. Customarily, a pleading clerk for the defendant's in-house counsel would log the pleadings, obtain an extension of time to respond, and assign the action to an attorney. *Id.* at 59. However, the summons and complaint in that action were

9

accidentally placed in the file of a related case before being logged. *Id.* A letter from the plaintiff as well as a notice of reassignment from the court were subsequently sent to the Lynbrook office, but the defendant's management attorney concluded that no action was needed in response to such notice. *Id.* The court eventually entered default judgment against the defendant. *Id.* The case law reviewed by the court did not include a single decision denying a motion to vacate "because of mere administrative or clerical error." *Id.* Instead, courts "have refused to vacate a judgment where the moving party had apparently made a strategic decision to default." *Id.* (citations omitted). The court concluded that the defendant's conduct was not willful, deliberate, or evidential of bad faith. *Id.*

Courts have vacated default where service was improper or never received by the defendant. In *Austin Energy, LLC v. Eco Lumens, LLC*, No. 11-cv-5749, 2013 WL 6835192, at *3-4 (E.D.N.Y. Dec. 19, 2023), the court vacated default and default judgment, deeming it void because the plaintiff never properly served the summons and complaint. In *Waterscape Resort LLC v. 70 West 45th Street Holding LLC*, No. 21-cv-7350, 2022 WL 1558314, at *1 (S.D.N.Y. May 17, 2022), the defendants argued that their default was not intentional because they never received process. The summons and complaint were purportedly sent to defendants' hotel that had been closed due to the COVID-19 pandemic. *Id.* The court noted that the defendants' prompt appearance in the action after becoming notified of it reinforced that their default was not willful. *Id.* at *2. Ultimately, the court granted the defendants' motion to vacate default and denied the plaintiffs' motion for default judgment. *Id.* at *3.

Here, there was no strategic decision to default. As Jane Doe acknowledged in the Second Amended Complaint, there have been numerous legal proceedings in multiple states involving Jane Doe and Rees. Rees did not receive the Summons or Second Amended

Complaint through Jane Doe's purported efforts to effectuate service at the Roscoe Street Adress. He only recently learned of this lawsuit from his insurance carrier who, upon information and belief, conducted a docket search after being informed of a prior claim. (*See* Rees Decl. ¶ 13). After learning of the lawsuit, he promptly appeared in the action. Rees did not willfully fail to respond to the Second Amended Complaint.

### 2. <u>Plaintiffs will not be prejudiced if default is vacated</u>

As for the second factor, it must be shown that the defendant's delay would "result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d. Cir. 1983) (citing *Feliciano v. Reliant Tooling Co.,* 691 F.2d 653, 656-57 (3d Cir. 1982)); *In re Suprema Specialties, Inc.*, 330 B.R. 40, 53 (2005). Mere delay is not a sufficient basis for a finding of prejudice; something more is needed. *In re 45 John Lofts LLC*, 648 B.R. 16, 28 (2023).

Here, Plaintiffs do not identify any prejudice.[4] They do not and cannot argue that evidence has been destroyed because of the delay. Vacating default here will not prejudice Plaintiffs.

It must also be noted that Jane Doe, not Rees, caused most of the delay here. Jane Doe improperly filed the initial Complaint and then the Amended Complaint, attempting to represent her three minor children. After the Court rightfully precluded Jane Doe from representing her children, she refused to accept that decision, filing a letter motion for reconsideration and a subsequent appeal. The Court also had to *sua sponte* dismiss *17* causes of action in the Amended Complaint with prejudice because Jane Doe had frivolously attempted to prosecute criminal

---

[4] Although John Doe did not file or sign the Second Amended Complaint, Rees will hereinafter address certain claims as being made by "Plaintiffs" solely because that is how they are described in the pleading. Rees does not concede that John Doe properly brought any claims.

statutes in this civil action and to bring claims for which there was no private of action or did not apply outside of New York City. She further delayed this action by failing to properly serve Rees. Therefore, Plaintiffs cannot reasonably assert that any purported delay by Rees prevented them from pursing this action.

### 3.     Rees has meritorious defenses to the claims asserted

The third factor involves a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, "if proven at trial, would constitute a complete defense." *S.E.C. v. McNulty*, 147 F.3d 732, 740 (2d. Cir. 1998). To satisfy the criterion of a "meritorious defense," the defense need not be ultimately persuasive at this stage. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make. *In re 45 John Lofts LLC*, 648 B.R. 16, 28 (2023). Here, Rees has meritorious defenses to all of Plaintiffs' claims.

### a.     Intentional Infliction of Emotional Distress

Plaintiffs cannot establish the first cause of action asserting a claim for intentional infliction of emotional distress ("IIED"). "To state an IIED claim, a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021) (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)). "The first element—outrageous conduct— serves the dual function of filtering out petty and trivial complaints that do not belong in court, and assuring that plaintiff's claim of severe emotional distress is genuine." *Howell*, 612 N.E.2d at 702 (1993) (citation omitted). Even "false accusations of criminal conduct, or conduct that

society deems reprehensible, do not inherently establish IIED." *Truman v. Brown*, 434 F. Supp. 3d 100, 119 (S.D.N.Y. 2020).

Here, Plaintiffs allege that Rees, while holding a shotgun, insisted on taking John Doe hunting for beavers and that Rees facetimed Jane Doe while hunting, which she found to be "disturbing" because she is a vegetarian. (ECF 56 ¶¶ 39, 54, 115). Plaintiffs further allege that Rees disseminated videos of Jane Doe on "exclusive websites" containing "falsehoods" about Jane Doe and John Doe (which they fail to describe in any specific detail); disseminated videos, photos, and texts of Jane Doe and John Doe on social media (again, without identifying the contents of such materials); and contacted Jane Doe's "board members, contractors, film crew, management team, [and] charity staff" as well as John Doe's friends and school to report Jane Doe was dangerous, an attempted murderer, a fraud, and a thief. (*Id.* at ¶¶ 118-120). Tellingly, Plaintiffs do not name a single individual who Rees allegedly contacted. Jane Doe also does not allege to own any business or charity, and therefore, it is unclear how she could have her own "board members" or a "charity staff".

Rees vehemently denies Plaintiffs' allegations. Rees denies taking John Doe hunting and further denies shooting at any beavers with John Doe. (*See* Rees Decl. ¶¶ 19-20). Rees further denies posting videos, photos, or texts of Jane Doe or John Doe on any website, including social media sites. (*Id.* at ¶ 21). Rees did not contact Jane Doe's board members, contactors, film crew, management team, or charity staff or John Doe's friends or school to spread misinformation about her. (*Id.* at ¶ 22).

The conduct alleged does not meet the "extreme and outrageous" standard for an IIED claim. Even if it did meet the required standard, Rees disputes engaging in the alleged conduct. Plaintiffs will be unable to demonstrate their IIED claim.

        b.      **New York State Human Rights Law**

In the second cause of action, Jane Doe alleges sexual harassment, gender discrimination, and a hostile work environment in violation of the New York State Human Rights Law ("NYSHRL"), Executive Law § 296.  The NYSHRL "make[s] it unlawful for an employer . . . to discriminate against an individual in compensation or in terms, conditions, or privileges of employment because of that person's sex/gender." *Ayers v. Bloomberg, L.P.*, 203 A.D.3d 872, 873-74 (2nd Dep't 2022) (citing Executive Law § 296 (1)(a)).   To assert a discrimination claim under the NYSHRL, the plaintiff must demonstrate: "(1) she or he is a member of a protected class, (2) she or he was qualified to hold the position, (3) she or he suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Id.* at 874.  To establish a cause of action under a sexual harassment/hostile work environment theory, the plaintiff must show that he or she was subjected to "inferior terms, conditions or privileges of employment because of the individual's membership" in a protected category. *Elco v. Aguiar*, 226 A.D.3d 649, 651 (2nd Dep't 2024).

In *Mira v. Harder (Evans)*, 177 A.D.3d 426, 426-27 (1st Dep't 2019), the plaintiff asserted claims of discrimination, hostile work environment, and retaliation under the New York State and New York City Human Rights Laws as well as a claim under Civil Rights Law § 52-b. The court noted that the complaint contained "merely speculative and inherently incredible allegations of widespread surveillance, conspirational meetings, and eavesdropping involving unidentified persons . . . that are insufficient to state the necessary elements of a cause of action for employment discrimination, retaliation, harassment, or intentional or negligent infliction of emotional distress." *Id.* at 426-27 (quotation marks and citations omitted).

Here, Jane Doe does not allege to be a member of a protected class.  She also does not allege to be qualified for the positions she supposedly held with Rees's charity, Children and

Parents United, or in connection with Rees's production company, Monkey Toes.  In fact, she

does not even identify the positions she allegedly held with either entity.  Jane Doe does not

allege to have been terminated from any position or to have been treated differently than male

employees.  Instead, she alleges that she moved into Rees's home with her three minor children,

asserts that she was involved in an "intimate" relationship with him, and describes a series of

domestic incidents at his home.  In short, Jane Doe has not sufficiently pled any NYSHRL claim.

Additionally, Rees denies that his production company, Monkey Toes, employed her in

any capacity or that she worked on the docu-series, *The Respondent*, which did not begin filming

at any point in time before she allegedly vacated his home.  (*See* Rees Decl. ¶¶ 24-26).  Rees also

denies being involved in an intimate relationship with Jane Doe and disputes her characterization

of their relationship as well as the events described in the Second Amended Complaint.  (*Id.* at ¶¶

14-15).

### c.      New York Civil Rights Law

Plaintiffs cannot demonstrate that Rees violated the New York Civil Rights Law

("NYCRL") § 52-b as alleged in the third cause of action.   NYCRL § 52-b(1)(b)(i)-(ii) provides:

> Any person depicted in a still or video image, regardless of
> whether or not the original still or video image was consensually
> obtained, shall have a cause of action against an individual who,
> for the purpose of harassing, annoying or alarming such person,
> disseminated, or published, or threatened to disseminate or publish,
> such still or video image, where such image:
>
> a.   was taken when such person had a reasonable expectation that
>       the image would remain private; and
>
> b.   depicts (i) an unclothed or exposed intimate part of such
>       person; or (ii) such person engaging in sexual conduct, as
>       defined in subdivision ten of section 130.00 of the penal law,
>       with another person; and
>
> c.   was disseminated or published, or threatened to be
>       disseminated or published, without the consent of such person.

In *Mira*, *supra*, the court affirmed the dismissal of the Civil Rights Law § 52-b claim, further noting that the plaintiff "fail[ed] to allege that she had any personal knowledge of defendants disseminating intimate images of her on social media with the intent to harass or annoy her." 177 A.D.3d at 427.

Here, Plaintiffs allege that Rees disseminated videos of Jane Doe, including a "manipulated video" of Jane Doe walking on his property. (ECF 56 ¶ 139). Plaintiffs further allege that Rees threatened to share content captured in bedrooms and bathrooms. (*Id.* at ¶ 145). However, under NYCRL § 52-b, the video must either depict an unclothed or exposed intimate part of a person or such person engaging in sexual conduct. The dissemination of a video of Jane Doe merely walking around the property – even if "manipulated" – would not violate the statute. Plaintiffs do not allege that any video depicts them unclothed/exposed or engaged in sexual conduct. Nor do Plaintiffs allege that Rees threatened to disseminate videos of them unclothed/exposed or engaged in sexual conduct. Instead, they apparently wish for this Court to speculate that such videos exist and to infer additional meaning into Rees's alleged threat to disseminate videos of them in the bedroom or bathroom.

As a matter of law, Plaintiffs have failed to state any claim upon which relief can be granted under NYCRL § 52-b. Additionally, Rees denies threatening to disseminate videos of Plaintiffs in the bedroom or bathroom or any video them of them in a state of undress. (*See* Rees Decl. ¶ 23).

###     d.     Tortious Interference with a Contract/Prospective Economic Advantage

In the fourth cause of action, Jane Doe asserts claims for tortious interference with a contract as well as tortious interference with a prospective economic advantage. To state a sufficient claim for tortious interference with contract, a plaintiff must allege "(1) the existence

of a contract between the plaintiff and a third party, (2) the defendant's knowledge of the

contract, (3) the defendant's intentional inducement of the third party to breach or otherwise

render performance impossible, and (4) damages to the plaintiff." *Bayside Carting, Inc. v. Chic*

*Cleaners*, 240 A.D.2d 687, 688 (2d Dept. 1997). "Thus, to have a valid claim for tortious

interference with a contract, the existence of a valid contract is required." *AYDM Assocs, LLC v.*

*Town of Pamelia*, 205 F.Supp.3d 252, 275 (N.D.N.Y. 2016) (citing *Lama Holding Co. v. Smith*

*Barney Inc.*, 88 N.Y.2d 413, 424 (N.Y. 1996)).

"[B]reach of contract has repeatedly been listed among the elements of a claim for

tortious interference with contractual relations." *NBT Bancorp v. Fleet/Norstar Fin. Group*, 87

N.Y.2d 614, 620-621 (1996) (citations omitted); *see e.g.*, *Atlantic Gas & Walsh LLC v. 3170*

*Atlantic Ave. Corp.*, 2012 WL 5974068, at *7 (Sup. Ct. Kings Cty. Nov. 14, 2012); *Chrysler*

*Capital Corp. v. Hilltop Egg Farms, Inc.*, 129 A.D.2d 927, 928 (3d Dept. 1987) (to make out

breach of contract element within tortious interference with contract claim, the complaint must

"set forth the terms of the agreement upon which [the breach] is predicated, either by express

reference or by attaching a copy of the contract."); *J&L American Enterprises, Ltd. v. DSA*

*Direct, LLC*, 2006 WL 216680, at *3 (Sup. Ct. N.Y. Cty. Jan. 27, 2006) (dismissing tortious

interference with contract claim because plaintiff neither attached the contract nor "*expressly*

*referred*" to any specific terms that were breached) (emphasis added).

Here, Jane Doe ambiguously alleges that Rees and/or his "enablers" contacted various

individuals – who Jane Doe fails to name – to "undermine her success." (ECF 56 ¶¶ 150-152).

Jane Doe does not allege the existence of any contract; does not identify the term of any contract

that had been breached; does not assert that Rees and/or his "enablers" – who Jane Doe also fails

to name – knew of the contract; and does not explain how Rees and/or his "enablers" induced

these unnamed third parties to breach any specific contract term.  As a matter of law, Jane Doe

has failed to state any tortious interference with a contract claim upon which relief can be

granted.

"Under New York law, in order to make out a prima facie case for tortious interference

with prospective economic advantage, a plaintiff must establish '(1) that [he] had a business

relationship with a third party; (2) the defendant knew of that relationship and intentionally

interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or

improper means; and (4) the defendant's interference caused injury to the relationship.'"  *Penrose*

*Computer Marketgroup, Inc. v. Camin*, 682 F.Supp.2d 202, 215 (N.D.N.Y. 2010) (quoting

*Friedman v. Coldwater Creek, Inc.*, 321 Fed.Appx. 58, 59-60 (2d Cir. 2009)).  "Moreover, an

implicit element of acting 'for the sole purpose of harming the plaintiff' is knowledge of the

prospective economic relation."  *GS Plasticos Limitada v. Bureau Veritas,* 88 A.D.3d 510, 568

(1st Dep't 2011).

Here, Jane Doe makes no attempt to differentiate between her tortious interference with a

contract claim and her tortious interference with a prospective economic advantage claim.  She

alleges that Rees and/or his "enablers" contacted various individuals – who she does not name –

to interfere with her "prospective business opportunities" – which she does not identify.  (ECF

56 ¶ 150).  Simply put, Jane Doe "does not identify any third party with whom [she] lost the

prospect of doing business as a result of [Rees]'s actions," meaning her cause of action "fails as a

matter of law."  *Moynihan v. N.Y.C. Health and Hospitals Corp.*, 120 A.D.3d 1029, 1034 (1st

Dept. 2014) (internal citation omitted).  Jane Doe also fails to allege Rees and/or his "enablers"

knew of the relationships with these unnamed third parties and intentionally interfered with

them.  Therefore, she has also failed to state any tortious interference with a prospective

economic advantage claim upon which relief can be granted.

        e.      **Intentional Interference with Prospective Business Relations**

"To state a claim for intentional interference with prospective economic advantage under

New York law, a party must allege that: `(i) the plaintiff had business relations with a third-

party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a

wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts

injured the relationship." *Executive Trim Construction, Inc. v. Gross*, 525 F.Supp.3d 357, 372

(N.D,N.Y. 2021) (quotation marks and citations omitted).  "A plaintiff must also establish

causation by demonstrating that she would have entered into an economic relationship but for the

defendant's wrongful conduct." *Id.* (citations omitted).  These are the same elements as a tortious

interference with a prospective economic advantage claim.

In the fifth cause of action, Jane Doe asserts a claim for intentional interference with

prospective business relations, generally alleging that Rees's dissemination of "derogatory

websites and false narratives" undermined her professional prospects.  (ECF 56 ¶ 129).  Again,

Jane Doe does not name any third party, does not identify any specific prospective business

relation, and does not allege that Rees knew of any such relationship and intentionally interfered

with it.  Jane Doe cannot demonstrate that Rees's alleged interference caused injury to her

relationship with any third party.  Her intentional interference with prospective business relations

claim fails as a matter of law.

        f.      **Forced Labor Under 18 U.S.C. § 1589 *et seq.***

In the sixth cause of action, Jane Doe alleges that Rees subjected her to forced labor in

violation of 18 U.S.C. § 1589.  To assert a viable claim, Jane Doe must allege facts to

demonstrate that Rees knowingly obtained her services by any of the following means:

(1) by means of force, threats of force, physical restraint, or threats
of physical restraint to that person or another person;

(2) by means of serious harm or threats of serious harm to that
person or another person;

(3) by means of the abuse or threatened abuse of law or legal
process; or

(4) by means of any scheme, plan, or pattern intended to cause the
person to believe that, if that person did not perform such labor
or services, that person or another person would suffer serious
harm or physical restraint[.]

*Id.* at § 1589(a).  "The term 'serious harm' means any harm, whether physical or nonphysical,

including psychological, financial, or reputational harm, that is sufficiently serious, under all the

surrounding circumstances, to compel a reasonable person . . . to perform or to continue

performing labor or services in order to avoid incurring that harm."  *Id.* at § 1589(c)(2).

As the Court noted in its Memorandum-Decision and Order March 17, 2025, Jane Doe's

allegations in the Amended Complaint "are not sufficient to establish a violation of Section 1589

and Plaintiffs are not entitled to default judgment."  (ECF 55, p. 11).  After the Court pointed out

that the alleged threats of harm identified in the Amended Complaint only occurred after Jane

Doe allegedly stopped working for Rees (*see id.*), Jane Doe included new factual allegations in

the Second Amended Complaint, claiming that he threatened to harm himself and stated that

there would be legal repercussions from investors and the crew if she departed from her

employment.  (ECF 56 ¶ 168).  However, these new factual allegations do not correct the

deficiencies previously noted by the Court; this claim still fails.

Again, Rees denies employing Jane Doe to work on the docus-series, *The Respondent*.

(*See* Rees Decl. ¶ 24). As the docu-series had not started filming at any point prior to December

2022 when Jane Doe allegedly stopped working for Rees, there were no crew members working

on the project. (*Id.* at ¶¶ 25-26). In other words, the crew that Jane Doe was allegedly so

anxious to protect did not exist. Rees further denies threatening to harm himself or stating that

investors would take action against her if she stopped working on the docu-series or for the

charity. (*Id.* at ¶ 27). Rees did not force Jane Doe to provide labor.

g.    **Forgery**

Jane Doe attempts to assert a "forgery" claim in the seventh cause of action. Specifically,

Jane Doe alleges that Rees used Jane Doe's identity to submit documents on her behalf to law

enforcement and to the courts. (ECF 56 ¶ 174). As this Court previously noted, she does not

have a private right to assert claims under criminal statutes.

In *Shidagis v. Broome County D.S.S.*, No. 3:23-cv-00031, 2023 WL 198143, at *3

(N.D.N.Y. Jan. 17, 2023), *adopting report and recommendation*, 2023 WL 2140019 (N.D.N.Y.

Feb. 21, 2023), the court dismissed the plaintiff's claims for forgery and for falsification of

documents. (citing *Sentementes v. General Elec. Co.*, No. 14-cv-0131, 2014 WL 2881441, at *14

(D. Conn. June 25, 2014) ("The Court knows of no private action for 'forgery' or 'fabrication of

evidence.'"); *Reeves v. Wilkins*, No. 10-cv-2766, 2012 WL 3835902, at *6 (E.D.N.Y. Aug. 31,

2012) ("New York does not provide a private cause of action for . . . forgery.")).

Here, Jane Doe does not have a private right of action to assert any forgery claim.

Therefore, the seventh cause of action fails as a matter of law. Rees also denies forging or

submitting false documents on behalf of Jane Doe to law enforcement or to the courts. (*See* Rees

Decl. ¶ 30).

h.    **Identity Theft**

In the eighth cause of action, Jane Doe alleges that Rees used Jane Doe's identity to

submit documents on her behalf to law enforcement and to the courts, just as she does in the

seventh cause of action. As noted above, Jane Doe does not have a private right of action in

21

connection with Rees's alleged submission of fraudulent or forged documents in her name.  Her claim for "identity theft" fails as a matter of law.  Again, Rees also denies forging or submitting false documents on behalf of Jane Doe to law enforcement or to the courts.  (*See* Rees Decl. ¶ 30).

## IV.    <u>CONCLUSION</u>

Jane Doe has both failed to serve the Summons on Rees and has asserted spurious claims in her Second Amended Complaint that cannot succeed.  Based upon the foregoing, Defendant Jonathan Rees respectfully requests that his cross- motion to vacate default be granted and that Plaintiffs' motion for default judgment be denied.

Respectfully submitted,

Dated: September 8, 2025

**GORDON REES SCULLY MANSUKHANI, LLP**
*Attorneys for Defendant*
*Jonathan Rees*

By: <u>*s/ Ronald A. Giller*</u>
Ronald A. Giller, Esq.
290 W. Mt. Pleasant Ave, Suite 3310
Livingston, NJ 07039
Telephone: (973) 549-2500
Email: rgiller@grsm.com