# UNITED STATES DISTRICT COURT

### Northern District of New York

### 6th Judicial Division

|  |  |
|---|---|
| JANE DOE, JOHN DOE | Case No.3:24-cv-274 (MAD/ML) |
| Plaintiffs | |
| -against- | **REPLY TO CROSS MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT** |
| JONATHAN REES aka GREG ELLIS aka JOHNATHAN REES aka JONNY REES aka JACOB LORENZO | |
| Defendant | |

## **PLAINTIFF'S REPLY TO CROSS MOTION TO VACATE DEFAULT AND DEFAULT JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs JANE DOE and JOHN DOE respectfully submit their reply in opposition to the Defendant's cross-motion to vacate the default entered against him and his response to the Plaintiffs' default judgment. The Plaintiffs argue that vacating the default would undermine the integrity of the judicial process and expose them to renewed harm, especially given the Defendant's history of abuse towards the Plaintiffs, resulting in a three-year full stay-away Order of Protection issued by the Honorable Judge Young against the Defendant, as well as a pattern of evading service, engaging in fraudulent behavior, perjury, dishonesty and malicious prosecution. The Plaintiffs support their position with reference to the Second Amended Complaint, **ECF 56,**

1

the default entered against the Defendant, **ECF 66**, and the motion for default judgment, **ECF 71**, as follows;

**LEGAL STANDARD**

The standard for vacating a default typically requires a showing of good cause, including a meritorious defense and a reasonable excuse for the default. Courts have consistently held that vacating a default should not be granted lightly, particularly when there is evidence of fraud, dishonesty, or a pattern of abuse. In seeking the vacatur of a default entered pursuant to CPLR 5015, a two-prong test must be satisfied requiring Rees to "demonstrate a reasonable excuse for the default and a potentially meritorious defense to the action." Global Liberty Ins. Co. v. Shahid Mian, M.D., P.C., 172 A.D.3d 1332 (2nd Dep't 2019) (citations omitted).

**Counter Argument**

The Defendant portrays himself as a victim, claiming he is burdened by the need to defend himself; however, this predicament is the result of his own bad actions towards the Plaintiffs. Contrary to his assertions, Jane Doe has not filed claims in multiple jurisdictions; she has initiated only this lawsuit against him in the U.S. District Court for the Northern District of New York, located in Binghamton.

The Plaintiffs were compelled to seek a restraining order against the Defendant in Broome Family Court, also in Binghamton, due to ongoing abuse and severe harassment that endangered not only the Plaintiffs, but also Jane Doe's minor children. The Court appointed an independent Law Guardian, Rob Kilmer, Esq., to represent Plaintiff John Doe and his two minor siblings. Following a thorough investigation—including interviews with each child without Jane Doe, outreach to the children's schools and counselors, and consultations with child protective services—the Law Guardian requested the Court to secure protection for each child.

Jane Doe's attorney, David Spectator, Esq., presented compelling evidence to the Court, including credible direct testimony from Jane Doe. After extensive proceedings lasting several months, including a fact finding trial and Honorable Judge Young's Order, **EXHIBIT 1**, the Plaintiffs were granted a three-year full stay-away Order of Protection against the Defendant on April 17, 2024, as ordered by the Honorable Judge Young, **ECF 24, EXHIBIT 1**.

While PACER shows multiple lawsuits against the Defendant in varying jurisdictions, it is important to note that these involve different women, not the Plaintiffs, a fact the Defendant is well aware of.

The Defendant has a documented history of malicious prosecution against women, culminating in his own indictment in Chenango County, **ECF 71-12** on or around August, 2024. The grand jury charged violations of the following statutes against Rees: N.Y. P.L. § 175.35(1) (offering a false statement for filing in the first degree); N.Y. P.L. § 210.05 (perjury in the third degree); N.Y. P.L. § 210.45 (making a punishable false written statement); N.Y. P.L. § 250.45(1) (unlawful surveillance in the second degree); N.Y. P.L. § 135.60(3) (coercion in the third degree); N.Y. P.L. § 135.60(5) (coercion in the third degree); N.Y. P.L. § 135.60(9) (coercion in the third degree); N.Y. P.L. § 240.30(1A) (aggravated harassment in the first degree); N.Y. P.L. § 245.15 (unlawful dissemination or publication of an intimate image).

The indictment in Chenango County against Rees comes nearly a year after Jane Doe was wrongfully charged with crimes based on the Defendant's false complaint against her, which was filed by Rees on August 8, 2023.

Rees fled New York to evade criminal charges and accountability for his actions against Jane Doe and other women, reflecting a longstanding pattern of abuse that spans several years. His claims of being in danger are unfounded; rather, Jane Doe has been made a scapegoat in his narrative. He asserts that he fled New York in fear of Jane Doe, but he claims to have fled Los

Angeles to New York due to alleged harm from his ex-girlfriend, **ECF 71-15, EXHIBIT 1**— and is merely a continuation of his established pattern of abuse and deceit.

Plaintiff Jane Doe has consistently asserted throughout her lawsuit that the Defendant not only lied about the events of August 8, 2023, but has also continued to inflict harm on her and her family up to the date of filing this response. Rees's willful bad acts include derogatory edited videos, websites, and ongoing harassment directed at both Jane Doe and John Doe. These behaviors reflect not the actions of a victim, but rather those of an individual exhibiting a dark, abusive personality.

In an effort to evade accountability for his own willful misconduct, Rees has projected his negative traits and actions onto Jane Doe. There is evidence of ex parte communications, collusion, and corruption involving the Defendant with Chenango law enforcement and Justice Jordan Lilley of the Town of Smithville Court, **ECF 71-15, EXHIBIT 12** Justice Lilley issued a temporary order of protection against Jane Doe, engaged in ex parte communications with Rees prior to her appearance before Justice Lilley, and subsequently issued another temporary three-year order of protection against her on May 14th, 2024, more than seven months after the case was transferred to Honorable Judge Revoir, who vacated Justice Lilley's Order. Unfortunately, this Order has continued to circulate on social media **ECF 71-15 EXHIBIT 12** Honorable Judge Revoir is currently reviewing Jane Doe's Omnibus Motion, which the Plaintiffs believe will result in a full dismissal of charges, as Jane Doe did not commit the actions Rees alleges. The integrity of the rule of law must be upheld, and the willingness of a sitting judge to act unscrupulously on Rees's behalf prompted the Plaintiff to file a complaint with the Commission for Judicial Conduct against Justice Lilley on or around September, 2024 with further evidence submitted to the investigator in December, 2024, **EXHIBIT 2.**

**Rees Book Against Dana Rees**

Rees actively seeks out men with similar misogynistic views to assist him in targeting,

4

humiliating, doxing, and abusing his victims, including Vem Miller, 3:24-cv-1267. Rees is skilled at manipulating courts, lawyers, and judges to further his agenda against those he targets as noted in his book, The Respondent, **EXHIBIT 3**, written about the mother of his children, his ex-wife Dana Rees, *see Dana Rees declaration* **ECF 71-8**. Defendant has tens of thousands of male followers who are united in hatred and anger believing women are the enemy, with Rees spewing disturbing rhetoric in his own words:

On **Page 55**, Rees writes: *"we have known for centuries there are other verdant avenues for causing our fellow humans pain. We all know that deep in our DNA there are tools at our disposal that can —sometimes quite literally — take another's life without so much as laying a finger on them."*

On **page 113**, *"Judge Iwasaki again threw the book at me when he found out I had done as my attorney instructed and attended The Hills. Far from seeing it as the proactive step Susan had promised, he vilified me for "thinking I knew better than the court" and "ignoring his orders." I sat, helpless and hopeless, as the judge castigated me. The fact that Dana was served with over 100 counts of contempt of various orders was an immateriality to Iwasaki, whose Bogen-inspired inquisition continued."*

On **Page 115**, *"But I soldiered on and, in March of 2016, walked once more into Department 63 at the Stanley Mosk Courthouse in downtown LA, desperate to clear my name, this time prepared to contest Dana's request for renewal of the restraining order and armed and ready to present the "not guilty" DCFS findings for the first time. Things did not go as planned."*

On **Page 134**, *"due process is for chumps."*

On **Page 188**, *With Bogen exited, and having been served with an order to show cause and affidavit for contempt (over 100 counts), and with the threat of facing a criminal trial—different from the quasi kangaroo court of family law—Dana finally agreed to mediate. But after only two days, and with fees in excess of $31,000, she summarily cancelled mediation and dragged me back into court with her new attorney in tow, demanding that I subject myself to yet another psychological evaluation. And so, nearly four years after the first independent court-ordered*

5

*psychological evaluation had proved my sanity and reported the litany of Dana's parental*

*alienation maneuvers on our children, I reluctantly agreed to prove again what she and the court*

*already knew—that I was not mentally unstable."*

On **Page 213**, Rees writes he failed a Court ordered drug test: *"Mr. Ellis is particularly*

*concerned, because one drug test reflected residual opiates. He explained that he had eaten a*

*lemon poppy seed muffin. A brief check on the internet reveals many references to the fact that*

*oral consumption of poppy seeds will result in urinalysis with peak values of approximately 10.0*

*micrograms per liter. For example, the Journal of the Annals Toxicology 2003 January-*

*February; 27 (1); 53-6 "Urinary Concentrations of Morphine and Codeine after Consumption of*

*Poppy Seeds," Thevis M, Opfermann G, Schanzer. I have also consulted DMG Drug Testing*

*Facility to interpret the drug screening of July 2015 in which opiates and Codeine were said to*

*have been detected. The proprietor confirmed that poppy seeds can cause this level of opiate*

*detection. All that from a poppyseed muffin. And this was pro forma for Bogen—some iteration of*

*this tirade against me was fundamental to every appearance we made in court. And Iwasaki,*

*apparently uninterested in the niceties of what actually happened, threw the book at me. My*

*already sullied reputation was battered further as Judge Iwasaki ripped up my "golden ticket" in*

*open court."*

Rees, has demonstrated a pattern of victimhood and willful misconduct, using incidents created

out of his own circumstance for personal gain. On May 6th, 2025 Rees pitched a film project

titled "Surviving [Jane]," to Jay Cohen, Gersh Talent Agency in Los Angeles, which exploits his

claims against Plaintiff for financial profit. This opportunistic behavior further questions the

validity of his allegations and motives, suggesting that he seeks victimhood primarily for

financial gain rather than from any genuine concern for safety.

In response to Defendant Rees assertions that John Doe's claims should be vacated, Plaintiffs

follow MAD_Rules_of_Practice_04_14_2020 *"Multiple parties/joint motions. All motions shall*

6

*be filed jointly if there is more than one movant on a side (i.e., plaintiffs or defendants) unless the Court permits otherwise during the pre-motion conference. If the parties wish to file separate/ multiple motions seeking the same relief, in their pre-motion letter, those parties must provide the Court with compelling justification as to why a joint motion is inappropriate."*

The assertion that "[a] defendant's 'sworn denial of receipt of service...rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing'" does not apply in this case. The evidence presented by Plaintiffs in their exhibits clearly demonstrates that the Defendant, Rees, has acted dishonestly regarding his knowledge of this lawsuit, and receipt of service.

Rees's statements are contradicted by the photographic evidence and tracking information submitted, which unequivocally confirm that he was served with the Second Amended Complaint, Summons, and other court documents. This evidence undermines any presumption of truthfulness in his sworn denial and establishes a basis for the Plaintiffs' claims that proper service was executed.

The Plaintiffs do not believe that an evidentiary hearing is necessary given the compelling evidence submitted. However, should the Court determine that a hearing is required, the Plaintiffs are prepared to present witness testimony to further substantiate their claims.

**Confidential Address**

Honorable Judge Young ordered a confidential address for the Plaintiffs in November, 2023. A few months later in or around late February 2024, Rees also requested a confidential address, which Judge Young initially granted pending a full understanding of the situation. Based on belief and knowledge, Rees's confidential address expired in or around February 2025, and was not renewed following the fact-finding trial that resulted in a three year full stay away order of protection against Rees. Subsequently, Rees filed another application for a confidential address in

or around May, 2025, which was denied by Honorable Judge Gorman on July 11th, 2025,
**EXHIBIT 4.**

**Service**

"[e]stoppel, in this context, may preclude a Defendant 'from challenging the location and
propriety of service of process if that Defendant has engaged in affirmative conduct which
misleads a party into serving process at an incorrect address'" (Hudson Val. Bank, N.A. v Eagle
Trading, 208 AD3d 648, 650, quoting Everbank v Kelly, 203 [*3]AD3d at 145). This includes
situations, for example, where a Defendant willfully misrepresents his or her address, or engages
in conduct calculated to prevent the Plaintiff from learning his or her actual place of residence
(see Feinstein v Bergner, 48 NY2d 234, 241; Hudson Val. Bank, N.A. v Eagle Trading, 208
AD3d at 650; Everbank v Kelly, 203 AD3d at 145; Bank of N.Y. v MacPherson, 301 AD2d 485,
486).

Rees's DMV abstract indicates that he resides at Roscoe Avenue, Chicago, **ECF 63-2** where he
was served **ECF 66** Notably, he has not updated his DMV records. Courts have precluded a
Defendant from contesting service at a former address where the Defendant failed to fulfill the
statutory obligation of timely notifying the DMV of an address change (see e.g. Everbank v
Kelly, 203 AD3d at 146, citing, inter alia, Mighty v Deshommes, 178 AD3d 912, 915; Canelas v
Flores, 112 AD3d 871, 872). That statutory obligation is set forth in the Vehicle and Traffic Law,
including section 505(5), which provides that "[i]t shall be the duty of every licensee to notify
the commissioner in writing of any change of residence of such licensee within ten days after
such change occurs." Vehicle and Traffic Law § 401(3) similarly provides, in pertinent part, that
"[i]t shall be the duty of every owner holding a certificate of registration to notify the
commissioner in writing of any change of residence of such person within ten days after such
change occurs." As noted above, the Supreme Court determined that estoppel precluded a

challenge to service upon Charlecius at his former address based on his failure to comply with Vehicle and Traffic Law § 505(5).

This ruling should preclude Rees from challenging service, as he is clearly evading it, consistent with his typical pattern, as evidenced. Rees's refusal to comply with court deadlines signifies a belief that the rules do not apply to him, as noted in his Book, The Respondent *"due process is for chumps."* By vacating the default, Rees would be rewarded for his misconduct and dishonesty, thereby prejudicing the Plaintiffs, who have endured nearly three years of abuse at Rees hands. He has disregarded Honorable Judge Young's order to remove the website ending in .info, whether by him or third parties on his behalf, which includes Rees home RING videos, and the Plaintiffs are justifiably relying on the default with the hope of obtaining a permanent injunction against Rees to protect themselves after default judgment. Furthermore, Rees is actively evading service not only from the Plaintiffs through professional process servers, but also from law enforcement and the courts. This conduct undermines the integrity of the judicial process and obstructs the enforcement of legal proceedings:

**Special Prosecutor — Warrant — Service by Long Beach Police Department**
Rees attempted to evade service on November 12th, 2024 when Deputy Marshal Vopat, Long Beach Police observed Rees leaving the residence of 2309 Florimond Trl, who after a stop presented Rees with a hard copy of the amended warrant and notice to appear in Chenango County Court on 20th December, 2025, **EXHIBIT 5**, page 3, Rees refused service: *"I presented Jonathan with the hard copy of the amended warrant and notice to appear. While attempting to hand Jonathan the hard copies his attitude changed from pleasant and cooperative to argumentative advising he refuses service. Jonathan advised his refusing service because he is in the State of Michigan as I'm a sworn law enforcement officer of the State of Indiana and the Warrant is out of the State of New York. Jonathan continued to refuse service, returning to the driver's seat of his vehicle. I placed both hard copies on the driver's door informing Jonathan he*

9

*has been served this documentation before returning to my patrol vehicle."*

**Broome Family Court — Attempted Service of the Order of Protection by Cook County Sheriffs, Kane County Sheriff's and Maricopa County Sheriff's, Abuse of the New York Judicial System and Willful Misconduct by Rees.**

I.   Rees initially gave Broome Family Court the Town of Smithville, Chenango County, New York address, **EXHIBIT 6.** Sometime after the first appearance, Rees changed his address with the Court to Randall Road, Kane County, Illinois, **EXHIBIT 7.**

II.  On April 18th, 2024 the day after the three year order of protection was ordered against Rees, Honorable Judge Young signed an order to Kane County Sheriffs Department **EXHIBIT 8** ORDER - FIREARMS LICENSES AND SURRENDERS-NOTICE TO LAW ENFORCEMENT AGENCY.

III. On April 24th, 2024 seven days after the Order of Protection was issued, Rees filed a notice of appeal with the Court, **EXHIBIT 9.**

IV.  For over ten months, Broome Family Court made multiple attempts to serve Rees with the Order of Protection through Kane County Sheriffs, Cook County Sheriffs, and Maricopa County Sheriffs, pages 5, 6, 8, 9, and 15, **EXHIBIT 10.**

V.   On or around July 15th, 2024, the Plaintiffs filed a violation of the Order of Protection due to ongoing abuse, and Rees and his associates continuing to refuse to take down the website ending in .info in violation of Honorable Judge Young's order, *see transcript,* page 4 **EXHIBIT 1** and persisted in posting about the Plaintiffs on social media.

VI.  Between July, 2024 and December, 2024, initial court appearances took place without Rees, during which the Court struggled to effectuate service upon him.

VII. On December 5, 2024, Rees requested an adjournment on the day of the fourth scheduled initial appearance. This request was granted by Honorable Judge Young, who extended the benefit of the doubt to Rees, page 11, **EXHIBIT 10.**

VIII. On or around January 9th, 2025 Rees filed a motion to vacate Order of Protection and dismiss violation petition, nine months after the OOP was issued against Rees, claiming failure to be served and other outlandish excuses.

IX. On February 11th, 2025 an attorney conference was held and Honorable Judge Young ordered Rees to be served by 3pm on February 14th, 2025 or he would issue a warrant. Rees references the threat of a warrant in his affidavit on February 13th, 2025, **EXHIBIT 11**.

X. On February 11th, 2025 Rees filed a second motion to dismiss for failure of service. Page 3, No. 5, **EXHIBIT 12**: *"Without proper service, the Respondent cannot be held accountable for violating an order of protection of which they were not legally notified."*

XI. On February 18th, 2025 Honorable Judge Young denied both of Rees motions to vacate and motion to dismiss the violation of the Order of Protection, **EXHIBIT 13**.

XII. On February 19th, 2025 Judge Young recused himself after Rees friend called Honorable Judge Young on his personal phone, which Plaintiffs believe was an attempt by Rees to influence the case against Plaintiffs after Honorable Judge Young denied his motion to vacate and dismiss the previous day, **EXHIBIT 14**.

XIII. On or around March 12th, 2025, the case was transferred to Honorable Judge Gorman.

XIV. On March 14th, 2025, Rees filed a motion to transfer the case to IDV court, a jury trial and to appear virtually.

XV. On March 20th, 2025 Plaintiff's attorney filed opposition to motion to dismiss on the basis of res judicata, as an identical motion seeking the same relief was previously filed and already denied by the Court on February 18th, 2025 and response to motion to transfer case to IDV.

XVI. On April 3rd, 2025 Honorable Judge Gorman denied Rees motion and ordered his personal appearance: *"Further, this respondent has never appeared physically in this Court and his lack of appearance has been used as a sword rather than a shield."* **EXHIBIT 15**.

XVII. On or around the month of May, 2025, Rees filed an application with Broome Family Court to renew an order for a Confidential Address, denied by Honorable Judge Gorman on

July 11th, 2025, **EXHIBIT 4**.

Plaintiffs are uncertain whether the Broome Family Court Clerks identified Rees's address at Roscoe, Cook County, or the address in Maricopa County, Arizona, through their own investigation or if Rees voluntarily provided these addresses. Regardless, Rees evasion of service for ten months reflects a deliberate and contemptible disregard for the judicial process. This behavior not only wastes valuable time and resources, but also demonstrates a profound lack of respect for the protections afforded to the Plaintiffs.

**Defendant was Knowledgeable and Served**

The Plaintiffs have presented substantial evidence demonstrating that Rees was aware of the ongoing lawsuit and that he was duly served with the amended complaint at the Roscoe address, as indicated in **ECF 71-15, EXHIBIT 9**. Notably, on or around December 9, 2024, Rees in his own filings in a separate lawsuit 3:23-cv-1352, in which the Plaintiffs are not involved, thereby affirms his awareness of Plaintiff's legal proceedings against him, including exhibits with a time stamp of May 1st, 2024 **ECF 84-4**, Additionally, correspondence between Rees and Assistant District Attorney Christine Rudy, Chenango County, as well as his communications with multiple law enforcement agencies on or around March 9th, 2024 further corroborates this assertion, as reflected in **ECF 71-15, EXHIBIT 7**. In these communications, Rees alleges that Plaintiff Jane Doe engaged in harassment and claims that her actions constitute criminal contempt, urging law enforcement to take action against her, when Plaintiffs were simply serving Rees and following court rules of mailing. Given Rees's established pattern of abuse and history of malicious prosecution, the Plaintiffs were justifiably concerned about his potential actions at the outset of this lawsuit. This apprehension prompted Plaintiffs to request permission from the Court to serve Rees through his attorneys and via email by a process server. However, this request was ultimately denied, **ECF 12**. The Plaintiffs have consistently adhered to all rules of service

and mailing as required under Federal and local rules.

Furthermore, on May 23rd, 2025, Rees emailed photographic evidence of the envelope containing the Second Amended Complaint, Summons, and other court documents, which was mailed to Rees on April 18th, 2025. This action was directed to Assistant District Attorney Christine Rudy and law enforcement, constituting a further attempt to maliciously prosecute Jane Doe, page 1, **EXHIBIT 16,** This evidence clearly demonstrates Rees's receipt of the Second Amended Complaint. The photograph in question prominently displays the tracking number 9589 0710 5270 2257 6359 02, which corresponds with the evidence submitted by the Plaintiffs in their motion to enter default and **EXHIBIT 17**. This additional layer of evidence, **EXHIBIT 18,** from the United States Postal Service further confirms that the package, bearing the same tracking number, was signed for at the Randall Street address.

**Default is Willful Misconduct**

Rees's consistent pattern of anger and abusive behavior undermines any rationality in his actions. His relentless pursuit to have Jane Doe incarcerated and silenced, is not only alarming, but poses a significant ongoing risk; it takes only one law enforcement officer to be misled by Rees's false narrative of harassment for Jane Doe to face wrongful arrest for another crime she did not commit. This ongoing pattern of willful misconduct and abusive behavior is not only cruel, but also distressing, creating a state of instability and constant fear regarding Rees's next move against the Plaintiffs, which has Jane Doe hyper-vigilant, resulting in health complications, including a lump on Jane Doe's left breast, now aggressively expanding to under Jane Doe's armpit, which Plaintiffs can evidence at the Inquest hearing to determine damages. Rees's continued dishonesty, fraud and abuse exemplify a troubling determination to manipulate the legal system to achieve his ends.

**Witness intimidation**

On May 14th, 2024, Jane Doe was subpoenaed in a non-party case 3:23-cv-1352 for a deposition scheduled on June 6, 2024, **EXHIBIT 19**. On the same day, Jane Doe waived service, **EXHIBIT 20**. "Defendant's relationship to [Jane Doe] is material to this action, because she is a key witness in this case", **EXHIBIT 21**. Due to Rees's fraudulent filings falsely attributed to Jane Doe, multiple women—including the victim in the aforementioned case—believe that Jane Doe has committed crimes against them. This reflects the chaos that Rees deliberately creates.

Also, on May 14th, 2024, Rees friend, Justice Lilley of the Smithville Town Court, ex parte —either by phone or email—rather than in person ordered an OOP against Jane Doe. Notably, Rees had relocated out of New York State, beyond Justice Lilley's jurisdiction, approximately five months prior to this communication. During this contact, Rees sought a three-year order of protection against Jane Doe without the knowledge of the Plaintiffs, which Rees subsequently filed in 3:23-cv-1352, **ECF 37-1**. Plaintiff's only found out after Rees and his third party enablers distributed the OOP on social media, **ECF 71-15 EXHIBIT 12** and on the docket for the above case — Judge Revoir kindly vacated. Rees used this frivolous OOP as a weapon, not as a shield, against Jane Doe.

It is pertinent to highlight that Rees had not referenced Jane Doe in any prior filings in this non-party case 3:23-cv-1352 before she was subpoenaed for a deposition. Rees's subsequent actions constitute a pattern of outrageous behavior aimed at harassing and intimidating Jane Doe causing severe emotional distress. Rees's ongoing willful misconduct clearly aims to undermine Jane Doe's role as a key witness in the aforementioned case against him. This is evidenced by his repeated filings that harass Jane Doe and disseminate falsehoods publicly, despite her involvement in the case being solely as a witness and her anonymous status as ordered by the Court in Jane Doe and John Doe's case:

I.   06/3/2024 Transcript **ECF 71-15, EXHIBIT 26**

II.   06/17/2024 **ECF 37; ECF 37-1**;

III.   12/08/2024 **ECF 78**;

IV.   12/06/2024 **ECF 82**;

V.   12/10/2024 ECF 84; **ECF 84-2; ECF 84-3; ECF 84-4**;

VI.   08/27/2025 **ECF 110**;

VII.   08/27/2025 **ECF 112**;

VIII. 08/28/2025 **ECF 113**;

IX.   09/03/2025 Transcript

At all the above times, Rees had access to the Public Access to Court Electronic Records (PACER) system and willfully chose to ignore the Plaintiffs' ongoing lawsuit against him. Instead of addressing the legal matters at hand, Rees engaged in a pattern of behavior characterized by unstable, ranting communications that perpetuated falsehoods in the above filings. His actions included the submission of misrepresented documents and the disclosure of private information, further demonstrating a deliberate intent to distort the truth and harass the Plaintiffs. This conduct undermines the integrity of the judicial process and reflects a blatant disregard for the legal proceedings in which he is involved.

Witness intimidation constitutes a serious form of willful misconduct that undermines the integrity of the judicial process. Such actions involve intentional efforts to threaten, coerce, or otherwise manipulate witnesses to deter them from providing truthful testimony. This behavior reflects a reckless disregard for the rights of others and poses a significant threat to the fairness of legal proceedings. Defendant engaged in witness intimidation, which not only impacted Jane Doe, but also jeopardized the administration of justice. Courts view these actions with utmost seriousness, as they can impede the ability of the legal system to function effectively. Given the importance of truthful testimony, any instance of witness

intimidation must be addressed with appropriate legal action to uphold the principles of justice and accountability.

**Fraudulent Transfer**

Rees asserts that he is "judgment proof," a claim that may explain his failure to respond to the Plaintiffs' complaint. Rather than addressing the legal actions against him, Rees appears to have engaged in a calculated strategy to shield his assets. Evidence suggests that he has been actively transferring his assets offshore to locations such as the Cook Islands and New Zealand. Furthermore, Rees has established IFLYTRUST, a trust entity which owns the real property in Indiana, thereby obscuring his ownership and control over these assets, **EXHIBIT 22**, signed by Rees in the Sales Disclosure, **EXHIBIT 23** after Rees sold his property in New York without marketing, in a private sale for $999,999, **EXHIBIT 24**. Additionally, Rees has registered MORF LLC in Wyoming, a jurisdiction known for its robust privacy protections concerning corporate directors. This strategic choice indicates a deliberate effort to distance himself from his liabilities while maintaining control over substantial assets, including a Tesla vehicle, which was initially registered in Rees name in New York State as noted in Rees speeding ticket driving at 98 MPH in a 65 MPH zone, **EXHIBIT 25**, sent to Jane Doe as part of discovery in Chenango County. Perpetuating his victim narrative, Rees emailed Assistant District Attorney Christine Rudy. *"Christine: Attached is the ticket I received after speeding away from a black truck in Allegany county just after I had got off the phone with Detective Sargeant O'Hara. Thank you for offering to help with this"*, **EXHIBIT 26,** along with the transfer of ownership from Rees to MORF LLC, **EXHIBIT 27**, raises significant concerns regarding his intent to evade creditors and legal responsibilities.

Based on Rees's behavior in Broome Family Court, the Plaintiffs were acutely aware that he would likely adhere to his predictable pattern of abuse by asserting a lack of service in this

lawsuit. This tactic serves as an attempt to mock the Court and the judicial system while further perpetrating abuse against the Plaintiffs. Rees's dishonest assertions in his affidavit supporting the motion to vacate the default exemplify his willful misconduct, including potential perjury before this Court. His affidavit reveals a belief that he can outsmart the Court and evade accountability for his actions, as illustrated with his obvious dishonesty throughout, including ¶ 13: *"I recently learned of this lawsuit from my insurance carrier who, upon information and belief, conducted a docket search after being informed of a prior claim."* The exhibits substantiate the Plaintiffs' claims that Rees not only had knowledge of this lawsuit, but was also properly served.

In light of Rees's history, the Plaintiffs took extensive measures to ensure that Rees received both the Amended Complaint and the Second Amended Complaint, Summons and other court documents, employing professional process servers to serve Rees at Roscoe Street, the address on Rees DMV abstract, **ECF 63-2 EXHIBIT 1**, which is owned by Rees's fiancée Laura Greenman Heine's sister, Jennifer Greenman **EXHIBIT 28**, as well as process servers mailing to Roscoe, and additional sound judgment by them given Rees evasive tactics, by emailing the aforementioned documents to Rees and his attorneys of record, **ECF 60**.

Plaintiffs due diligence extended to all known addresses, including Randall Road, the address Rees provided to Broome Family Court, **EXHIBIT 7**, the Country Squire Drive address owned by Rees fiancée Laura Greenman Heine, **EXHIBIT 29**, where Rees received mail, **EXHIBIT 30**, which Plaintiffs allege Rees amended at USPS after Plaintiffs mailed the Second Amended Complaint certified to the Country Squire Drive address on April 18th, 2025; and to the Florimond Avenue address, owned by the "IFLYTRUST" through an off shore trust "SouthPac Trust" based in the Cook Islands and New Zealand — Rees has engaged in fraudulent activity by moving his assets out of New York State in a deliberate attempt to evade accountability to Plaintiffs. This calculated maneuver to conceal his

17

financial resources from creditors underscores his ongoing pattern of deceitful behavior and willful misconduct. Rees signed the Sales Disclosure and utilities are set up at the Florimond Avenue property in his fiancée Laura Greenman Heine's name, **EXHIBIT 27**, and to the Central Ave, Arizona address, which Rees provided to the NDNY Court in a different case 3:23-cv-1352 Plaintiffs are not a party to, filed on the docket and therefore, a public record.

Given Rees's actions not only toward the Plaintiffs, but also in evading an attempt by the Special Prosecutor via Long Beach Police Department to serve Rees with a warrant, as well as Broome Family Court's efforts to serve Rees with the Order of Protection, it is evident that Rees behavior is a pattern of abuse and was willful misconduct and constitutes ongoing emotional and psychological abuse. Rees's tactics not only disrupt the judicial process, but also inflict significant distress on the Plaintiffs, who are striving to enforce their rights and ensure their safety. The ongoing pattern of abuse by Rees continues unabated, manifesting in a series of harmful actions aimed at emotionally, physically, and mentally draining the Plaintiffs. Rees's conduct seeks to disrupt the judicial process and inflict chaos and financial strain on his adversaries. Rees's evasion of service is a tactic from his book, The Respondent, which Rees appears to treat as a game, further exacerbating the Plaintiffs' suffering and hindering their pursuit of justice.

The Plaintiffs acknowledge the standard articulated by the courts regarding the concept of "willfulness" in the context of vacating a default judgment. However, the circumstances surrounding Rees's default demonstrate conduct that extends beyond mere negligence or carelessness. As noted in *S.E.C. v. McNulty*, willfulness is characterized by egregious conduct that reflects a blatant disregard for the judicial process. Rees's actions—specifically, his intentional evasion of service and his efforts to conceal his assets of millions of dollars—constitute a clear example of such willful misconduct. This behavior not only undermines the integrity of the proceedings, but also illustrates a conscious choice to ignore legal

18

obligations. Furthermore, while gross negligence may not entirely preclude relief, it is essential to recognize that Rees's actions do not fall within the realm of excusable neglect. The absence of a satisfactory explanation for his conduct reinforces the argument that his default was deliberate rather than a result of inadvertence or oversight. In light of these considerations, the Plaintiffs assert that the default should be deemed willful, warranting denial of any motion to vacate. The principles of justice and fairness dictate that parties cannot benefit from their own misconduct, and allowing Rees to escape the consequences of his actions would be contrary to the interests of justice.

### Plaintiffs will be Prejudiced if Default is Vacated

The Plaintiffs contend that vacating the default against Rees would not only prejudice their case, but also establish a dangerous precedent that undermines the integrity of the judicial process. Allowing Rees to vacate the default would effectively reward his pattern of abuse, dishonesty, and willful misconduct, sending a message that such behavior may be tolerated within the legal system. Such a decision could embolden other defendants to engage in similar non-compliance, fostering an environment where parties manipulate their interactions with insurance carriers and the courts. This outcome would allow Rees to continue evading accountability, with willful tactics leading to the loss of critical evidence and the unavailability of witnesses as time progresses. The reliance on the existing default is pivotal; the Plaintiffs have based their legal strategy on this order, and any disruption would severely compromise their ability to pursue justice in a jury trial, causing Plaintiffs further distress, given this lawsuit action was filed by Plaintiffs 18 months ago. Furthermore, the implications of vacating the default extend beyond the immediate case. It threatens the foundational principles of fairness and justice that are essential to the legal system. Allowing Rees to evade the consequences of his actions would not only harm the Plaintiffs but could also encourage a broader disregard for judicial authority among defendants. Rees's request to vacate the default should be viewed as a challenge to the court's authority and the integrity

of the judicial process. Upholding the default is crucial to maintaining accountability and ensuring that those seeking redress are not further victimized by the very system designed to protect them.

**Insurance**

Rees's failure to timely notify his insurance company of the claims against him has significantly prejudiced the Plaintiffs. Under New York Insurance Law § 3420(a), an insured party is required to provide timely notice of a claim to their insurer. Rees's willful actions in fulfilling this obligation has had severe repercussions for the Plaintiffs, leaving them with no viable recourse. They are acutely aware that Rees began transferring his assets out of New York State and offshore after committing bad acts towards Plaintiffs, which diminishes their chances of recovery should they prevail in their case against Rees who has consistently evaded accountability. The Plaintiffs have been compelled to proceed pro se, not by choice, but as a direct result of the financial restrictions and instability caused by Rees's misconduct. This ongoing willful disregard for his responsibilities further exacerbates the Plaintiffs' predicament, highlighting the need for the court to uphold the integrity of the judicial process and ensure that justice is served.

Moreover, had Rees fulfilled his obligation to notify his insurer in a timely manner, it is reasonable to assert that an attorney would have been willing to take this case on a contingency fee basis. Such representation would have afforded all four original Plaintiffs access to legal counsel, enabling them to pursue their claims with the understanding that they could potentially recover damages from Rees's insurance policy. The failure to provide timely notification has not only hindered the Plaintiffs' ability to secure appropriate legal representation, but has also jeopardized their chances of achieving a favorable resolution in this matter, which Defendant is exploiting to his benefit and why Rees should not be rewarded by granting his motion to vacate the default. This lack of representation has left the

Plaintiffs at a significant disadvantage, further exacerbating the challenges they face in their pursuit of justice against a defendant who has systematically evaded accountability.

The principles established in *Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983), highlight the importance of ensuring that Defendants are held accountable for their actions, particularly when their conduct undermines the integrity of the judicial process. Allowing Rees to vacate the default would not only disadvantage the Plaintiffs, but could also set a troubling precedent that permits Defendants to manipulate the legal system to their advantage.

## I.  Risk of Fraud

The Plaintiffs assert that granting the Defendant additional time poses a significant risk of fraud that cannot be overlooked. The Defendant has a well-documented history of fabricating documents and manipulating evidence, which raises profound concerns about his potential to exploit this opportunity to further deceive the court. Permitting him to re-enter the proceedings could open the door to the introduction of false narratives and misleading information, severely undermining the integrity of these proceedings. Such actions not only threaten the Plaintiffs' ability to present their case effectively, but also compromise the fundamental principles of truth and justice that the judicial system is designed to uphold. Given the Defendant's previous misconduct, there is a tangible risk that he may engage in further deceptive practices, including the creation of fraudulent documents or the alteration of existing evidence. This behavior could hinder the discovery process, confuse the issues at hand, and ultimately mislead the court. The potential for such actions not only prejudices the Plaintiffs, but also erodes public confidence in the judicial process as a whole. In light of these considerations, it is imperative that the court carefully weigh the implications of allowing the Defendant additional time. The preservation of the integrity of the judicial process must take precedence over any perceived benefits of reopening the case, as the risk of fraud far outweighs any arguments in favor of vacating the default.

## II. History of Dishonesty

The Defendant has consistently exhibited a troubling pattern of dishonesty, as evidenced by his recent indictment for perjury and his submission of falsified documents to Judge Revoir in Chenango County. This history of misconduct not only raises serious doubts about his credibility, but also suggests that he may act in bad faith if granted another opportunity to participate in these proceedings. Particularly concerning is the Defendant's behavior in his affidavit, where he has been found to provide misleading information under oath. Such actions not only undermine the integrity of the judicial process, but also reflect a blatant disregard for the truth. The Defendant's willingness to lie in official filings signals a troubling propensity to manipulate the legal system for his own benefit. Given this established history of deceit, allowing the Defendant to re-enter the proceedings would likely result in further obfuscation and misrepresentation. The risk that he may continue to engage in dishonest practices poses a significant threat to the Plaintiffs' ability to seek justice and could severely compromise the court's capacity to ascertain the truth. In light of these considerations, the Plaintiffs urge the court to recognize the potential dangers of granting the Defendant additional time, as his demonstrated pattern of dishonesty fundamentally undermines the fairness and integrity of the judicial process.

## III. Impact on Credibility

The Defendant has demonstrated a conscious disregard for the ongoing legal proceedings against him, choosing to ignore them until it was convenient for him to respond. His deliberate refusal to adhere to court-imposed deadlines suggests a troubling belief that the rules of the court do not apply to him. This pattern of behavior raises legitimate concerns about his credibility and integrity in these proceedings. Granting the Defendant additional time could provide him with an opportunity to further manipulate the situation to his advantage. There is a substantial risk that he may exploit this additional time to intimidate the Plaintiffs' witnesses, similar to the intimidation faced by Plaintiff Jane Doe, a non-party

witness against him in another case. This ongoing pattern of intimidation raises significant concerns about the integrity of the proceedings, alter or fabricate evidence, or otherwise obstruct the judicial process. Such actions would not only undermine the Plaintiffs' case but could also compromise the integrity of the court itself. The Defendant's history of evasion and manipulation calls into question his motives and intentions. Allowing him further leeway in this matter could exacerbate these issues, potentially leading to a scenario where justice is not served. The Plaintiffs urge the court to consider these factors carefully, as the Defendant's behavior strongly indicates a disregard for both the legal process and the principles of fairness that the court is sworn to uphold.

## IV. Preservation of Evidence

The preservation of evidence is paramount to ensuring a fair legal proceeding. The continued existence of a harmful website ending in .info and social media posts that the Defendant has failed to remove, in violation of Honorable Judge Young's three-year full stay away order of protection, poses a significant ongoing threat to the Plaintiffs, particularly to Jane Doe. She has suffered considerable emotional distress as a direct result of Rees willful misconduct. When Jane Doe's name is entered into any search engines, for example, Google, the first results are harmful with the website ending in .info., **EXHIBIT 31**. In 2025, individuals frequently search for information about others to make decisions regarding employment, dating, or allowing their children to socialize, and children do the same to find out information about their peers, their family — it's impossible to get away from the damage caused by the website, impacting Plaintiffs and Jane Doe's ability to secure work and maintain financial stability. This reality underscores the immediate harm caused by the Defendant's inaction.

Following Jane Doe's efforts to locate and contact the company hosting the website ending in .info, **EXHIBIT 32**, attaching the three year full stay away Order of Protection against Rees, Wix responded, **EXHIBIT 33**, *"the attached document appears to be addressed to the site*

*owner, and thus, the relevant action should be requested from him"*. The website was transferred from Wix within a few days to a hosting company overseas based in Ukraine under a different owner name, no longer Rees, complicating the ability to secure and maintain the relevant evidence. This situation raises serious concerns about both the accessibility and integrity of the critical evidence needed for Plaintiff's case and a Jury trial. Moreover, the RING service retains data for only 24 months and requires a judicial subpoena for renewal. Relying on the default and having not gone through discovery timely, vital evidence might be lost or rendered inaccessible, further jeopardizing the Plaintiffs' ability to pursue justice, which is prejudicial to Plaintiffs. Allowing the Defendant yet another opportunity could result in another "catch me if you can" scenario and the potential for Rees to tamper with existing evidence, the use of intimidation tactics, or the creation of fraudulent documents. Such actions would not only obstruct the Plaintiffs' pursuit of justice, but could also undermine the very foundation of the judicial process. The Plaintiffs urge the court to acknowledge the precarious situation they now face due to Rees's willful misconduct, which has forced them to rely on the default after he made the decision to ignore the judicial process, and then lied about it to the court in his affidavit. Plaintiffs request that the court take the necessary measures to ensure a fair and equitable resolution to this matter and deny Defendants motion to vacate default.

**Prejudice to Plaintiffs**

Vacating the default would result in significant prejudice to the plaintiffs, particularly given the personal toll this case has taken over the past 18 months. With John Doe now in college relying on the default, it would be devastating for him and Jane Doe to have to start the legal process anew, knowing it was willful misconduct by Rees, in a game he enjoys to destroy his adversaries. The emotional and psychological burden of reopening this case would exacerbate their suffering, especially knowing that the Defendant is abusing the system to prolong their distress. His re-emergence in these proceedings is an act of bad faith that seeks

to re-victimize the plaintiffs.

In conclusion, the Plaintiffs respectfully submit that the default should remain in effect to uphold the integrity of the judicial process and ensure that justice is served. Vacating the default would serve only to reward Rees for his evasive misconduct, fraud, dishonesty and continued willful bad acts, and further jeopardize the Plaintiffs' ability to obtain a fair resolution in this matter.

**Rees Does Not Have a Meritorious Defense**

A default has already been entered against Rees, thereby establishing his acceptance of liability for all causes of action asserted by the Plaintiffs. The assertion that Rees has meritorious defenses to the claims raised by the Plaintiffs is fundamentally flawed and lacks sufficient evidentiary support. While it is true that a defendant seeking to vacate a default judgment must demonstrate a plausible defense—one that, if proven at trial, could constitute a complete defense—Rees has failed to meet this standard.

In *S.E.C. v. McNulty*, 147 F.3d 732, 740 (2d Cir. 1998), the court emphasized that a defendant must present evidence of facts that would establish a viable defense. Rees's claims, however, lack the requisite specificity and substantiation. Merely stating that he has defenses is insufficient; he must articulate those defenses clearly and demonstrate how they would hold up under scrutiny.

Moreover, the standard set forth in *In re 45 John Lofts LLC*, 648 B.R. 16, 28 (2023), supports the notion that a defense must be "good at law" to provide a fact-finder with a legitimate issue for determination. Rees has not adequately articulated any legal principles or factual bases that would warrant a finding in his favor. Vague assertions of defense do not satisfy the legal threshold necessary to vacate a default judgment.

Furthermore, the Plaintiffs have diligently presented their claims, and any defenses posited by Rees must be evaluated in the context of the overwhelming evidence supporting the Plaintiffs' position. The burden of proof lies with Rees to demonstrate that his defenses are not only plausible, but also capable of overcoming the substantial grounds for the Plaintiffs' claims.

Rees moving papers have failed to seek vacatur of Plaintiff's default in answering, let alone assert that he had a reasonable excuse, a "good cause" for failing to timely answer the complaint (see Wells Fargo Bank, NA v StewarRedley AD3d 584, 586; U.S. Bank N.A. v Gilchrist, 172 AD3d 1425, 1428). In addition, Rees did not provide any excuse for his failure to answer the second amended complaint, and even if he had, it would have been improperly raised for the first time 16 months after he was served with the complaint on April 4th, 2024, **ECF 17** and five months after the second amended complaint, **ECF 56**, was served on April 10th, 2025 (see Wells Fargo Bank, N.A. v Hyun Jung Kim, 189 AD3d 1673, 1674) insufficient to demonstrate a reasonable excuse, as it is without evidentiary support (see Nationstar Mtge., LLC v Hassanzadeh, 228 AD3d 948, 950; Moore v Moore, 216 AD3d 938, 939).

Rees's books, The Silver Bullet and The Respondent, mention many of Rees go to excuses, some of which he's used in Plaintiff's Order of Protection case against him in Broome Family Court, including Failure to Serve, Mental Health, Medical Conditions, Law Office Failure, in an attempt to vacate the three year full stay away Order of Protection, which was denied." 'A defendant seeking to vacate a default in answering a complaint and to compel the plaintiff to accept an untimely answer as timely must show both a reasonable excuse for the default and the existence of a potentially meritorious defense' " (Emigrant Bank v O. Carl Wiseman, 127 AD3d 1013 (https://www.nycourts.gov/REPORTER/3dseries/

2015/2015_03316.htm), 1014 [2015], quoting Chase Home Fin., LLC v Minott, 115 AD3d

634 (https://www.nycourts.gov/REPORTER/3dseries/2014/2014_01427.htm), 634 [2014]).

Rees has failed to establish a reasonable excuse for his default. Rees's bare and

unsubstantiated denial of service and dishonest assertions in his affidavit, lacks the factual

specificity and detail required to rebut the prima facie proof of proper service set forth in the

affidavit of service of the plaintiff's process servers (see Deutsche Bank Natl. Trust Co. v

Quinones, 114 AD3d 719 (https://www.nycourts.gov/REPORTER/3dseries/

2014/2014_00959.htm), 719 [2014]; Bank of N.Y. v Samuels, 107 AD3d 653 (https://

www.nycourts.gov/REPORTER/3dseries/2013/2013_03958.htm), 653 [2013]; Reich v

Redley, 96 AD3d 1038 (https://www.nycourts.gov/REPORTER/3dseries/

2012/2012_05160.htm), 1038 [2012]). Moreover, Rees conclusory, undetailed, and

uncorroborated allegations in his motion to vacate did not constitute a reasonable excuse (see

Neilson v 6D Farm Corp., 123 AD3d 676 (https://www.nycourts.gov/REPORTER/3dseries/

2014/2014_08409.htm), 679 [2014]; Forward Door of N.Y., Inc. v Forlader, 41 AD3d 535

(https://www.nycourts.gov/REPORTER/3dseries/2007/2007_05222.htm) [2007]; Piton v

Cribb, 38 AD3d 741 (https://www.nycourts.gov/REPORTER/3dseries/

2007/2007_02534.htm), 742 [2007]).


Since Rees failed to demonstrate a reasonable excuse, it is unnecessary to consider whether

he sufficiently demonstrated the existence of a potentially meritorious defense. In light of

these considerations, it is clear that Rees has not established the existence of meritorious

defenses sufficient to warrant vacating the default. Allowing him to escape liability based on

unsubstantiated claims would undermine the integrity of the judicial process and deprive the

Plaintiffs of their rightful remedy.

## CONCLUSION

The presence of a history of dishonesty or fraud can weigh heavily against granting such motions, as demonstrated in Cruz v. Duran, 91 A.D.3d 564 (1st Dept. 2012), where the court denied the motion due to the defendant's lack of credibility and evidence of fraud. For these reasons, Plaintiffs respectfully request that the court deny the Defendant's motion to vacate the default. Upholding the default is crucial to ensuring justice, protecting the Plaintiffs from further harm, and maintaining the integrity of the judicial process. Rees's willful misconduct and harassment has persisted despite a three-year full stay-away Order of Protection issued by the Honorable Judge Young in Broome Family Court on April 17th, 2024, **ECF 24**, **EXHIBIT 1**, which mandated that the Defendant cease all harassment and prevent third parties from posting about the Plaintiffs and Jane Doe's minor children on social media and on websites. The order also required the removal of the harmful website ending .info established by the Defendant and his third parties. Rees's willful misconduct continues to this date.


Respectfully submitted,

Dated: 09/15/2025

*Jane Doe*

Jane Doe

Plaintiff