# UNITED STATES DISTRICT COURT

## Northern District of New York

### 6th Judicial Division



U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Sep 16 - 2025**

John M. Domurad, Clerk

_____ )
JANE DOE, JOHN DOE                   )
                                       )       Case No.3:24-cv-274 (MAD/ML)
                                         )
                Plaintiffs         )
                                         )
          -against-            )
                                         )       **DECLARATION OF**
                                         )       **JANE DOE**
                                         )
                                         )
JONATHAN REES aka GREG ELLIS    )
aka JOHNATHAN REES aka JONNY REES  )
aka JACOB LORENZO              )
                                         )
                Defendant       )
_____ )


**DECLARATION OF JANE DOE IN OPPOSITION OF DEFENDANT'S CROSS**

**MOTION TO VACATE DEFAULT**


I, JANE DOE, declare under penalty of perjury that the foregoing is true and correct:

1.  I am a Plaintiff in the case against Jonathan Rees, also known as Greg Ellis, and I have personal knowledge of the facts stated herein.

2.  I submit this affidavit in response to Plaintiff's opposition to vacate the default entered against defendant.

1

3.  Defendant's actions have resulted in a three-year full stay-away order of protection issued by the Honorable Judge Young against defendant due to a history of abuse and harassment towards me and my children.

4.  Vacating the default would undermine the integrity of the judicial process and expose me to renewed harm, particularly given the defendant's documented history of evasion, dishonesty, perjury, fraudulent behavior, and intimidation tactics.

5.  The continued existence of the harmful website defendant has failed to remove poses a significant threat to my emotional well-being and that of my family. When my name is searched online, harmful content appears, adversely affecting my ability to secure employment and maintain social relationships.

6.  The defendant and his followers pose a physical threat to me and my children. They have doxxed our addresses and actively encourage unstable individuals to harm us. This behavior creates a dangerous environment and adds to our distress.

7.  After I received a three-year full stay-away order of protection against the defendant, which included an order to take down the website, I contacted Wix and attached the order **EXHIBIT 32**, asking them to take it down after the defendant refused to comply with the removal of the site ending in .info. Wix responded, stating: *"The attached document appears to be addressed to the site owner, and thus, the relevant action should be requested from him."* **EXHIBIT 33**. While this approach may work with rational individuals, it is ineffective with the defendant. Within five days, the domain and website hosting was moved overseas.

8.  I have made significant efforts to preserve evidence related to this case, including reaching out to the website hosting and domain companies. However, following my contact and a preservation order, defendant and/or his enablers relocated the hosting and domain services overseas to Ukraine to evade accountability. This action has complicated the preservation of crucial evidence and may now be unattainable due to the the move overseas.

9.  The defendant's RING videos on the website ending in .info originate from his previous home in Chenango County. However, these videos have been edited and manipulated to portray me in a negative light, demonstrating the defendant's involvement with the website. This behavior aligns with his documented history of making threats to create a website about his ex-girlfriend, as shared in exhibits from a filing in Los Angeles Superior Court, which has now become a reality for me. RING retains service data for a limited time and requires a judicial subpoena to renew preservation orders. Without such a subpoena, vital evidence may be lost due to the passage of time, further jeopardizing my ability to seek justice.

10. I am concerned that granting the defendant additional time could result in him tampering with evidence, intimidating witnesses, or creating fraudulent documents. Such actions would obstruct my pursuit of justice and reflect a continuation of his abusive pattern that has spanned decades.

11. The defendant's failure to comply with the judicial process has caused significant harm to me and my family. His delayed notification to his insurance company has deprived us of the opportunity to hire an attorney on a contingency basis, knowing they could still collect if we prevailed. Furthermore, the defendant's fraudulent transfer of assets—selling his home in New York for $999,999 and moving his resources to an offshore trust—has left my family and me with no viable options. We were forced to either withdraw from the case, or proceed pro se, which undermines our pursuit of justice. This situation underscores the defendant's manipulation of the legal system and demonstrates a complete disregard for both the plaintiffs and the judicial process.

12. The defendant's remarks about my pro se representation overlook the reality of my situation. My choice to represent myself is not driven by ego, but by necessity. I initiated this lawsuit in February 2024 with no understanding of the legal system, learning as I go. This lack of experience has undoubtedly put me at a disadvantage. If I had legal representation, my attorney would have likely identified "Fraud" as a more appropriate

cause of action rather than "Forgery." This technical error could potentially allow the defendant to evade accountability for his bad acts in this particular cause of action. I would have preferred to have an attorney to represent my best interests, same for my children, but due to defendant's willful misconduct, we could not afford an attorney.

13. Time is a precious commodity that cannot be regained. I have already spent three years of my life being harassed by the defendant and two of these years seeking protection against him in Broome Family Court, which he continues to willfully ignore to this day.

14. Health is also worth protecting. After all the distress caused by the defendant and his associates over the past three years, I have become hyper-vigilant and am suffering from serious ailments that require my attention. Managing my health is challenging while I am in a fight to protect my family from the defendant, as well as my livelihood, reputation, and freedom.

15. I am exhausted, and so are my family, which is precisely what the defendant wants—he aims to push his adversaries and their lawyers to the brink until they can no longer continue. My attorney in family court too busy to keep dealing with defendants frivolous repeat filings finally had enough, **EXHIBIT 34**. Many who face defendant ultimately give up, deciding that the stress, time, money and effort are not worth it. However, I understand that if I do not obtain a judgment and an injunction to hold him accountable for his actions, his abuse towards us will never end. This realization motivates me to keep pursing justice.

16. My children are young and do not deserve to endure the ongoing aggravated harassment and abuse perpetuated by the defendant. This relentless torment has lasting repercussions that could affect them for the rest of their lives. The information the defendant has shared on the website, falsely accusing their father of being a child sex offender, creates harmful ripples that can lead to bullying and social ostracism. The defendant seems to take pleasure in this cruelty, using it as a weapon to inflict pain on our family. It is deeply

distressing to witness my children suffer from the consequences of his malevolence, as they are innocent and should be able to grow up free from such burdens.

17. The defendant's strategy appears to involve deliberately allowing time to pass until a default or default judgment is entered against him. At that point, he reappears, presenting outlandish claims and asserting a failure of service. This tactic seems specifically designed to evade accountability for his actions and to manipulate the legal process to his advantage.

18. I have caught the defendant in numerous lies, all supported by evidence submitted to this court. If the defendant is willing to lie about fundamental matters—such as claiming he was unaware of this lawsuit while simultaneously communicating with the Assistant District Attorney in Chenango and providing photographic evidence of this lawsuit to her with timestamps (also filed in a non-party case in the NDNY), an attempt to bring additional charges against me—then one must conclude that he is capable of lying about anything and therefore lacks credibility. Despite this, the defendant shows no hesitation in committing perjury and taking any necessary actions to mislead the court. His history of filing false instruments has already resulted in his indictment, yet this has not deterred him; he filed a false statement with the NDNY court just last week. This pattern of deceit reveals a blatant disregard for the truth and the judicial process.

19. The defendant, in his own words, claims to have captured data on May 1, 2024, regarding a social media post that he alleges was made by me; however, this assertion is false. The photograph he filed appears to show that the post was actually made by Roger Robinson, whom the defendant has identified as his ex-wife's new husband. I have never spoken with or met Roger Robinson. I did not personally see this post on social media; my knowledge is limited to the defendant submitting it to the First Assistant District Attorney in another attempt to charge me with criminal contempt, and in a non-party case 3:23-cv-1352 on PACER. Additionally, the service of the Amended Complaint and Summons to Roscoe is documented in the defendant's own filings and affidavit also in the non-party

case 3:23-cv-1352. This indicates that the defendant has been dishonest with both his insurance carrier and this court when he stated, *I recently learned of this lawsuit from my insurance carrier who, upon information and belief, conducted a docket search after being informed of a prior claim."* His statements reflect a pattern of deceit that undermines his credibility and the integrity of the judicial process.

20. I do not have any active or inactive lawsuits, either currently or in the past, against the defendant, contrary to his claims.

21. I felt scared and intimidated when the defendant recklessly waved a shotgun in his home while intoxicated, late at night, and dark outside and attempted to take my children out shooting beavers, which I firmly refused to allow.

22. I felt scared and intimidated when I woke up to find the defendant watching over me in the middle of the night, which led to me being assaulted by defendant and pulled out of bed. This incident, along with the other horrific acts he committed against me, has left a lasting impact.

23. I witnessed the defendant with a shotgun on numerous occasions when he would call me on FaceTime late at night while he was hunting beavers on his land.

24. According to reports filed with this court, the Chenango Sheriff's Department took a handgun from the defendant who claims he found it on the side of the road; however, they did not remove any other weapons from his home. I believe this oversight is in violation of an Order of Protection.

25. One of the other producers I was working with, Eric Foster, along with his assistant Max Lodien, will testify about an altercation with the defendant while staying at his property in Chenango County. On or around November 5, 2022, Eric and Max had to physically remove a loaded shotgun from the defendant's hands because they feared he was going to shoot himself or them. He was acting recklessly while intoxicated and out late at night hunting beavers. Defendant wrote in his book, The Respondent, page 68, *"Even Brian "Foxhole" Jackson testified. His brilliant contribution was claiming that he thought I*

*might have a gun in my pocket when I stayed at his home."* Unrelated incidents all support that defendant is being dishonest about not owning or possessing guns, even today, in violation of multiple orders.

26. I have videos of a conversation between myself and the defendant at my home in New York. He arrived unexpectedly around 7 AM on February 27, 2023, and this encounter was captured by a RING camera I had just installed. In the video, the defendant clearly discusses going into a gun store in New York and lying on his firearm application about not having been in a mental institution, suffering from mental illness, and having no history of drug use, which he knew was dishonest. The defendant's application was denied by the FBI/DOJ on August 24, 2022 (a letter has been submitted to this court), but this did not deter him; he purchased firearms anyway with the assistance of his friend Matthias Wesner. I would like to submit these videos to the court during the inquest so that the court can hear in the defendant's own words about his dishonesty on the firearm application and the altercation involving a loaded shotgun with Eric Foster and Max Lodien three months after his denial for firearms.

27. In early March 2023, Dennis Vacco, Esq., called me out of the blue after being hired to represent the defendant. He told me that the defendant instructed him to speak with me because the defendant wanted us both to be represented by Vacco, despite the fact that I had done nothing wrong. The defendant coerced me into believing that I could also face legal trouble for crimes and misconduct he had committed, given my role as a producer on his production and chair of his charity. This serves as evidence that the defendant did indeed use the threat of legal action against me, **EXHIBIT 35.** Vacco advised me not to speak with law enforcement regarding the defendant, citing my immigration status, which indicated that the defendant was attempting to use this as leverage against me. This had the desired effect, causing me significant distress given that it came from the defendant's attorney and felt a threat to me, even if that was not the intention by Vacco. I subsequently followed up with an email to Vacco expressing my concerns about what the

defendant had done with the production money and agreeing with his assessment that joint representation was a bad idea.

28. I have provided evidence to support that the defendant was served the second amended complaint and the summons at the Roscoe Street address on April 10, 2025.

29. I have provided evidence of the defendant's connection to all addresses mentioned in my second amended complaint, entry for default, motion for default judgment, and my response to the defendant's motion to vacate default. This includes Roscoe Street, Country Squire Drive, Florimond Avenue, Randall Road, and Central Avenue. It is clear that the defendant is being dishonest about his knowledge of this lawsuit and is evading service of legal documents.

30. In the defendant's affidavit, he denies having an intimate relationship with me. While I am a very private person, I must address the claims made in his affidavit. Therefore, I have attached messages from the defendant to me, **EXHIBIT 36**, that demonstrate an intimate relationship began after he love-bombed me while I was working as a producer on "The Respondent." I have numerous messages and voicemails from the defendant professing his love and pleading for me to return, both personally and professionally. I am willing to share this evidence with the court, either digitally or in-camera, as it confirms that the defendant has once again been caught in a lie.

31. The temporary orders of protection and pre-trial conditions were ordered by defendant's friend, Justice Lilley of Smithville Town Court and were extended automatically without a hearing of fact by the Honorable Judge Revoir. The temporary order of protection is being used as a weapon rather than for its intended purpose of protection, as it has been shared on social media, with former colleagues and filed in a non-party case 3:23-cv-1352 to intimidate me.

32. I did not shoot at the defendant with a rifle. The charges against me are a case of malicious prosecution, part of his ongoing pattern of abuse to silence women who seek protection from him.

33. The defendant, along with third parties acting on his behalf, has posted videos, photos, and text about me on social media and two websites ending in .com and .info. The .com website was removed following an order from the Honorable Judge Young, who directed the defendant's attorneys, Rick Miller, Esq., and Chris Brown, Esq., to instruct their client to take it down. They later admitted to my attorney that the defendant was responsible for this website. However, the defendant continues to harass me through the .info website, and either him or his third parties acting on his instructions have moved overseas to a hosting company in Ukraine. This deliberate action is a calculated attempt to evade accountability for his willful and cruel behavior towards me and my children. The emotional distress caused by these actions has been profound, as I am subjected to public humiliation and fear for my family's safety. The ongoing harassment has not only impacted my emotional well-being, but has also created an unsafe environment for my children, who are affected by the fallout of these malicious actions.

34. The defendant has employed aliases and enlisted the help of his friends to contact board members, contractors, film crew, distributors, management team, and charity staff, directing people to the harmful website ending .info. Notably, he reached out to his former landlady, Debbie Bernstein, "anonymously" sending her a link to the website along with a disturbing PDF filled with falsehoods about me. I have submitted this as evidence, along with her affidavit, in my motion for default judgment. This occurred the morning after she attempted to serve the defendant in New York, further demonstrating his reckless actions. In addition to these tactics, the defendant has also contacted my children's school, Child Protective Services (CPS), their counselor, and their friends, spreading a false narrative that I am an attempted murderer when I am not. This relentless harassment not only undermines my reputation, but also places an emotional burden on my children, who are forced to navigate the fallout from his lies. The defendant's violent reactions and thoughtless behavior reflect a pattern of intimidation and abuse that has created an unsafe environment for my family.

35. I am not violent at all and have never been accused of violence by anyone prior to the defendant's false police complaint against me. This includes not only my ex-husband and my children, but also colleagues and associates I have worked with over the decades. There have been no verbal accusations or any indication of violent behavior in my past.

36. I worked on the defendant's project, *The Respondent*, as a producer and director, yet I did not receive compensation as required by law. Meanwhile, the defendant misappropriated investors' money, using it for personal expenses, including his home and personal items, rather than for the production as intended. In New York, workers are entitled to fair compensation for their labor, especially in the film industry, where labor laws are strictly enforced to avoid exploitation.

37. I served as the Chairwoman for the defendant's charity, Children and Parents United, yet I did not receive the compensation required by law for my role. Meanwhile, the defendant misused all public donations, allocating them to his home and personal expenses. He disclosed this to me, and the conversation was recorded on my RING device at home, which I can present at the Inquest.

38. As Jane Doe, I am limited in what I can share to substantiate my claims regarding my role as a producer and my work with the charity. Making certain documents public could easily lead to my identification, which is why I have requested to share information in-camera. I have evidence to share of my extensive career, highlighting my expertise and the collaborative efforts of those I've worked with on various projects. If shared publicly, there is a risk that the defendant could access this information, similar to how others have randomly received the link to the website ending .info. I have submitted some exhibits in support of my motion for default judgment that include names, companies, but I remain rightly concerned given the defendant's history.

39. The defendant has threatened to harm himself and commit suicide. I have shared numerous texts from him that illustrate how he has used self-harm as a manipulation

tactic. These communications reflect a troubling pattern of behavior intended to coerce and intimidate.

40. The defendant has threatened that investors would take legal action against me, which prompted Patrick Brennan, Esq and others to contact me. This is evidenced by the exhibits submitted in support of the Plaintiff's default judgment against the defendant.

41. Filming for *The Respondent* commenced without the defendant, who has shown a tendency to be lazy, expecting others to do the work while he complains about the results. Towards the end of 2022, he expressed a desire to stay home and avoid public appearances due to fears that Kevin Berman would kill him. This is documented in the exhibits filed in support of the default judgment. Additionally, I possess extensive correspondence regarding the hiring of crew members.

42.  Crew members are entitled to be paid for their work on any film project, which spanned many months, including the creation of the budget by the Line Producer. While some compensation was provided to the crew, leading to the defendant's anger, no further payments were made to the crew after I was removed from the bank account, and they are still owed money. This situation is detrimental to me as the producer, as it reflects poorly on me given my responsibilities regarding the project. Defendant subsequently sent me numerous email rants and insisted on holding Zoom meetings with Tom Harrison from Vanguard Talent Agency, pressuring me to recover the funds, which I refused to do.

43. I am entitled to be paid for the work I have done, which the defendant has benefited from, as his project is currently back in production according to IMDb, with his fiancée, Laura Greenman Heine, listed as a co-producer. This is documented in **EXHIBIT 37**.

44. I am entitled to compensation for the work I have done on The Respondent.

45. I did not volunteer for the charity; I was drawn in by the defendant pleading for my assistance due to my involvement in *The Respondent*. I was assured that I would receive payment upon the receipt of funding, unaware that the defendant had already received millions of dollars in donations, which he used for his personal expenses and home.

46. The defendant did forge documents claiming to be me and submitted these false narratives to law enforcement and the courts in an attempt to maliciously prosecute his ex-girlfriend.

47. I respectfully urge the court to recognize the precarious situation I am in due to the defendant's willful misconduct, which has compelled me to rely on the default following his refusal to engage with the judicial process.

48. The defendant continues to willfully ignore Honorable Judge Young's three-year full stay-away Order of Protection. When I attempted to hold him accountable through a violation petition, he created chaos, resulting in Honorable Judge Young recusing himself. Discovery was not completed prior to trial because judicial subpoenas needed the Judge's signature following the transfer of the case to Honorable Judge Gorman. My attorney sent out subpoenas just 42 minutes before the trial began, forcing me to dismiss the violation petition. This occurred while the defendant had a free attorney appointed after he filed an application claiming poverty, despite having moved millions of dollars to an offshore trust and owning real estate, vehicles and companies in Indiana, Illinois, and Wyoming. This is all substantiated by evidence submitted in my opposition to the defendant's motion to vacate.

49. I seek an injunction to prevent the defendant from continuing his harassment and willful misconduct towards me and my children. His actions have caused me severe distress and have impacted my life, health, children, career, and livelihood. I have requested an in-camera session to share information, as I do not trust it will not be used by the defendant to harm us further.

50. The defendant poses a threat to me and my children. I consider him extremely dangerous and believe he should not be underestimated.

51. I have numerous emails from the defendant to industry professionals regarding *The Respondent*, in which he either BCC'd me or introduced me as his production partner, identifying me as the producer of the project.

52. Rees has already attempted to profit from his complaint against the defendant by pitching the film *Surviving April* to Jay Cohen at the Gersh Talent Agency in Los Angeles via email on May 6, 2025. Rees's pitch included a deck and a film trailer that he claims feature videos from his RING cameras recorded on August 8, 2023—videos that are also part of the prosecution's case against the defendant. This raises serious concerns about Rees's motivations, suggesting he seeks victimhood for financial gain, reminiscent of how he previously exploited his ex-wife, Dana Rees.

53. The defendant lacks credibility, as evidenced by the numerous exhibits I have presented. His pattern of dishonesty shows that he does not hesitate to manipulate the truth if it serves his interests. His actions include forging documents, submitting false narratives to law enforcement and the courts, and attempting to profit from his own complaints. These behaviors demonstrate a consistent disregard for the truth and a willingness to engage in unethical conduct. Furthermore, the defendant's attempts to exploit legal processes for personal gain raise serious questions about his character. His actions not only harm me, but also undermine the integrity of the judicial system. This pattern of deceit makes it clear that he cannot be trusted.

54. The defendant needs to be stopped, and I hope he will be if ordered to do so by a District Judge. I respectfully request that the court deny the defendant's motion to vacate the default and take the necessary measures to ensure a fair and equitable resolution to this matter.

55. I have requested an in-camera session to share the details of the harm the defendant has caused me and my children. This request is essential to limit public access to this sensitive information and to prevent the defendant from exploiting it further to harm us. Documents under seal at Broome Family Court, including the CPS report designated for lawyers' eyes only, have already been mishandled, resulting in the defendant accessing and filing them in a non-party case 3:23-cv-1352. This is not only outrageous, but also deeply harmful to my children, as the report pertains directly to their well-being. Given

this history, I do not feel comfortable sealing documents that would reveal my projects, expertise, and the direct harm the defendant has caused. It is critical that these matters be addressed privately to protect my family's safety and privacy.

56. I am credible and have substantiated my claims with evidence.

57. I have demonstrated diligent efforts with defendant knowledgeable of these Court proceedings, with defendant making a conscious and willful decision not to plead, answer or otherwise defend my action against him until after the default was entered in a pattern of deceit by defendant, a game he enjoys playing with his adversaries.

The party against whom it seeks a judgment of affirmative relief is not an infant, in the military, or an incompetent person. I support a denial of defendants motion to vacate for the reasons stated above, and support the motion for Default Judgment against Jonathan Rees aka Greg Ellis.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 15th, 2025.

_Jane Doe_

_____

Jane Doe

Plaintiff

# EXHIBIT 32

## Email to Wix - to Take Down the
## the Website ending .info



From: ⬛⬛⬛⬛⬛⬛@⬛⬛⬛⬛⬛.com
Subject: Re: ⬛⬛⬛⬛⬛ies.info - take down notice.
Date: April 29, 2024 at 12:33
To: support@wix.com, legal@wix.com, support@godaddy.com, legal@nysed.gov

Hi,

I'm requesting your legal team provides me with registration information for website: www.⬛⬛⬛⬛⬛⬛ries.info and accept this email as a take-down notice as ordered by Judge Young, Broome Family Court on page 2, under [99].

Not only do I have an Order of Protection in place ordering for this website to be taken down, but this website is a crime against me and my minor children too.

If you need to speak with the Police in regards to this, their information is:

Vestal Police Department Crime reference number: 24-6443
Officer C. Taber
ctaber@vestalny.gov
607-786-7600

This is the Order of Protection which clearly states that all websites need to come down about me.

Please ensure this vicious website full of falsehoods is taken down immediately, which was set up by my abuser to destroy me and further hurt me and my children.

My number is ⬛⬛⬛⬛⬛⬛if it's easier for you to speak with me on the phone.

Thank you in advance.

> Scanned
> OOP ⬛⬛⬛⬛⬛_vs_Rees.pdf
> 165 KB

With appreciation,

⬛⬛⬛⬛⬛  Producer & Director

This email (and attachment(s)) is confidential, proprietary, may be subject to copyright and legal privilege and no related rights are waived. If you are not the intended recipient or its agent, any review, dissemination, distribution or copying of this e-mail or any of its content is strictly prohibited and may be unlawful. All messages may be monitored as permitted by applicable law and regulations and our policies to protect our business. E-mails are not secure and you are deemed to have accepted any risk if you communicate with us by email. If received in error, please notify us immediately and delete the email (and any attachments) from any computer or any storage medium without printing a copy. We virus scan and monitor all emails but are not responsible for any damage caused by a virus or alteration by a third party after it is sent.

# EXHIBIT 33

# Wix Response



From: **Wix Support** notifications@wixanswers.com
Subject: Wix: In Regards to your Wix request
Date: April 30, 2024 at 08:26
To: ████████████

---Please reply above this line---

**WiX**.com

Hello!

Thank you for reaching out to us.

We understand your concerns regarding the disclosure of information about the owner of the site
http://www.████████ies.info/.

We require a duly issued and valid subpoena, warrant or court order in the event that anyone (including law enforcement agencies) wishes us to disclose information pertaining to users or any third party (site visitors) and their IP addresses.

All such requests or related questions shall be directed to the legal@wix.com e-mail, for our legal department's review and attention.

Additionally, regarding your request to disable the site, we kindly ask that any court order be addressed directly to Wix.com. The attached document appears to be addressed to the site owner, and thus, the relevant action should be requested from him. Once we receive a valid court order addressed to Wix.com, we will take the appropriate steps to disable the site in question.

Thank you for your understanding and cooperation in this matter. If you have any further questions or require assistance, please feel free to let us know.

Best regards,

Yuliia | Wix Policy Team

-

To add additional comments, reply to this email or click here to view your ticket page. Ticket number: 906781341

For more information go to Wix Help Center
500 Terry A Francois Blvd San Francisco, CA 94158

# EXHIBIT 34

## Kevin Riddell Motion

FAMILY COURT OF THE STATE OF NEW YORK

COUNTY OF BROOME

| | |
|---|---|
| ▓▓▓▓▓ | OPPOSITION TO MOTION TO DISMISS |
| Petitioner, | and MOTION FOR ATTORNEY FEES |
| | Family File No.: 47031 |
| vs. | Docket No.: O-3679-23/24A |
| | O-3679-23 |
| JONATHAN REES, | ORI No.: NY003023J |
| Respondent. | Order No.: 2024-000111 |

███████ by and through her attorney, Kevin M. Riddell, Esq., opposes Respondent's Motion to Dismiss as Follows:

1. Ms. ███████ restates and realleges all defenses raised in her first opposition this same motion filed on February 20, 2025 and asks this Motion to Dismiss be denied.

2. Ms. ███████ opposes this motion on the basis of res judicata, as a identical motion, seeking the same relief was previously filed and already denied by the Court.

3. Moreover, Mr. Rees filed a Notice of Appeal for Interlocutory Relief challenging the Court's order denying the Motion to Dismiss, further evidencing the specious nature of this motion.

4. Both Mr. Rees, Ms. ███████ and the children have court appointed counsel, paid for by taxpayers.

5. Filing motions seeking relief on an issue that has already been decided is a waste of the taxpayer's money.

6. The attorneys bill an hourly rate to review files, research issues, draft documents and file those documents with the Court.

7. The Clerk's Office has to review those documents and docket them.

8. The Court attorney then has to review any filings for sufficiency.

9. If the court attorney deems the filing(s) sufficient, the filings go before the Court for judicial review, and this may include court appearances.

10. The Court must then draft an order.

11. This all comes at a financial expense, as well as an efficiency expense.

12. All of this time the attorneys spend working on an issue that has already been decided is time that they are not spending on other matters.

13. The Court must take its time to review and rule on an issue that has already been decided.

14. This takes needless time and resources of the Court.

15. This delays other litigants from having their matters heard as promptly as they would if specious and redundant motions were not filed.

WHEREFORE, Petitioner respectfully requests Respondent's Motion to Dismiss be denied and that Mr. Rees be assessed the attorneys' fees for the services of Mr. Andreorio, Mr. Riddell and Mr. Kilmer and costs for filing a specious motion.

DATED: March 20, 2025

Kevin M. Riddell, Esq.

Riddell & Riddell

Attorney for ▮▮▮▮▮▮▮

166 Water Street, Suite 2B

Binghamton, NY 13901

(607)238-1032

FAMILY COURT OF THE STATE OF NEW YORK

COUNTY OF BROOME

_____

⬛⬛⬛⬛⬛

      Petitioner,

vs.

JONATHAN REES,

      Respondent.

_____

AFFIRMATION

Family File No.: 47031

Docket No.: O-3679-23/24A

           O-3679-23

ORI No.: NY003023J

Order No.: 2024-000111

I, Kevin M. Riddell, Esq., being an attorney duly licensed to practice law in the State of New York, and not a party to this proceeding, affirm the following to be true under the penalties and pains of perjury pursuant to CPLR 2106:

1. I am an attorney assigned to represent ⬛⬛⬛ in this matter and am fully aware of the facts and circumstances regarding this matter based upon my review of the papers, case file and case file.
2. This issue was already decided by the Court, and the Motion to Dismiss was already denied.
3. Mr. Rees has already filed a Notice of Appeal for Interlocutory Relief.
4. Counsel has taken time to review the Motion to Dismiss filed March 18, 2025, as well as the file and to prepare and draft this response.
5. This is the second duplicative pleading Mr. Rees has filed in the last week, seeking relief on an issue where the Court has already decided.
6. In my response to the last motion, where Mr. Rees again asked to appear virtually, Mr. Rees was put on notice that sanctions would be sought if duplicative pleadings continued.
7. On the same day Mr. Rees was put on notice, Mr. Rees filed another duplicative pleading.
8. This is evidence Mr. Rees has no regard to Court orders, nor does he believe he is bound by them.
9. It is unfair to the taxpayers who have to pay for court appointed attorneys, that have been assigned to both parties, to relitigate issues that have already been decided.
10. It is unfair to the Court, the court staff, the attorneys and all other litigants that have matters pending in Family Court, whose matters are delayed in order to litigate specious and duplicative motions.

WHEREFORE, it is respectfully requested that Respondent's Motion to Dismiss be denied and that Mr. Rees be sanctioned and order to pay the fees for Mr. Andreorio, the fees for Mr. Riddell, the fees for Mr. Kilmer and any other costs associated with litigating this issue for a second time.

DATED: March 20, 2025

_____
Kevin M. Riddell, Esq.

# EXHIBIT 35

## Dennis Vacco Email

 **Dennis C. Vacco**
RE: Private & Confidential

📁 Inbox -     March 10, 2023 at 14:16

To: ✕✕✕✕✕✕ ,   Cc: Scott S. Allen, Jr.

Details



As to the other matters you raised in your email, I am happy that you now recognize that my initial sense conveyed to you in our recent phone call about a potential conflict between you and Jonny down the road would prevent a joint representation.

I highly recommend that you not further confer with any law enforcement official without the assistance of counsel, especially in view of your immigration concerns.

Dennis

**Dennis C. Vacco**
Partner and Executive Committee Member



50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216

ph: 716.853.5100 ext. 1255 | fx: 716.853.5199
dvacco@lippes.com | lippes.com
LinkedIn // Twitter // Facebook

This email message, including attachments, are confidential and may be protected by the attorney/client or other applicable privileges. The information is intended to be conveyed only to the designated recipient(s) of the email message. Unauthorized use, dissemination, distribution or reproduction of this message by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not an intended recipient, please notify the sender immediately, delete the message from your email system, and destroy any other copies in your possession.
2FHAXCA

EXHIBIT 36



In scrolling back I realized, in the maelstrom of servers, that I hadn't read this message... and I just did.

You are without doubt the strongest individual I have ever had the honor to meet, know, be partners with, be loved by...

I'm so sorry I let you down ████████. My respect, admiration and love for you will only grow stronger as you move away from me, and it will be the greatest loss of my life—I know this to be true.

If you choose not to return - just remember me fondly and know that I did and do and will always love you.

I have tried my hardest today to keep you from running. And I have failed.

You won my heart. When I didn't think anyone could ever unlock it again.

That you got that. Just one of the awe inspiring gifts I have received from knowing you.

❤️😊

I do love you.
I've proved it today.
And if you were truly in love with me, never going to leave me, and knew for sure that one day you wouldn't leave then, then you wouldn't have just cut me out of your life so suddenly.
It's not what partners do.
It's not what friends do.
It's not what lovers do.

I know our painful pasts have played a part in all this... I just believed every word you said about your feelings toward me.

I was in uncharted waters and held your beautiful expressed feelings so tenderly. It was me that knew I would never leave YOU.

And I didn't. I never could. I never would.

EXHIBIT 37

IMDB



## The Respondent
<u>Crime</u>

Edit page    Add to list    Tracking    ⋮

### The Respondent
<u>Crime</u>

Edit page    Add to list    Tracking    ⋮

"The Respondent," adapted from the #1 bestselling book, is a razor-sharp, real-time paranoid thriller that exposes the brutal realities of the American family court system.

| | |
|---|---|
| Writer | Greg Ellis |
| Producer | Greg Ellis |

Find more **movies** with Discover Titles.

Trending
MOVIEmeter
🔺 2,087,056

Status
Optioned                                                      Edit ✏
Updated May 2, 2025

---

### Contacts                                    + Add

**Production Company**

Monkey Toes
hello@monkeytoes.me
📍 Hollywood, CA
   USA
   See map (bing.com)

See all company credits (1)

Cast    **Filmmakers**    Images    Videos    Details    Box Office    Companies    News

### Filmmakers                              + Add Filmmakers  |  Filter by profession
3 filmmakers

| Writer (1) | Known for |
|---|---|
| Greg Ellis<br>Writer | Pirates of the Caribbean: On Stranger Tides (2011) ⋮ |

| Producers (3) ⇕ | Known for ⇕ |
|---|---|
| Jay Cohen<br>Executive Producer | Bride Wars (2009) ⋮ |
| Greg Ellis<br>Producer | Pirates of the Caribbean: On Stranger Tides (2011) ⋮ |
| Laura Greenman Heine<br>Co-Executive Producer | Spare Room (2018) ⋮ |

---

### MOVIEmeter

🔺 2,087,056   🔻 Down 1,343,312 this week

3 months   All

---



**IMDbPro**

---

**Early access**
Opt-in to try the refreshed version of this page.

# Laura Greenman Heine

Writer, Producer   STARmeter: **390,975** ↑          [ Edit page ]  [ A

Find more writers with Discover People.



| Overview | Credits | About | Images | Videos | Box Office | Connections | Clients | News |



**Contacts**   Edit ✎

**Talent Agent Literary**

**Gersh Agency**
gersh.com
info@gersh.com
+1-310-274-6611 phone
info@gersh.com
📍 9465 Wilshire Blvd
6th Floor
Beverly Hills, CA 90212
USA
See map (bing.com)

**Representatives (1)**
👤 Jay Cohen (point)

---

## Credits

Edit credits | Filter by profession

8 titles

**Projects in Development (2 titles)** ⇕

| | | Budget ⇕ | Status ⇕ |
|---|---|---|---|
| The Respondent Co-Executive Producer | | | Optioned |
| The Ultimatum Producer, Writer | | | Optioned |

**Past Film & Video (3 titles)** ⇕

| | Budget ⇕ | Opening Weekend ⇕ | Gross (US & Canada) ⇕ | Gross (Worldwide) ⇕ |
|---|---|---|---|---|
| Spare Room (2018) Producer, Writer (story by), Writer (written by) | | | | |
| The Raking (2017) Producer, Writer | | | | |
| Unsupervised (Short) - Producer, Writer | $20K | | | |

**Past Television (3 titles)** ⇕

| | Episodes ⇕ |
|---|---|
| A Perfect Christmas Carol (2024) (TV Movie) - Writer | |
| Moms Anonymous (2018) (TV Series) - Writer (3 episodes, 2018), Producer (1 episode, 2018) | 4 |
| Caroline (Nov 8, 2018) Season 1, Episode 9 - Writer | |
| See more | |
| Suicide Brothers (2017) (TV Movie) - Producer | |

**Frequently cr**

Allie Rivera Q
Actress, Produce

Jenica Berger
Actress, Produce

Bryan Brewer
Actor, Director, I

Marisusan Tro
Producer, Actres

**Discover mor**
Writers with C

Prabda Yoon
Producer, Writer
Known for Motel
Universe

Daan Milius
Producer, Writer
Department
Known for Sound
d'Etat, Extra Life

Conor Fetting
Producer, Direct
Known for Scout'
Files of the Boy S
Coded

[ Add

Create insights