UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JANE DOE and JOHN DOE, II,

                             **Plaintiffs,**

  vs.                                                3:24-CV-00274
                                                             (MAD/ML)

**JONATHAN REES,**

                             **Defendant.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **JANE DOE**<br>200 Washington Avenue, 7181<br>Endicott, New York 13760<br>Plaintiff, *pro se* | |
| **JOHN DOE, II**<br>200 Washington Avenue, 7181<br>Endicott, New York 13760<br>Plaintiff, *pro se* | |
| **GORDON & REES**<br>290 W. Mt. Pleasant Avenue - Suite 3310<br>Livingston, New Jersey 07039<br>Attorneys for Defendant | **RONALD A. GILLER, ESQ.**<br>**STEPHANIE IMBORNONE, ESQ.** |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On February 24, 2024, Plaintiff *pro se* Jane Doe commenced this action, on behalf of herself and her minor children, Plaintiffs John Doe, II, John Doe, III, and Jane Doe, IV, bringing thirty-two claims against Defendant "Jonathan Rees aka Greg Ellis aka Johnathan Rees aka Jonny Rees aka Jacob Lorenzo" ("Defendant"). *See* Dkt. No. 1. On March 20, 2024, Jane Doe filed an

1

amended complaint on behalf of herself and her three minor children. *See* Dkt. No. 14. On April 27, 2024, Jane Doe requested that the Clerk of the Court enter a certificate of entry of default. *See* Dkt. No. 18. The Clerk denied the requested default on April 30, 2024. *See* Dkt. No. 19. On April 30, 2024, Jane Doe again requested that the Clerk of the Court enter a certificate of entry of default pursuant to Rule 55(a) of the Federal Rules of Civil Procedure. *See* Dkt. No. 20. The Clerk entered the requested default on May 1, 2024. *See* Dkt. No. 21. On May 13, 2024, Jane Doe moved for a default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure and Northern District of New York Local Rule 55.2. *See* Dkt. No. 24 at 3; Dkt. No. 24-5 at 1.

On May 29, 2024, Magistrate Judge Miroslav Lovric entered a Text Order informing Jane Doe that she cannot bring claims *pro se* on behalf of her minor children. *See* Dkt. No. 26. On May 30, 2024, Jane Doe filed a letter motion requesting reconsideration of Magistrate Judge Lovric's order. *See* Dkt. No. 27. On May 31, 2024, Magistrate Judge Lovric denied the letter motion requesting reconsideration, *see* Dkt. No. 28, and on June 25, 2024, the undersigned issued a Memorandum-Decision and Order denying Jane Doe's appeal therefrom, *see* Dkt. Nos. 29, 32. After John Doe, II reached the age of eighteen, this Court permitted him to appear *pro se* on his own behalf. *See* Dkt. No. 44.

On March 17, 2025, the Court denied the first motion for default judgment for lack of subject matter jurisdiction. *See* Dkt. No. 55. The Court found that Plaintiffs failed to sufficiently allege Defendant's citizenship for purposes of establishing diversity jurisdiction and concluded that Plaintiffs had not sufficiently pled any cause of action under federal law to invoke federal question jurisdiction. *See id.* at 4-5, 8-11. As Plaintiffs failed to establish diversity or federal question jurisdiction, the Court declined to exercise supplemental jurisdiction over the pendent

state law claims. *See id.* at 11-12. The Court also *sua sponte* dismissed causes of action one, two, three, four, five, six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, twenty, and twenty-one with prejudice. *See id.* at 16. These causes of action were dismissed with prejudice because they alleged violations of state and federal criminal statutes (which cannot be brought as civil causes of action), the New York Social Services Law (which does not provide a private right of action), and the Victims of Gender-Motivated Violence Protection Law (which does not apply to acts outside the boundaries of New York City). *See id.* at 8, 13-16. The balance of the amended complaint was dismissed without prejudice and with leave to amend. *See id.* at 15-16.

On March 21, 2025, Plaintiffs filed a second amended complaint which asserts eight causes of action. *See* Dkt. No. 56. John Doe, II is named as a plaintiff in the second amended complaint, but did not sign the pleading. *See id.* On May 9, 2025, Jane Doe submitted a request for entry of default. *See* Dkt. No. 63. The Clerk of the Court entered default on May 12, 2025. *See* Dkt. No. 66.

Now pending before the Court is Plaintiffs' second motion for default judgment, which was filed May 13, 2025. *See* Dkt. No. 71. On August 11, 2025, counsel for Defendant appeared in this action. *See* Dkt. Nos. 78, 79. Thereafter, on September 8, 2025, Defendant cross-moved to vacate the default, which Plaintiffs have opposed. *See* Dkt. Nos. 85, 88.

For the reasons set forth below, Defendant's cross-motion to vacate the default is granted and Plaintiffs' motion for default judgment is denied as moot.

## II. DISCUSSION

A.    **Service of Process**

Defendant contends that he was never properly served. *See* Dkt. No. 85-2 at 12-14. Plaintiffs respond primarily with allegations that Defendant has engaged in a pattern of evading

3

"criminal charges and accountability of [sic] his actions" in matters far outside the scope of the present action. *See* Dkt. No. 88-1 at 2-19. It appears that both sides have been embroiled in state court criminal and civil proceedings over the course of many years, resulting in restraining orders against one another on multiple occasions. *See id.* At the outset, the Court notes that this is not the venue to debate the interpersonal disputes between the parties—this is a federal civil lawsuit regarding specific claims for relief, nothing more. This matter will not be a stage for mudslinging and the airing of personal grievances. Both sides are admonished to be mindful going forward to keep their arguments and allegations constrained to the actual claims at issue here.

In response to Defendant's defective service arguments, Plaintiffs contends that (1) service of process was properly effectuated; (2) Defendant has engaged in willful misconduct, such as avoiding service in other matters;[1] (3) service was proper because Defendant was aware of this lawsuit; and (4) Defendant should be estopped from challenging the propriety of service of process because he has not updated his Department of Motor Vehicles ("DMV") records. *See* Dkt. No. 88-1 at 7-19.

When a defendant fails to answer or otherwise defend with respect to a complaint, the Clerk of Court is to enter a default, upon the plaintiff's request. *See* Fed. R. Civ. P. 55(a). This entry of default is a distinct step from the later entry of default judgment, which has not yet occurred in the present matter. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128-29 (2d Cir. 2011).

A default judgment, or by extension an entry of default, "'obtained by way of defective service is void *ab initio* and must be set aside as a matter of law.'" *Voice Tele Servs., Inc. v. Zee*

---

[1] As with the other irrelevant allegations, the Court will not consider whether Defendant previously evaded service by the Long Beach Police Department, Broome County Family Court, or any other court/jurisdiction.

*Telecoms Ltd.*, 338 F.R.D. 200, 202 (S.D.N.Y. 2021) (quoting *Howard Johnson Intern., Inc. v. Wang*, 7 F. Supp. 2d 336, 339 (S.D.N.Y. 1998)). Defaults obtained by way of defective service are void because a court must have personal jurisdiction over a defendant to enter a default judgment; and personal jurisdiction, in turn, requires proper service of process. *See Lian Qing Yu v. 58 Asian Corp.*, No. 16-CV-7590, 2018 WL 1415214, *1 (S.D.N.Y. Mar. 20, 2018).

Rule 4(e) of the Federal Rules of Civil Procedure governs service of process, and provides that a plaintiff may serve an individual by: (1) following state law in the state where the district court is located or where service is made; (2) delivering a copy of the summons and complaint to the individual personally; (3) leaving a copy of the summons and complaint at the defendant's residence with someone of suitable age and discretion who lives there; or (4) delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process. *See* Fed. R. Civ. P. 4(e). As this Court is in New York State, Rule 308 of the New York Civil Practice Law and Rules ("CPLR 308") governs service of process under Rule 4(e)(1).[2]

CPLR 308 provides five methods for serving an individual: (1) delivering the summons on the individual personally; (2) delivering the summons to the individual's place of business or residence, as well as mailing the summons to the individual at his "place of business, dwelling place or usual place of abode," such that delivery and mailing occur within twenty days of each other; (3) delivering the summons to an agent; (4) if neither 308(1) or 308(2) service can be made "with due diligence," by affixing the summons to the door of the individual's "actual place of business, dwelling place or usual place of abode," as well as mailing the summons to the place of

---

[2] Although service was attempted in the states of Illinois, Indiana, and Arizona, neither party presents argument regarding proper service of process under the law of these states. Moreover, Jane Doe's application for entry of default relies exclusively on CPLR 308(4) "nail and mail" (also called "affix and mail") service as the means by which Defendant was served. *See* Dkt. No. 63-2 at 3-4. Therefore, the Court assumes the parties agree New York law applies.

business or residence; or (5) if 308(1), 308(2), or 308(4) is "impracticable," then delivering the summons in a manner specified by the court.  *See* N.Y. C.P.L.R. 308.

"Where service is effected pursuant to CPLR 308(4), the affix and mail method, the plaintiff must demonstrate that the summons was affixed to the door of the dwelling place or usual place of abode of the person to be served and mailed to such person's last known residence." *U.S. Bank N.A. v Henry*, 219 A.D.3d 854, 857 (2d Dep't 2023).  "The 'dwelling place' is one at which the defendant is actually residing at the time of delivery."  *Id.* (citing *Deutsche Bank Natl. Trust Co. v O'King*, 148 A.D.3d 776, 777 (2d Dep't 2017)).  "The 'usual place of abode' is a place at which the defendant lives with a degree of permanence and stability and to which he intends to return."  *Id.*

Here, Defendant contends the default must be vacated because he was never served with process, and, therefore, the Court never obtained personal jurisdiction over him.  *See* Dkt. No 85-2 at 12-14.  Under New York law, "a process server's affidavit of service establishes a prima facie case of the account of the method of service . . . ."  *Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).  In her declaration in support of her request for entry of default, Jane Doe admits that attempts to personally serve Defendant were unsuccessful, but that he was served via the "nail and mail" method at his Roscoe Street address in Chicago, Illinois ("Roscoe Address").  *See* Dkt. No. 62-3 at ¶¶ 14-15.

"A defendant's sworn denial of receipt of service, however, rebuts the presumption of proper service . . . ."  *Old Republic*, 301 F.3d at 57.  Defendant has submitted a sworn declaration that he does not own and has never resided at the Roscoe Address.  *See* Dkt. No. 85-3 at ¶ 3.  Moreover, Defendant states under penalty of perjury that he did not work at the Roscoe Address

6

and did not visit this location at any time during the month of April 2025 when service was attempted. *See id.*

Despite Defendant's sworn statement, Plaintiffs maintain that service was valid on the Roscoe Address. *See* Dkt. No. 88-1 at 12.[3] Plaintiffs point out that the Roscoe Address is the address on Defendant's DMV abstract, but, in the same sentence, admit that the residence is owned by the sister of Defendant's fiancée. *See id.* at 17. Plaintiffs attach what appears to be Property Tax information for the Roscoe Address, listing the name of the woman Plaintiffs claim is the sister of Defendant's fiancée. *See* Dkt. No. 88-28 at 1. And, attached to Jane Doe's declaration in support of her request for entry of default is a document that purports to be Defendant's Illinois DMV abstract, which lists the Roscoe Address. *See* Dkt. No. 63-2 at 7.

Plaintiffs are correct that New York courts have precluded defendants "from challenging the location and propriety of service of process if that defendant has engaged in affirmative conduct which misleads a party into serving process at an incorrect address." *See Everbank v. Kelly*, 203 A.D.3d 138, 145 (2d Dep't 2022) (citation omitted). Under this exception to CPLR 308, "when a process server relies on [DMV] records which are inaccurate because the defendant failed to fulfill the statutory obligation of timely notifying DMV of a change of address, the defendant is estopped from raising a claim of defective service at the stale address." *Id.* (citations omitted). However, this estoppel theory appears to apply when a defendant has been shown to affirmatively misrepresent their address, such as in the context of motor vehicle accident cases where a defendant contests service at the address on the police accident report and on record with the DMV. *See, e.g.*, *Canelas v. Flores*, 112 A.D.3d 871, 872 (2d Dep't 2013). And, as the New

---

[3] Service at Defendants other alleged addresses only by mail clearly does not comply with CPLR 308(4). *See* Dkt. No. 85-2 at 13. Therefore, the Court will not venture into an analysis of the purported service of process at these addresses.

York Court of Appeals has explained, "potential defendants ordinarily have no affirmative duty to keep those who might sue them abreast of their whereabouts." *Feinstein v. Bergner*, 48 N.Y.2d 234, 241 (1979).

Nevertheless, it appears that Defendant was aware of this action sometime before December 10, 2024, as on that date he filed documents which specifically reference this action, in an unrelated case. *See* Dkt. No. 71-15 at 12; Dkt. No. 84-4 at 43-44, *Doe v. Rees*, 3:23-CV-01352 (N.D.N.Y. Oct. 31, 2023). In this submission, Defendant appears to refer to the Roscoe Address as his "confidential address." *See* Dkt. No. 71-15 at 12. Despite having apparent knowledge of the pendency of this action, Defendant waited to appear via counsel until August 2025. *See* Dkt. Nos. 78, 79. These actions raise the Court's suspicion regarding the veracity of Defendant's representations regarding service.

Ultimately, the Court "need not resolve every doubt" about whether Defendant resided at the Roscoe Address; "[i]t need only conclude that [Defendant] has adequately challenged the propriety of the service on that address by providing a conflicting, but plausible, version of events." *Wandel v. Gao*, No. 1:20-CV-03259, 2022 WL 61867, *4 (S.D.N.Y. Jan. 6, 2022). Crediting, for purposes of the pending motions, Defendant's sworn statement that he never received service, the Court finds he has adequately challenged the property of service at the Roscoe Address.[4] Although this certainly does not conclusively establish that Defendant was not served, at a minimum Defendant's sworn statement amounts to "a believable conflicting account of service of process, and this Court is therefore obligated to resolve its doubts in favor of the

---

[4] An evidentiary hearing is not required here because the Court is not imposing a default. *See Wandel*, 2022 WL 61857, at *3 n.2.

[d]efendant." *Caleb & Brown Pty. Ltd. v. Thompson*, No. 20-CV-8612, 2021 WL 4226183, *3 (S.D.N.Y. Sept. 16, 2021) (citation and internal quotation marks omitted) (cleaned up).

The Court, however, will not entertain the proliferation of this shell game regarding Defendant's whereabouts nor any forthcoming attempts to disclaim service of process. At this point, Plaintiffs "ha[ve] demonstrated that [their] efforts to obtain information regarding [Defendant's] current residence or place of abode through ordinary means . . . ha[s] proven ineffectual." *Franklin v. Winard*, 189 A.D.2d 717, 717 (1st Dep't 1993). Thus, the Court directs service upon defendant's attorneys pursuant to CPLR 308(5). *See id.*; *see also Rampersad v. Deutsche Bank Sec., Inc.*, No. 02-CV-7311, 2003 WL 21073951, *1 (S.D.N.Y. May 9, 2003) (directing service upon the defendant's attorney pursuant to Rule 4(e)(1) and CPLR 308(5)). Defense counsel is directed to file a letter on the docket, within seven days of this Memorandum-Decision and Order, providing Plaintiffs with an address where service of the second amended complaint will be accepted.

**B.     Good Cause to Vacate Default**

Independent of the issues with service, upon consideration of the *Enron Oil* factors described below, the Court finds that good cause exists to vacate the Clerk's entry of default under Rule 55(c).

Under Rule 55(c) of the Federal Rules of Civil Procedure, a court "may set aside an entry of default for good cause" prior to an entry of final judgment. A motion to vacate the entry of default is "addressed to the sound discretion of the district court." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). However, the Second Circuit "generally disfavor[s]" default judgment and has expressed a "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95-96 (2d Cir. 1993); *accord Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d

57, 61 (2d Cir. 1996) ("Strong public policy favors resolving disputes on the merits"). Therefore, "all doubts must be resolved in favor of the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005) (citation omitted); *see also United States v. Starling*, 76 F.4th 92, 100 (2d Cir. 2023) ("[C]ourts addressing motions to set aside default under Rule 55(c) are extremely forgiving to the defaulting party and favor a policy of resolving cases on the merits instead of on the basis of procedural missteps") (citation and internal quotation marks omitted).

Where there has been a certificate of default, but no default judgment, the court decides the motion to vacate the entry of default pursuant to Fed. R. Civ. P. 55(c), which is more lenient than the standard to set aside a default judgment under Fed. R. Civ. P. 60(b). *See Am. All. Ins.*, 92 F.3d at 59 (citing *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981)). Despite the different standards, the same "good cause" factors are applied in deciding Rule 55(c) and Rule 60(b) motions. *See Enron Oil*, 10 F.3d at 96 ("Although the factors examined in deciding whether to set aside a default or a default judgment are the same, courts apply the factors more rigorously in the case of a default judgment . . . because the concepts of finality and litigation repose are more deeply implicated in the latter action") (internal citation omitted).

Three factors derived from *Enron Oil* guide district courts in deciding whether to vacate an entry of default: "(1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *McNulty*, 137 F.3d at 738; *Starling*, 76 F.4th at 100. No single factor is dispositive. *See Murray Eng'g, P.C. v. Windermere Props. LLC*, No. 12-CV-0052, 2013 WL 1809637, *4 (S.D.N.Y. Apr. 30, 2014); *see also Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56, 57 (2d Cir. 1990) (holding that the district court did not abuse its discretion in

vacating default judgment despite a finding of willfulness, because the defaulting party had a meritorious defense and the plaintiff would not be prejudiced if the default was vacated).

"Other relevant equitable factors may also be considered, for instance, whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Enron Oil*, 10 F.3d at 96 (citation omitted). "[W]hen doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* Thus, "good cause . . . should be construed generously." *Id.* "While courts are entitled to enforce compliance with the time limits of the Rules by various means, the extreme sanction of a default judgment must remain a weapon of last, rather than first, resort." *Meehan*, 652 F.2d at 277.

As for the first factor, a default is willful when the conduct is "'more than merely negligent or careless,' but is instead 'egregious and . . . not satisfactorily explained.'" *Bricklayers and Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 186 (2d Cir. 2015) (quoting *McNulty*, 137 F.3d at 738). For example, "'[a] default is deemed willful where a defendant simply ignores the complaint without action[.]'" *Circuito Cerrado, Inc. v. LV Foods, Inc.*, 296 F.R.D. 122, 126 (E.D.N.Y. 2013) (citation omitted). A finding of willfulness is appropriate where "there is 'evidence of bad faith,' or the default arose 'from egregious or deliberate conduct.'" *Holland v. James,* No. 05-CV-5346, 2008 WL 3884354, *2 (S.D.N.Y. Aug. 21, 2008) (quoting *Am. Alliance Ins.*, 92 F.3d at 60-61). Courts should "resolve any doubt about [a defendant's] willfulness in his favor." *Raheim v. N.Y.C. Health and Hosps. Corp.*, No. 96-CV-1045, 2007 WL 2363010, *4 (E.D.N.Y. Aug. 14, 2007) (citing *Enron*, 10 F.3d at 98).

11

The Court finds the first factor weighs decidedly against Defendant. As noted, Defendant expressed knowledge of this action at least as early as December 10, 2024, yet waited nearly a year longer to appear. This egregious insolence by Defendant could be enough to find no good cause to vacate the default. However, the other two *Enron Oil* factors strongly militate in favor of permitting Defendant to contest the second amended complaint on its merits. *See Murray Eng'g*, 2013 WL 1809637, at *5 (observing that even if a defendant's conduct is willful, good cause can be found).

The second factor, whether the defendant demonstrates the existence of a meritorious defense, especially weighs in favor of vacating default. "A defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense." *Enron Oil*, 10 F.3d at 98 (citation omitted). "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Id.* (citations omitted). In other words, a "'defense is meritorious if it is good at law so as to give the factfinder some determination to make.'" *Gardner v. Lefkowitz*, 737 Fed. Appx. 597, 598 (2d Cir. 2018) (quoting *Am. All. Ins. Co.*, 92 F.3d at 61).

Careful review of the parties' submissions reveals that Defendant has meritorious defenses to Plaintiffs' claims. Indeed, Defendant provides ample factual and legal support for potentially meritorious arguments for dismissal of each of Plaintiffs' claims. *See* Dkt. No. 85-2 at 18-28. For example, as Defendant correctly argues, there is no private right of action for forgery or identity theft (two of Plaintiff's eight causes of action). *See* Dkt. No. 85-2 at 27-28; *see also Shidagis v. Broome Cnty. D.S.S.*, No. 3:23-CV-0031, 2023 WL 198143, *3 (N.D.N.Y. Jan. 17, 2023), *R&R adopted*, 2023 WL 2140019 (N.D.N.Y. Feb. 21, 2023) (recommending dismissal of claims for forgery and falsification of documents and observing that there is no private cause of action for

such claims). In addition to other strong arguments, Defendant also raises robust defenses to the claim under the New York Human Rights Law (no allegations that Jane Doe is a member of a protected class or was qualified for the position she held), and the claims for tortious interference with contract/prospective economic advantage and intentional interference with prospective business relations (no allegations of the existence of a contract or specific business relation, any specific third party with whom Jane Doe lost the prospect of doing business with as a result of Defendant's actions, or Defendant's knowledge of the said business relationship). *See* Dkt. No. 85-2 at 20-21, 22-25. Moreover, the Court has already expressed skepticism regarding Jane Doe's claim for forced labor under 18 U.S.C. § 1595(a)—which is reasserted via the second amended complaint. *See* Dkt. No. 55 at 8-11.

As for the third factor, "[p]rejudice to the nondefaulting party is 'the single most persuasive reason for denying a Rule 55(c) motion . . . .'" *Murray Eng'g*, 2013 WL 1809637, at *5 (quoting 10A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2699 (3d ed. 2010)). "In order to show the requisite level prejudice, the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Id.* (citation omitted) "[D]elay alone is not a sufficient basis for establishing prejudice . . . . Rather, it must be shown that delay will 'result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (internal citations omitted).

Plaintiffs argue that the delay caused by vacating default would cause emotional and psychological burdens and would reward Defendant for "his pattern of abuse, dishonesty, and willful misconduct." Dkt. No. 88-1 at 19-25. Plaintiffs' first motion for default judgment was

13

denied for lack of subject matter jurisdiction, due to insufficient allegations in the amended complaint. *See* Dkt. No. 55. The flaws in the amended complaint and first motion for default judgment caused significant delays, none of which are attributable to Defendant. Specifically, the amended complaint contained thirty-two causes of action, nearly half of which were brought pursuant to criminal statutes. Because causes of action one through fifteen, twenty, and twenty-one of the amended complaint were brought pursuant to state or federal criminal statutes (for which there is no private civil cause of action), the New York Social Services Law (which does not provide a private right of action), and the Victims of Gender-Motivated Violence Protection Law (which does not apply to acts outside the boundaries of New York City), these claims were dismissed with prejudice (a process that required careful analysis). As such, the Court spent considerable time analyzing not only its subject matter jurisdiction, but the merits of the claims.

Had Plaintiffs' earlier filings been meritorious, default judgment could have been entered last year. These delays, attributable only to Plaintiffs, meant that the current operative pleading and pending motion for default judgment were not filed until March and May 2025, respectively. *See* Dkt. No. 71. Defendant's appearance approximately three months after the operative pleading was filed does not constitute prejudicial delay sufficient to deny the motion to vacate default. *See, e.g.*, *Nationwide Mut. Fire Ins. Co. v. Rankin*, 199 F.R.D. 498, 505 (W.D.N.Y. 2001) (finding no prejudice despite one year and four months elapsing since complaint was filed).

Further, Plaintiffs contend that they would be prejudiced because evidence from cameras in Defendant's home is only retained for twenty-four months, thus evidence may be unrecoverable. *See* Dkt. No. 88-1 at 23-24. The Court finds this argument to ring hollow, as the second amended complaint was filed in March 2025 and the events that were allegedly recorded on Defendant's cameras occurred in November 2022. *See* Dkt. No. 56 at ¶¶ 11, 73, 96. Although

this case was initially filed in February 2024, the delay between the initiation of this action and the filing of the second amended complaint is solely attributable to Plaintiffs. Indeed, besides the successive motions for default, the Court had to rule on multiple non-dispositive matters, such as Jane Doe's motion for reconsideration and appeal of Magistrate Judge Lovric's order precluding her from improperly representing her children *pro se*. *See* Dkt. Nos. 26, 27, 28, 29, 32.[5] Jane Doe also requested four extensions of time to find counsel to represent her children, causing many months of delay. *See* Dkt. Nos. 30, 33, 37, 39.

Finding good cause to vacate default has not been a task this Court has taken lightly. There are certainly factors and conduct that support Plaintiffs' arguments. However, given the Circuit's strong preference to decide cases on their merits, the Court finds this result acceptable. Accordingly, the Court denies Plaintiffs' motion for default judgment and grants Defendant's cross-motion to set aside entry of default.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth herein, the Court hereby

---

[5] The Court has been explicitly clear, on multiple occasions, that Jane Doe cannot represent her children because she is not a lawyer. *See, e.g.*, Dkt. Nos. 32. Although John Doe, II was permitted to appear on his own behalf, he has not signed the operative pleading, the request for entry of default, nor the motion for default judgment. Defendant raises this as an independent reason to vacate default as to John Doe, II. *See* Dkt. No. 85-2 at 11-12. The Court agrees in principle. *See Bailey v. Child Protective Servs.*, No. 3:22-CV-1221, 2022 WL 22842693, *3 (D. Conn. Dec. 12, 2022) ("Although Ms. Hubbard is listed as a plaintiff in the caption of the Amended Complaint, she has not signed the pleadings as required . . . . As a non-attorney, Mr. Bailey cannot assert claims on behalf of Hubbard or sign pleadings for her") (citing Fed. R. Civ. P. 11(a); *Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 346 (S.D.N.Y. 2020)). However, the Court does not reach this issue at the present time because default is vacated as to both Plaintiffs for the reasons set forth herein.

**ORDERS** that Defendant's motion to vacate entry of default (Dkt. No. 85) is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' motion for default judgment (Dkt. No. 71) is **DENIED as moot**; and the Court further

**ORDERS** that the Clerk's entry of default (Dkt. No. 66) is **VACATED**; and the Court further

**ORDERS** that defense counsel shall file a letter on the docket providing Plaintiffs with an address where service of the second amended complaint will be accepted **within seven days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Plaintiffs shall serve the second amended complaint on Defendant at the address provided in the forthcoming letter from defense counsel **within fourteen days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that Defendant shall file his responsive pleading to Plaintiffs' second amended complaint **within twenty-one days** of the date of this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 9, 2026
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge