UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

| | |
|---|---|
| JANE DOE, JOHN DOE | : |
| | : |
| Plaintiffs, | : |
| | : |
| – against – | :    Case No. 3:24-cv-274 (MAD/ML) |
| | : |
| JONATHAN REES, aka GREG ELLIS aka | : |
| JOHNATHAN REES aka JACOB LORENZO | : |
| | : |
| Defendant. | : |

------------------------------------------------------------------ x

---

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JONATHAN REES' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

---

| | |
|---|---|
| Paul S. Hugel | Clayman Rosenberg |
| Effie Blassberger | Kirshner & Linder LLP |
| Of counsel | Counsel for Defendant |
| | |
| | 60 East 42nd St. 39th Fl |
| | New York, New York 10165 |
| | (212) 922-1080 |

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................1

FACTUAL BACKGROUND...........................................................................................1

LEGAL STANDARD......................................................................................................2

ARGUMENT...................................................................................................................3

I. DEFENDANT WAIVES ANY DEFECTS WITH RESPECT TO SERVICE OF PROCESS BUT ON ITS FACE THE SECOND AMENDED COMPLAINT FAILS TO ALLEGE DAMAGES SUFFICIENT TO SUPPORT SUBJECT MATTER JURISDICTION ....................................................................................................3

    A. It is Unclear if Plaintiff has Complied with the Court's Order Regarding Service of the SAC, But Mr. Rees Waives any Defect in Service.........................................................................3

    B. The Second Amendment Complaint Fails to Allege a Basis for This Court to Exercise Subject Matter Jurisdiction. ................................4

II. JOHN DOE'S CLAIMS MUST BE DISMISSED BECAUSE HE IS NOT PROPERLY A PARTY TO THE CASE.............................................................5

III. JANE DOE FAILS TO STATE ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED ...................................................................6

    A. The Forgery and Identity Theft Claims Must Be Dismissed Because the Statutes Provide No Private Right of Action Under Which Plaintiffs Can Sue Mr. Rees......................................7

    B. The SAC Does Not Allege the Elements Necessary to State a Claim for Intentional Infliction of Emotional Distress ..............................7

    C. The SAC Does not State a Claim For Employment Discrimination Under the New York State Human Rights Law Because it Does Not Allege Facts Showing That Jane Doe was a Employee of Rees or That She Suffered An Adverse Employment Action.........................................................11

D. The SAC Does Not State a Claim Under Section 52-b of the New York Civil Rights Law Because There are No Allegations Concerning the Dissemination of Nude or Sexual Images ...................................................................................14

E. The SAC Fails to Allege Facts Necessary to Establish the Elements of a Claim for Tortious Interference with Contract or Perspective Economic Advantage ...............................................16

    1. Tortious Interference with Contract...............................................16

    2. Prospective Economic Advantage .................................................18

F. The SAC Does Not Alleged Facts Sufficient to State a Claim for Intentional Interference with Prospective Business Relationship ...........................................................................................20

G. The SAC Does Not State a Claim of Forced Labor in Violation of *18 U.S.C. § 1589*...................................................................21

CONCLUSION...................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662, (2009)................................................................................2, 3

*Areu v. Fox News Network, LLC*, No. 20-CV-8678 (RA),
2021 U.S. Dist. LEXIS 171332 (S.D.N.Y. Sep. 9, 2021) ....................................12

*AYDM Assocs., LLC v. Town of Pamelia*,
205 F.Supp.3d 252 (N.D.N.Y. 2016).................................................................17

*Bayside Carting, Inc. v. Chic Cleaners*,
240 A.D.2d 687 (2d Dept. 1997)........................................................................17

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................................2

*B&M Linen, Corp. v. Kannegiesser, USA Corp.*,
679 F. Supp. 2d 474 (S.D.N.Y. 2010) ...............................................................21

*Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am.*,
299 A.D.2d 204 (App. Div. 1st Dep't 2002).......................................................17

*Chanko v. Am. Broad. Companies Inc.*,
49 N.E.3d 1171 (N.Y. 2016) ...............................................................................8

*Eat it Corp v. Keumkang B & F Co.*,
No. 15-CV-4763 (DLI) (PK), 2018 U.S. Dist. LEXIS 27104
(E.D.N.Y. Feb. 16, 2018) ...............................................................................19, 21

*Ebomwonyi v. Sea Shipping Line*,
473 F. Supp. 3d 338 (S.D.N.Y. 2020) .................................................................6

*Eves v. Ray*,
42 A.D.3d 481 (App. Div. 2d Dep't 2007)..........................................................10

*Forrest v. Jewish Guild for the Blind*,
3 N.Y.3d 295 (2004)............................................................................................13

*Fridia v Henderson*,
2000 U.S. Dist. LEXIS 17295 (S.D. N.Y., Nov. 30, 2000)................................14

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
248 F. Supp. 3d 487 (S.D.N.Y. 2017) ...............................................................19

*GmbH v. Enzo Biochem, Inc.*,
992 F. Supp. 2d 213 (S.D.N.Y. 2013) ................................................................20

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ................................................................................2

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010) ..............................................................................3

*HC2, Inc. v. Delaney*,
510 F. Supp. 3d 86 (S.D.N.Y. 2020) ..................................................................8

*Hemant Patel, M.D., P.C. v. Bandikatla*,
2025 U.S. App. LEXIS 30694 (2d Cir. Nov. 24, 2025) ........................................23

*High Falls Brewing Co. v. Boston Beer Corp.*,
513 F. App'x 12, 13, 2013 U.S. App. LEXIS 3911 (2d Cir. 2013) .......................21

*Howell v. N.Y. Post Co.*,
612 N.E.2d 699 (N.Y. 1993) ..............................................................................8

*Jiajia Luo v. Sogou, Inc.*,
465 F. Supp. 3d 393 (S.D.N.Y. 2020) ................................................................2

*Johns v. Cnty. of San Diego*,
114 F.3d 874 (9th Cir. 1997) ............................................................................6

*Katz v Beth Israel Med. Ctr.*,
2001 U.S. Dist. LEXIS 29 (S.D.N.Y. Jan. 4, 2001) .............................................13

*Lama Holding Co. v. Smith Barney Inc.*,
668 N.E.2d 1370 (N.Y. 2016) ............................................................................17

*Lyndonville Sav. Bank & Trust Co. v. Lussier*,
211 F.3d 697 (2d Cir. 2000) ..............................................................................5

*Martinez v. N.Y.C. Dep't of Educ.*,
No. 04 Civ. 2728 (LTS), 2008 U.S. Dist. LEXIS 41454
(S.D.N.Y. May 27, 2008) ....................................................................................14

*Martin v. Citibank,
N.A.*, 762 F.2d 212 (2d Cir. 1985)......................................................................8

*Matter of Aurecchione v. NYS Div. of Human Rights*,
98 N.Y.2d 21, 771 N.E.2d 231, 744 N.Y.S.2d 349 (2002)....................................12

iv

*Matthaus v. Hadjedj*,
148 A.D.3d 425 (App. Div. 1st Dep't. 2017) ...................................................................10

*Medcalf v. Walsh*,
938 F. Supp. 2d 478 (S.D.N.Y. 2013) ......................................................................10, 11

*Miller v. European Am. Bank*,
921 F. Supp. 1162 (S.D.N.Y. 1996) .................................................................................5

*Mira v. Harder,*
177 A.D.3d 426 (App. Div. 1st Dept. 2019) ...................................................................16

*Moynihan v. NYC Health and Hospitals Corp.*,
120 A.D.3d 1029 (App. Div. 1st Dep't 2014) .................................................................20

*Patterson v. Resorts*,
2023 U.S. Dist. LEXIS 242300 (E.D.N.Y. Nov. 28, 2023) ...............................................4

*Penrose Computer Marketgroup, Inc. v. Camin*,
682 F. Supp. 2d 202 (N.D.N.Y. 2010) .......................................................................19, 20

*Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*,
813 F. Supp. 2d 489 (S.D.N.Y. 2011) .............................................................................17

*Pyskaty v. Wide World of Cars, LLC*,
856 F.3d 216 (2d Cir. 2017) .............................................................................................4

*Reed v. A.W. Lawrence & Co., Inc.*,
95 F.3d 1170 (2d Cir. 1996) ...........................................................................................12

*Reeves v. Wilkins*,
10-CV-2766, 2012 U.S. Dist. LEXIS 125273 (E.D.N.Y. Aug. 31, 2012) ........................7

*Roche Diagnostics GmbH v. Enzo Biochem, Inc.*,
992 F. Supp. 2d 213 (S.D.N.Y. 2013) .............................................................................19

*R&R adopted*,
2023 U.S. Dist. LEXIS 28048 (N.D.N.Y. Feb. 21, 2023) ................................................7

*Russian Fed'n ex rel. LeVesque v. United States*,
No. 8:24-CV-772 (DNH/CFH), 2024 U.S. Dist. LEXIS 229787
(N.D.N.Y. Nov. 22, 2024) .................................................................................................6

*Shidagis v. Broome Cty. D.S.S.*,
No. 3:23-CV-0031 (BKS/ML), 2023 U.S. Dist. LEXIS 7337
(N.D.N.Y. Jan. 17, 2023) .................................................................................................7

*Specht v. City of N.Y.*,
  15 F.4th 594 (2d Cir. 2021) ........................................................................................8

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
  374 F.3d 158 (2d Cir. 2004) ......................................................................................19

*Tagare v. NYNEX Network Sys. Co.*,
  994 F. Supp. 149 (S.D.N.Y. 1997) .............................................................................11

*Thygesen v. N. Bailey Volunteer Fire Co., Inc.*,
  2011 NY Slip Op 34292(U) (Sup. Ct.) ......................................................................12

*Truman v. Brown*,
  434 F. Supp. 3d 100 (S.D.N.Y. 2000) .........................................................................9

*Turban v. Bar Giacosa Corp.*,
  No. 19-cv-1138, 2019 U.S. Dist. LEXIS 128832 (S.D.N.Y. Aug. 1, 2019) .......................4, 5

*Turley v. ISG Lackawanna, Inc.*,
  774 F.3d 140 (2d Cir. 2014) ........................................................................................8

*Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*,
  455 F. App'x 102 (2d Cir. 2012) ...............................................................................21

*Wolff v. Rare Medium, Inc.*,
  210 F. Supp. 2d 490 (S.D.N.Y. 2002) .......................................................................17

*Wood v. Maguire Auto., LLC*,
  508 F. App'x 65 (2d Cir. 2013) ...................................................................................4

*York v. Ass'n of the Bar*,
  286 F.3d 122 (2d Cir. 2002) ......................................................................................12

*16 Casa Duse, LLC v. Merkin*,
  791 F.3d 247 (2d Cir. 2015) ......................................................................................21

**Statutes and Rules**

CPLR § 308 ...............................................................................................................3

Fed. R. Civ. Proc. 11 ...............................................................................................5,6

Fed. R. Civ. Proc. 12 ...............................................................................................6

HRL, Executive Law § 296 .....................................................................................11

NYCRL § 52-b ....................................................................................................................15

N.Y. Penal Law § 190.77 ....................................................................................................7

18 U.S.C. § 1589 ........................................................................................................4, 22, 23

18 U.S.C. § 1595 ...............................................................................................................23

28 U.S.C. § 1331 ..................................................................................................................4

28 U.S.C. § 1332 .............................................................................................................4, 5

## PRELIMINARY STATEMENT

Plaintiffs' pleadings in this case attempt to cast interpersonal disputes as actionable federal claims. At bottom, however, this case arises from personal grievances and strained relationships–not from conduct that gives rise to plausible, cognizable claims for legal liability. To be sure, several of Plaintiffs' allegations, accepted as true, describe a troubling narrative regarding the relationship between Plaintiff Jane Doe and Defendant Jonathan Rees. But federal courts are not venues for adjudicating private discord. As the Plaintiffs concede, there are proceedings in numerous other courts related to the disputes laid out in the Second Amended Complaint ("SAC") (ECF No. 56). Stripped of its conclusory language, the SAC reflects personal dissatisfaction void of any viable legal theories. Despite its many paragraphs, the SAC lacks even the barest assertion of the facts necessary to support the claims alleged therein. Because it fails to state any claim upon which relief could be granted, Mr. Rees respectfully requests that this Court dismiss the case in its entirety.

## FACTUAL BACKGROUND

The SAC alleges claims arising from late 2022 to early 2023, during which time Plaintiff and her three children had moved into Mr. Rees' home.  It asserts a litany of supposed misconduct by Mr. Rees during this period, including yelling at Plaintiff Jane Doe (¶ 41), trying to take one of Jane Doe's sons beaver hunting in the dark (¶ 39), hurting Jane Doe's finger by closing the lid of a computer on it (¶ 42); causing cigar ash to fall on Jane Doe (¶ 60) and stealing Jane Doe's Vitamix blender (¶ 68). The SAC alleges that after Jane Doe moved out of Mr. Rees' home, she "severed all communication with Defendant" in March 2023 (¶ 85). It neglects to acknowledge that in August 2023, Plaintiff returned to Mr. Rees' home wearing a mask, armed with a rifle and

fired multiple shots in Mr. Rees' direction, which led to her arrest and subsequent indictment. Hugel Decl. Ex. A.

The Court is familiar with the course of proceedings in this case, as detailed in the Court's previous orders ruling on the parties' briefing regarding default judgment dated March 17, 2025 and March 9, 2026. ECF No. 55 at 1–4; ECF No. 97 at 1–4, 7–9. A few weeks ago, this Court observed that Mr. Rees has "meritorious defenses to Plaintiffs' claims," including "ample factual and legal support for potentially meritorious arguments for dismissal of each of Plaintiffs' claims." ECF No. 97 at 12. In that Order, the Court directed, among other procedural matters, that Mr. Rees answer or otherwise respond to Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 56) on or before March 30, 2026. ECF No. 97.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Legal conclusions are not entitled to any assumption of truth, nor are they mere recitals of the elements of a cause of action. *Id.* When the claims in a complaint have not crossed the line from "conceivable to plausible," the complaint must be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A complaint must offer more than 'labels and conclusions,' or 'a formulaic recitation of the elements of a cause of action,' or 'naked assertion[s]' devoid of 'further factual enhancement' in order to survive dismissal." *Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 405 (S.D.N.Y. 2020) (quoting *Twombly*, 550 U.S. at 555, 557)). To determine plausibility, courts follow a "two-pronged approach." *Iqbal*, 556 U.S. at 679. "First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by

2

mere conclusory statements, do not suffice." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, a court determines "whether the 'well-pleaded factual allegations,' assumed to be true, 'plausibly give rise to an entitlement to relief.'" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

**ARGUMENT**

I.  **DEFENDANT WAIVES ANY DEFECTS WITH RESPECT TO SERVICE OF PROCESS BUT THE SAC FAILS TO ALLEGE FACTS SUFFICIENT TO SUPPORT SUBJECT MATTER JURISDICTION.**

   A.  **It is Unclear if Plaintiff has Complied with the Court's Order Regarding Service of the SAC, But Mr. Rees Waives any Defect in Service.**

In its order of March 9, 2026 (ECF No. 97), the Court: (1) directed Mr. Rees's counsel to "file a letter on the docket, within seven days of [the March 9 Order] providing Plaintiffs with an address where service of the [SAC] will be accepted, and (2) direct Plaintiff to effect "service upon [Mr. Rees's] attorneys pursuant to CPLR 308(5)" to the address provided by Mr. Rees's counsel. ECF No. 97 at 9. The Court's order required Jane Doe to serve Mr. Rees through his counsel by Monday, March 23, 2026. *Id.* at 16.

Pursuant to the Court's order, on March 16, 2026, Gordon Rees Scully Mansukhani, LLP, counsel for Mr. Rees, filed a letter stating that the firm would accept service of the SAC and summons at their address on behalf of Mr. Rees at their office address indicated on the letter. ECF No. 98. As of the date of this motion, Gordon Rees advises us that it has yet to receive service of the SAC.

On March 26, 2026, the Court so-ordered a stipulation substituting the undersigned attorneys at Clayman Rosenberg Kirshner & Linder LLP as counsel for Mr. Rees in place of Gordon Rees Scully Mansukhani, LLP. ECF No. 101. On March 26, 2026, Jane Doe emailed the Second Amended Complaint to Mr. Rees new counsel (Hugel Decl. ¶ 2) and filed an unsworn

3

"status report" (ECF No. 102) stating that she mailed the SAC to Mr. Rees's former attorneys at Gordan Rees Scully Mansukhani, LLP, and emailed it to his present attorneys at Clayman Rosenberg Kirshner & Linder LLP.

Based on the above, it is unclear if Plaintiff has complied with the Court's March 9 order. Defendant is, however, cognizant that the Court's patience has worn thin with respect to service of process issues in this matter. If the Court finds that Plaintiff's purported service did not comply with the Court's March 9 Order, Mr. Rees hereby waives any such defect in service.

## B. The Second Amended Complaint Fails to Allege a Basis for This Court to Exercise Subject Matter Jurisdiction.

The SAC alleges in the jurisdictional statement that the court has jurisdiction under both 28 U.S.C. § 1331 (federal question) and § 1332(a) (diversity). SAC ¶¶ 7–8. However, the sole federal claim alleged in the complaint is a violation of 18 U.S.C. § 1589 (Forced Labor), a claim for which this Court previously expressed deep skepticism, and which is facially deficient as set forth in Point III (G) below.

While the SAC alleges the existence of diversity jurisdiction, the only allegation concerning the amount in controversy is contained in a paragraph reciting the diversity statute that states "[t]he Court has subject matter jurisdiction, pursuant to 28 U.S.C. § 1332(a)(1) based on Diversity of Citizenship, in that the action is between a citizen of New York and a citizen or subject of a different state, and because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest or costs." SAC ¶ 7. Beyond this conclusory statement, there are only stray references to "monetary" harm, "economic" harm, "earnings," "wages," and the like. *See* SAC ¶ 112 ("Plaintiffs bring this action seeking . . . monetary relief against Defendant), ¶ 132 ("Jane Doe has suffered and continues to suffer significant monetary and economic harm, including lost wages, and diminished career opportunities"), *id.* ("[Jane Doe] is entitled to an award of

4

compensatory damages to address these economic losses"). The SAC contains no allegations, even in the *ad damnum* clause, of any actual dollar amount of damages alleged to have been suffered by either of the Plaintiffs, much less a factual basis to support a calculation of such damages.

A conclusory boilerplate recital of the diversity jurisdiction statute is "not entitled to a presumption of truth." *Wood v. Maguire Auto., LLC*, 508 F. App'x 65, 65 (2d Cir. 2013); *Turban v. Bar Giacosa Corp.*, No. 19-cv-1138, 2019 U.S. Dist. LEXIS 128832, *2 (S.D.N.Y. Aug. 1, 2019) ("[T]he Court is not required to presume that bare allegations in the complaint are a good faith representation of the actual amount in controversy."). As such, the SAC does not allege facts sufficient to establish that the amount in controversy exceeds $75,000 as required to satisfy the diversity jurisdiction requirement of 28 U.S.C 1332(a). *Miller v. European Am. Bank*, 921 F. Supp. 1162, 1167 (S.D.N.Y. 1996) (dismissing complaint for lack of subject matter jurisdiction stating "the amount in controversy must appear on the face of the complaint or be established by proof that the matter in controversy exceeds [the jurisdictional threshold], exclusive of interest and costs"). "Failure of subject matter jurisdiction is not waivable and may be raised at any time by a party or by the court *sua sponte*. If subject matter jurisdiction is lacking, the action must be dismissed." *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000). The Court should dismiss this action for lack of subject matter jurisdiction because the Complaint does not allege facts showing that the amount in controversy is above the $75,000 statutory threshold.

## II.    JOHN DOE'S CLAIMS MUST BE DISMISSED BECAUSE HE IS NOT. PROPERLY A PARTY TO THE CASE

The Federal Rules of Civil Procedure provide that pleadings and court documents must be signed by an attorney of record or ***by a party personally*** if they are unrepresented. Fed. R. Civ. P. 11(a). "No pro se plaintiff may sign pleadings on behalf of another plaintiff." *Johns v. Cnty. of San*

*Diego*, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, [h]e has no authority to appear as an attorney for others than himself." (internal quotation marks omitted).

Neither Plaintiff has retained an attorney of record in this case. As noted by the Court, John Doe has not signed the Second Amended Complaint or any other pleading to date. ECF 97 at 15 n.5.  Instead, Jane Doe has repeatedly filed papers in this case seeking relief for both herself and for John Doe. *See* SAC at 37. But Jane Doe, who is not an attorney, cannot serve, file, or sign any papers on John Doe's behalf. "A litigant does not have authority to represent third parties or add them as co-plaintiffs when the litigant is not an attorney." *Russian Fed'n ex rel. LeVesque v. United States*, No. 8:24-CV-772 (DNH/CFH), 2024 U.S. Dist. LEXIS 229787, *4 (N.D.N.Y. Nov. 22, 2024) (collecting cases). Actions by pro se litigants brought on behalf of others are subject to dismissal. *See Ebomwonyi v. Sea Shipping Line*, 473 F. Supp. 3d 338, 346 (S.D.N.Y. 2020) (dismissing claims brought in name of plaintiff because of Rule 11 violations, where the named plaintiff did not sign the complaint, where a pro se litigant attempted to bring claims on behalf of the named plaintiff, and where the pro se litigant was not a licensed attorney). This Court must dismiss John Doe as a plaintiff from this case.

Even if John Doe was properly named as a plaintiff in this action, the two claims asserted in the SAC which alleged injuries to him (the first and third causes of action) are deficient for the reasons set forth below in Sections III (B) and (D).

## III.   JANE DOE FAILS TO STATE ANY CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Each of the SAC'S claims fails as a matter of law. They fall into two categories. Mr. Rees first addresses the SAC's Seventh and Eighth causes of action, both of which fail because the claims for "Forgery" and "Identify Theft" are not cognizable private causes of action. Mr. Rees

next addresses the SAC's First through Sixth causes of action, which this Court should dismiss because the SAC does not allege facts that support the requisite elements of those claims.

**A. Plaintiffs' Forgery and Identity Theft Claims Must Be Dismissed Because the Statutes Provide No Private Right of Action Under Which Plaintiffs Can Sue Mr. Rees.**

Jane Doe's Seventh and Eighth causes of action (forgery and identity theft) must be dismissed because they improperly attempt to assert claims based on criminal statutes that provide no private rights of action.

The Court recently opined that Mr. Rees had "correctly argu[ed]" that "there is no private right of action for forgery or identity theft." ECF No. 97 at 12 (citing ECF No. 85-2 at 27–28); *see also Shidagis v. Broome Cty. D.S.S.*, No. 3:23-CV-0031 (BKS/ML), 2023 U.S. Dist. LEXIS 7337, *3 (N.D.N.Y. Jan. 17, 2023), *R&R adopted*, 2023 U.S. Dist. LEXIS 28048 (N.D.N.Y. Feb. 21, 2023) (explaining that individual plaintiffs have no private right of action in civil suits to enforce criminal statutes); *Reeves v. Wilkins*, 10-CV-2766, 2012 U.S. Dist. LEXIS 125273, *6 (E.D.N.Y. Aug. 31, 2012) ("New York does not provide a private cause of action for . . . forgery."); *see* N.Y. Penal Law § 190.77 *et seq.* (Consol., Lexis Advance through 2026 released Chapters 1-49, 61-89) (statute prohibiting identity theft providing no private right of action).

Absent an express or implied right of action, Jane Doe cannot sue Mr. Rees for alleged violations of criminal statutes because she is not entitled to any relief. Her alleged claims for forgery and identity theft must therefore be dismissed.

**B. The SAC Does Not Allege the Elements Necessary to State a Claim for Intentional Infliction of Emotional Distress.**

Plaintiffs' First Cause of Action alleges that Mr. Rees is liable for intentional infliction of emotional distress. The SAC alleges two categories of conduct giving rise to the claim: (1) Mr. Rees's possession of and behavior related to firearms, and (2) Mr. Rees's alleged

7

dissemination of videos of Jane Doe "containing falsehoods." None of the alleged conduct can support a claim for IIED.

"To state an IIED claim, a plaintiff must plausibly allege the existence of (1) extreme and outrageous conduct, (2) an intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Specht v. City of N.Y.*, 15 F.4th 594, 606 (2d Cir. 2021) (citing *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).

IIED is a "highly disfavored tort under New York law." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 104 (S.D.N.Y. 2020) (quoting *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (alterations adopted))."The first element—outrageous conduct—serves the dual function of filtering out petty and trivial complaints that do not belong in court and assuring that plaintiff's severe emotional distress is genuine." *Howell*, 612 N.E.2d at 702 (internal citation omitted). "The conduct alleged must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 104 (S.D.N.Y. 2020) (quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985) (internal quotation marks omitted)). This outrageousness element "is designed to filter out petty complaints and assure that the emotional distress is genuine." *Chanko v. Am. Broad. Companies Inc.*, 49 N.E.3d 1171, 1179 (N.Y. 2016); *see also Howell*, 612 N.E.2d at 702 (noting that "every one" of the IIED claims considered by the Court up to that date had "failed because the alleged conduct was not sufficiently outrageous"). "[F]alse accusations of criminal conduct, or conduct that society deems reprehensible do not inherently establish IIED." *Truman v. Brown*, 434 F. Supp. 3d 100, 119 (S.D.N.Y. 2000).

Here, Plaintiff's IIED claim fails as a matter of law for multiple reasons.

*First*, none of the facts alleged, taken as true, rise to the level of being "outrageous," "atrocious," or "utterly intolerable in a civilized society."

According to Plaintiffs, Defendant "illegal[ly] possess[ed] firearms" and engaged in "reckless behavior of brandishing these weapons" and on one occasion, he "coerce[d]" Jane Doe's children to "go [] out hunting beavers in the dark" while Mr. Rees was "under the influence of alcohol." SAC ¶ 115. The SAC describes this conduct as "alarming," *id.*, "dangerous," and "blatantly irresponsible," *id.* ¶ 116—but dangerous and irresponsible is not the same as outrageous, atrocious, or utterly intolerable in a civilized society. And, critically, there is nothing to suggest that Mr. Rees *intended*—through his possession of the firearm or through the evening hunting excursion—to cause Plaintiffs severe emotional distress.

Plaintiffs also allege that Mr. Rees captured videos of Jane Doe "containing falsehoods" and disseminated them on the internet, *id.* ¶ 118, and made defamatory statements to Jane Doe's "board members, film crew, management team, charity staff Jane Doe worked alongside, and Jane Doe and John Doe's friends . . . reporting that Jane Doe was dangerous, an attempted murderer, fraud and thief," *id.* ¶ 120.

The video(s) that Plaintiffs refer to involve security footage from inside Mr. Rees's home (the nature of the content of those videos is unspecified) and video of Jane Doe walking on Mr. Rees's property. Sharing video containing "falsehoods" or defamatory statements about Jane Doe does not rise to the level "extreme and outrageous conduct" under New York law. *Matthaus v. Hadjedj*, 148 A.D.3d 425, 425–26 (App. Div. 1st Dep't 2017) ("[P]laintiff's factual allegation that defendant made false statements to the police, causing her arrest and incarceration, was insufficient as a matter of law to constitute extreme and outrageous behavior to sustain the [IIED] claim."). Indeed, the video from Mr. Rees's property that Plaintiffs claims was shared to "derogatory"

9

websites, SAC ¶ 159, suggests that *she* entered Mr. Rees's property and engaged in threatening behavior. Again, there are no facts that show Mr. Rees intended to cause Plaintiffs severe emotional harm. The allegations suggest that Plaintiffs believe Mr. Rees's behavior was dangerous and irresponsible, but there is no factual support for the proposition that Mr. Rees had the specific purpose of causing Plaintiffs emotional harm.

Even if any of Mr. Rees's conduct could surpass the high bar set for "extreme and outrageous conduct" (it does not), Plaintiffs have provided nearly no facts to support a plausible case for severe emotional distress or the requisite causation. To qualify as "severe emotional distress" on an IIED claim, "the emotional distress suffered by the plaintiff must be so severe that no reasonable person could be expected to endure it." *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 490 (S.D.N.Y. 2013). The SAC's barebones, conclusory allegations as to these two required elements for a claim, s*ee* SAC ¶ 117 (Plaintiffs "experienced heightened anxiety, sleepless nights, and a pervasive sense of vulnerability"); ¶ 115 (Defendant's conduct "instilled a profound sense of fear and anxiety"); ¶ 116 ("Defendant's conduct . . . created an atmosphere of terror" for Plaintiffs); ¶ 116 (Plaintiffs "were left feeling helpless and deeply concerned for the safety of [Plaintiffs and Jane Doe's minor children]"), ¶ 121(Defendant's actions "with full knowledge that they would result in irreversible and lifelong consequences for Jane Doe and John Doe" and had a "detrimental impact on their mental well-being"); ¶ 123 (Defendant's conduct had the "sole purpose" of "harass[ing] and/or embarrass[ing] Plaintiffs"), are insufficient to sustain an IIED claim. *See Medcalf*, 938 F. Supp. 2d at 490 (dismissing IIED claim under New York law for failure to "make any non-conclusory allegation that [Plaintiffs] suffered severe emotional distress" or "identify any basis to believe that her distress was caused by" defendants' alleged acts). Without more, these allegations, rife with conclusory language and lacking any specific details, cannot sustain an IIED claim.

10

**C. The SAC Does Not State a Claim for Employment Discrimination Under the New York State Human Rights Law Because it Does Not Allege Facts Showing That Jane Doe Was an Employee of Rees or That She Suffered An Adverse Employment Action.**

The second cause of action alleges that Jane Doe was subjected to sexual harassment, gender discrimination, and a hostile work environment in violation of New York State Human Rights Law ("HRL"), Executive Law § 296.

As a threshold matter, the Complaint does not allege facts that establish that Plaintiff qualifies as an "employee" of Mr. Rees. "Like Title VII, the HRL's proscriptions against unlawful employment discrimination apply solely to employees." *Tagare v. NYNEX Network Sys. Co.*, 994 F. Supp. 149, 159 (S.D.N.Y. 1997).  The question of whether Plaintiff is an "employee" of Mr. Rees, and therefore covered under the HRL, is therefore antecedent to the question of whether she has asserted a valid claim for employment discrimination.

The HRL does not specifically define "employee," but the New York State Court of Appeals has held that because the HRL seeks to remedy the same type of discrimination as Title VII of the Civil Rights Act, federal case law is applicable. *Matter of Aurecchione v. NYS Div. of Human Rights*, 771 N.E.2d 231 (N.Y. 2002). Courts have therefore looked to Title VII cases to determine whether a party is an "employee" covered under the HRL. *Reed v. A.W. Lawrence & Co., Inc.*, 95 F.3d 1170, 1177 (2d Cir. 1996) (considering plaintiff's "state law claims in tandem with [the] Title VII claims because New York courts rely on federal law when determining claims under the New York Human Rights Law"); *Areu v. Fox News Network, LLC*, No. 20-CV-8678 (RA), 2021 U.S. Dist. LEXIS 171332, *26 (S.D.N.Y. Sep. 9, 2021) (dismissing HRL claims upon finding "[Plaintiff] is not a Fox News employee under state law for the same reasons she is not a Fox News employee under Title VII.")

11

Under Title VII, and the HRL, the question of whether a plaintiff is or is not an employee "turns on whether he or she has received direct or indirect remuneration from the alleged employer." *York v. Ass'n of the Bar*, 286 F.3d 122, 125 (2d Cir. 2002). Where the purported employee gains no financial benefit from the alleged employer, no employment relationship exists. *Thygesen v. N. Bailey Volunteer Fire Co., Inc.*, 2011 NY Slip Op 34292(U), 6 (Sup. Ct.).

Nowhere in the 190 paragraphs of the SAC is there any allegation that Plaintiff received remuneration from Mr. Rees for any work she allegedly performed. The SAC alleges that Plaintiff moved into Mr. Rees' home with her three children as a result of Mr. Rees' "love bombing" and that, while there, she did work for a charity and a production company. SAC ¶¶ 15–16. It does not allege that she received any compensation for this work from either of these entities, much less that she received compensation from Mr. Rees. If Plaintiff had alleged that she received compensation from one of these companies for her work, that might make her an employee of that company for purposes of the HRL. It would not make her an employee of Mr. Rees. Since the SAC does not allege facts showing that Jane Doe was an employee of Mr. Rees, it cannot state an employment discrimination claim against him under the HRL.

Even if the SAC had alleged facts showing that Jane Doe was an "employee" of Mr. Rees, it would still fail to assert a viable claim under the HRL. To assert a discrimination claim under the HRL, the plaintiff must demonstrate: "(1) she or he is a member of a protected class, (2) she or he was qualified to hold the position, (3) she or he suffered an adverse employment action, and (4) the adverse action occurred under circumstances giving rise to an inference of discrimination." *Id.* at 874. Even assuming that Plaintiff's status as female makes her a member of a protected class and that her vague allegations about her work history show that she was qualified to hold the positions that she claims to have held, there is nothing in the SAC that shows she suffered an

12

"adverse employment action" or that this unidentified "adverse employment action" was a result of gender discrimination.

Under the HRL, an adverse employment action requires "a materially adverse change in the terms and conditions of employment." *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 306 (2004).

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. . A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation. . . .

*Id.* at 307. The SAC identifies the acts giving rise to the HRL claim as Mr. Rees' "inappropriate comments, unwanted physical contact, and a pattern of behavior that objectified Jane Doe" SAC ¶ 131. None of the alleged acts constitute "adverse changes in the terms and condition of employment." *Katz v Beth Israel Med. Ctr.*, 2001 U.S. Dist. LEXIS 29, *44 (S.D.N.Y. Jan. 4, 2001] ("Being yelled at, receiving unfair criticism, receiving unfavorable schedules or work assignments . . . do not rise to the level of adverse employment actions"); *Fridia v Henderson*, 2000 U.S. Dist. LEXIS 17295, *22, (S.D. N.Y., Nov. 30, 2000) (excessive work, denials of requests for leave with pay and a supervisor's general negative treatment of the plaintiff are not materially adverse changes in the terms, conditions or privileges of employment); *Martinez v. N.Y.C. Dep't of Educ.*, No. 04 Civ. 2728 (LTS), 2008 U.S. Dist. LEXIS 41454, *40 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor] publicly yelled at [the plaintiff] for various reasons or called him 'shit' . . . are not actionable."). The SAC therefore does not allege facts sufficient to satisfy the third element of a HRL claim.

13

Since it does not identify an actionable adverse employment action, the SAC also fails to satisfy the fourth element of an HRL claim—that the adverse employment action was motivated by discrimination. There are no allegations in the SAC that address this element in any fashion  If anything, Plaintiff appears to go out of her way in the SAC to ascribe Rees' alleged misconduct to supposed alcohol abuse and/or mental health issues (SAC ¶¶ 60, 73, 99, 100, 101, 115) as opposed gender bias, which is not mentioned once.

The SAC does not allege that Jane Doe was an "employee" of Rees, that Rees subjected her to an adverse employment action, or that this non-existent adverse employment action was motivated by gender discrimination.  As such, it fails to assert a claim under Section 290 of the New York State Human Rights Law.

**D.  The SAC Does Not State a Claim Under Section 52-b of the New York Civil Rights Law Because There are No Allegations Concerning the Dissemination of Nude or Sexual Images.**

The SAC claim under New York Civil Rights Law ("NYCRL") § 52-b (the Third Cause of Action) fails as a matter of law. It is fatally deficient because the SAC does not identify a single alleged image or video of her that depicts an unclothed or exposed person or a person engaging in sexual conduct.

NYCRL § 52-b provides:

Any person depicted in a still or video image, regardless of whether or not the original still or video image was consensually obtained, shall have a cause of action against an individual who, for the purpose of harassing, annoying or alarming such person, disseminated, or published, or threatened to disseminate or publish, such still or video image, where such image:

(a) was taken when such person had a reasonable expectation that the image would remain private; and

(b) depicts (i) **an unclothed or exposed intimate part of such person**; or (ii) such person **engaging in sexual conduct**, as defined subdivision ten of section 130.00 of the penal law, with another person; and

14

(c) was disseminated or published, or threatened to be disseminated or published, without the consent of such person.

N.Y. Civ. Rights Law § 52-b (emphasis added).

Plaintiffs allege that Mr. Rees captured videos, including through his Ring security system, of Jane Doe and her children while they were staying at his home. *See* SAC ¶ 137. Specifically, Plaintiffs seem to allege that some of these videos include "content captured in the privacy of his [g]uest bedrooms and bathrooms," *id.* ¶ 145, but the claim is primarily based on "manipulated video" depicting Jane Doe ***walking on Mr. Rees's property***, that Mr. Rees purportedly "edited to present her in a nefarious light." *Id.* ¶ 138. Plaintiffs say Mr. Rees "disseminated" these videos "on websites he created with the assistance of his enabler friends," *id.* ¶ 139, in order to "propagate falsehoods" about Jane Doe, *id.* ¶ 138.

Even assuming Jane Doe expected the video of her walking on Mr. Ree's property to remain private and that Mr. Rees did in fact disseminate the video, nowhere in the SAC does Jane Doe allege that she was "unclothed," "exposed," or "engaging in sexual conduct" of any video of her walking. This video cannot support liability under NYCRL § 52-b.

With respect to the allegation that there was also "content captured" in Mr. Rees's "[g]uest bedrooms and bathrooms," the claim still fails because the SAC does not allege that Mr. Rees disseminated or threatened to disseminate the videos, as required by the statute. Here, as in *Mira v. Harder*, Jane Doe has "fail[ed] to allege that she had any personal knowledge of [Mr. Rees] disseminating intimate images of her on social media with the intent to harass or annoy her." 177 A.D.3d 426, 427 (App. Div. 1st Dep't 2019). Without allegations explaining what images were captured and whether and to whom they were shared or threatened to be shared or for what purpose,

15

the mere fact that there may have been cameras throughout the inside of Mr. Rees's home does not establish a claim under N.Y. Civil Rights Law 52-b.

**E. The SAC Fails to Allege Facts Necessary to Establish the Elements of a Claim for Tortious Interference with Contract or Prospective Economic Advantage**

The fourth cause of action asserts claims for tortious interference with contract and tortious interference with prospective economic advantage. These are two distinct torts. Tortious interference with contract arises when a defendant causes a third-party to breach a contract with the plaintiff that was not terminable at-will. In contrast, tortious interference with prospective economic advantage arises when a defendant unlawfully causes a third party to end a non-contractual business relationship or a terminable at will contractual relationship with plaintiff.

The SAC's fourth cause of alleges that Mr. Rees communicated with unidentified persons with whom Jane Doe had business relationships and that this "disrupted her professional relationship [and] jeopardized her reputation within the industry."  SAC ¶ 151. These allegations do not state a claim for either tortious interference with contract or tortious interference with prospective economic advantage.

1. Tortious Interference with Contract.

To state a claim for tortious interference with contract, a plaintiff must allege "(1) the existence of a contract between the plaintiff and a third party, (2) the defendant's knowledge of the contract, (3) the defendant's intentional inducement of the third party to breach or otherwise render performance impossible, and (4) damages to the plaintiff." *Bayside Carting, Inc. v. Chic Cleaners*, 240 A.D.2d 687, 688 (2d Dept. 1997). "[T]o have a valid claim for tortious interference with a contract, the existence of a valid contract is required." *AYDM Assocs., LLC v. Town of Pamelia*, 205 F.Supp.3d 252, 275 (N.D.N.Y. 2016) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370 (N.Y. 2016)). Critically, plaintiffs must also establish proximate

16

causation—*i.e.* that the defendant's action was the proximate cause of the third-parties breach of a contract with plaintiff. *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 532 (S.D.N.Y. 2011) (citing *Cantor Fitzgerald Assocs., L.P. v. Tradition N. Am.*, 299 A.D.2d 204, 204, (App. Div. 1st Dep't 2002) ("An essential element of such claim is that the breach of contract would not have occurred but for the activities of the defendant.")); *see also Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 498 (S.D.N.Y. 2002) ("[T]he third party's breach must have been caused by the defendant, meaning that the breach would not have occurred but for the defendant's acts."). The Second Amended Complaint does not plead any of these elements.

*First*, as a threshold matter, Jane Doe does not allege the existence of any binding contract between her and a third party that can sustain this contract-based claim. The SAC does not identify any specific contract between Jane Doe and any third party. The absence of any identifiable contract is fatal to the tortious interference with contract claim.

*Second*, as there is no contract identified between Jane Doe and any third party, it follows that Mr. Rees is not alleged to have known about such a contract.

*Third*, Mr. Rees did not induce or otherwise render performance impossible as to any existing contract between Jane Doe and any third party. The SAC alleges that Mr. Rees and his "enablers" contacted "Jane Doe's talent management agency, publicists, business associates, sales agents, and distributors." SAC ¶ 150. Even assuming Mr. Rees contacted these individuals in what Jane Doe describes as "malicious conduct," *id.* ¶ 152, there are no allegations that any of those acts resulted in a third-party breaching a contract with Jane Doe. Indeed, because the SAC identifies no contract between Jane Doe and any of the identified parties (or subsequent breaches of any contract), her claim fails because she cannot plausibly show that Mr. Rees induced third parties to breach contracts that either did not exist or about which Mr. Rees did not know.

17

*Fourth and finally*, Jane Doe cannot show that she suffered damages as a result of Mr. Rees' alleged conduct. She claims that Mr. Rees "intentionally and unlawfully *interfered* with Jane Doe's existing affiliations and prospective business opportunities" *id.* ¶ 150; "disrupted her professional relationships"; "jeopardized her reputation" which led to "significant financial and emotional repercussions," *id.* ¶ 151. These alleged interferences, disruptions, and jeopardizing of Jane Doe's unspecified relationships that led to undetermined "substantial economic losses" and "lost contracts" that have had a "lasting impact on her career trajectory" are not sufficient to plausibly demonstrate a valid contract-based claim. *Id.* ¶154.

2. Prospective Economic Advantage.

For many of the same reasons, Jane Doe's claim alleging tortious interference with prospective economic advantage also fails. "Under New York law, in order to make out a prima facie case for tortious interference with prospective economic advantage, a plaintiff must establish (1) that [plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship." *Penrose Computer Marketgroup, Inc. v. Camin*, 682 F. Supp. 2d 202, 215 (N.D.N.Y. 2010) (internal quotation marks omitted); *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 171 (2d Cir. 2004). The SAC does not come close to plausibly making out these elements.

New York courts distinguish between claims for interference with binding contracts and claims for interference with business relationships or nonbinding agreements. The salient difference is that a claim based on a terminable, nonbinding agreement or business relationship requires a showing of unlawful or wrongful conduct. *Glob. Packaging Servs., LLC v. Glob.*

18

*Printing & Packaging*, 248 F. Supp. 3d 487, 494 (S.D.N.Y. 2017) (the requirement "distinguishes tortious interference with business relations from tortious interference with contract"); *Eat it Corp v. Keumkang B & F Co.*, No. 15-CV-4763 (DLI) (PK), 2018 U.S. Dist. LEXIS 27104, *6 (E.D.N.Y. Feb. 16, 2018) (the requirement that the defendant acted "with wrongful purpose or used dishonest, unfair, or improper means . . . is what distinguishes tortious interference with business relations from tortious interference with contract."). In other words, a plaintiff may not avail herself of the lower burden of actionable conduct unless she can point to a binding contract; when the contract is terminable at will or merely an expectation of future business relations, the plaintiff must meet the much higher bar of demonstrating nefarious conduct.

Jane Doe alleges that Mr. Rees and his "enablers" contacted various unnamed individuals with the specific intent to interfere with unidentified prospective business opportunities. SAC ¶ 150. But the SAC's allegations come nowhere near the required showing for tortious interference with prospective economic advantage.

Jane Doe "does not identify any third party with whom [she] lost the prospect of doing business as a result of [Rees's] actions," so her cause of action "fails as a matter of law." *Moynihan v. NYC Health and Hospitals Corp.*, 120 A.D.3d 1029, 1034 (App. Div. 1st Dep't 2014).

Nor does Jane Doe allege that Mr. Rees and his enablers "knew of [the alleged relationships]" or that they "intentionally interfered" when they contacted the third parties. *Penrose*, 682 F. Supp. 2d at 215. Mere recitation of language from the enumerated elements cannot suffice. There are no non-conclusory factual allegations that Mr. Rees engaged in any malicious or wrongful acts specifically directed at interfering with Jane Doe's relationships with undisclosed and unnamed third parties (as required for the third element). Nor are there any factual allegations that anything Mr. Rees did was the proximate cause of such an undisclosed party terminating or

19

abandoning relationships with Jane Doe (as required for the fourth element) or that any of these unidentified people terminated their business relationship with Plaintiff. And, even if Jane Doe could show that Mr. Rees's contact with a third party happened to cause a third party to terminate a relationship with Jane Doe, that would not be enough—the plaintiff must show that "the defendant's objective was to procure such a breach." *Roche Diagnostics GmbH v. Enzo Biochem, Inc.*, 992 F. Supp. 2d 213, 221 (S.D.N.Y. 2013). "Put simply, a defendant must specifically intend to interfere with the relevant contract." *Id.* An incidental effect will not suffice; the plaintiff must show "the target of the [defendant's] conduct" was the specific relationship affected. *High Falls Brewing Co. v. Boston Beer Corp.*, 513 F. App'x 12, 13, 2013 U.S. App. LEXIS 3911, *2 (2d Cir. 2013) (affirming motion to dismiss claim); *B&M Linen, Corp. v. Kannegiesser, USA Corp.*, 679 F. Supp. 2d 474, 485 (S.D.N.Y. 2010) (dismissing tortious interference claim where plaintiff "has not even tried to allege that the defendants intended to disrupt its business relations . . . much less offered any factual support for such a contention"). Jane Doe has failed to allege requisite targeting and intent.

Jane Doe also has not shown that Mr. Rees acted through "wrongful means"—i.e. "that the defendant's conduct was criminal or independently tortious or that the defendant engaged in the conduct for the sole purpose of inflicting intentional harm on the plaintiff." *Eat It Corp.*, U.S. Dist. LEXIS 27104, at *6–7. The Second Circuit has observed that the "wrongful means element sets a high bar." *16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 262 (2d Cir. 2015).

F. **The SAC Does Not Allege Facts Sufficient to State a Claim for Intentional Interference with Prospective Business Relationship**

The SAC's fifth cause of action alleges a claim for intentional interference with prospective business relationships. This is another name for tortious interference with prospective economic advantage, the tort alleged in the fourth cause of action. *Valley Lane*

20

*Indus. Co. v. Victoria's Secret Direct Brand Mgmt., L.L.C.*, 455 F. App'x 102, 105–06 (2d Cir. 2012) ("[t]ortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action."). The only difference between the interference with prospective economic advantage claim asserted in the fourth cause of action and the inference with prospective business relations claim alleged in the fifth cause of action is the acts by Mr. Rees alleged to form the basis for the claim. The fourth cause of action alleges this tort arises from Mr. Rees contacting unidentified people with whom Plaintiff is associated, while the fifth cause of action alleges it arises from Mr. Rees "creating and disseminating derogatory websites and false narratives to Jane Doe's sales agents, distributors, and business associates, falsely branding her as an attempted murderer, dangerous, thief, and fraudster." SAC ¶159.

This claim suffers from the same defects as the fourth cause of action. The SAC does not identify any person to whom Mr. Rees is alleged to have "disseminated derogatory websites and false narratives." It does not identify any person who ceased doing business with Jane Does as a result of these derogatory websites and false narratives or any. It does not allege that Mr. Rees knew of Jane Doe's relationship with the unidentified third parties to whom he allegedly disseminated websites and false narratives or that his intention was to interfere with Jane Doe's relationships with these unidentified persons. And, it does not identify any unlawful or independently tortious conduct by Mr. Rees. The allegation that Ree created "derogatory websites and false narratives" does not identify conduct that is unlawful or independently tortious as required to allege a claim for interference with prospective economic advantage.

### G. The SAC Does Not State a Claim of Forced Labor in Violation of 18 U.S.C. § 1589.

Plaintiffs' claim that Mr. Rees subjected Jane Doe to forced labor also fails.

18 U.S.C. § 1589(a) provides a private right of action to "an individual who is a victim of [the Trafficking Victims Protection Act ("TVPA")]." The TVPA makes it unlawful for anyone to "knowingly provide[] or obtain[] the labor or services of a person by any of the following means:

(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
(2) by means of serious harm or threats of serious harm to that person or another person";
(3) by means of abuse or threatened abuse of law or legal process"; or
(4) by means of any scheme, plan, pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a)(1)-(4); *id.* § 1595(a) (civil remedy).

The term "serious harm means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2); *Hemant Patel, M.D., P.C. v. Bandikatla*, 2025 U.S. App. LEXIS 30694, *6–7 (2d Cir. Nov. 24, 2025) (internal quotation marks omitted). As this Court has observed, "Section 1589 was intended to broaden the punishable conduct under the TVPA beyond what constitutes involuntary servitude," and makes "reach[able] cases of servitude achieved through nonviolent coercion—namely serious harm, the threat of serious harm, or the abuse or threatened abuse of legal process." ECF No. 55 at 9 (citing cases).

Here, Plaintiffs allege Mr. Rees violated Section 1589 by subjecting Jane Doe to forced labor. SAC ¶¶ 165–72. Specifically, Plaintiffs allege Jane Doe is a "victim" because Mr. Rees "groomed Jane Doe by luring her from Los Angeles to New York under false pretenses" for work and then subjected her to "working long hours" for his docu-series project and at his charity and she was not fairly compensated. *Id.* ¶¶ 166–67. She claims that Mr. Rees "manipulated" and

22

"emotionally blackmailed her" and "threaten[ed] legal repercussions" if she left the alleged positions she held at Mr. Rees's production company or the charity (Mr. Rees disputes she held any). *Id.* ¶ 168.

These allegations do not state a claim for forced labor. As the Court has previously observed, the allegations in earlier iterations of the complaint "[were] not sufficient to establish a violation of Section 1589," ECF No. 97 at 11, and this cause of action more closely resembles "allegations akin to a domestic dispute," *id.* at 10. To be sure, Plaintiffs allege that Mr. Rees threatened Jane Doe with reputational harm (*see*, *e.g.*, SAC ¶¶ 118, 127). But, critically, the sequence of events outlined in the SAC establishes that any sort of threat of "serious harm," as alleged, "occurred *after* Jane Doe performed unpaid work." ECF No. 55 at 10. Again, as the Court previously observed, Plaintiffs have not shown that there is *any* causal relationship between the alleged threats and the alleged unpaid work performed. After the Court's order, the SAC added factual allegations seemingly to cure the deficient pleading. But the allegations in Paragraph 168 do nothing to cure the fact that the alleged threats of harm occurred after Jane Doe stopped working for Rees (*see id.* at 11). Instead, the SAC now asserts that Mr. Rees threatened to harm *himself* and stated that there would be legal repercussions *from investors and the crew* if she departed from her alleged positions. SAC ¶ 168. As Mr. Rees explained in his motion to vacate the default, there still remains a fatal problem with Jane Doe's sequence of events: Not withstanding Mr. Rees's denial that Jane Doe ever performed any work for the docu-series, the docu-series *had not begun filming* at any time prior to December 2022 when Jane Doe allegedly stopped working for Mr. Rees. There was no crew that Mr. Rees's threats could harm. *See* ECF No. 85-3 (Rees Decl. to Cross-Motion to Vacate) ¶¶ 25–27.

This Court should dismiss Jane Doe's Sixth cause of action because she has presented no facts supporting her forced labor claim.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the Second Amended Complaint in its entirety.

Dated:       New York, New York
             March 30, 2026

                              CLAYMAN ROSENBERG
                              KIRSHNER & LINDER LLP
                              Attorneys for Defendant


                              _Paul Hugel_

By:          Paul S. Hugel
             Effie Blassberger
             305 Madison Avenue, Suite 650
             New York, New York 10165
             (212) 922-1080
             hugel@clayro.com
             blassberger@clayro.com

24