UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

JANE DOE, JOHN DOE,
            Plaintiffs,

  -against-                        **Case No. 3:24-cv-00274 (MAD/ML)**

JONATHAN REES aka GREG ELLIS aka JOHNATHAN
REES aka JONNY REES aka JACOB LORENZO,

            Defendant.

_____

**DECLARATION OF JOHN DOE IN SUPPORT OF PLAINTIFFS' JOINT OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

John Doe declares under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is
true and correct to the best of my knowledge and belief:

**I. WHO I AM**

1.  I am John Doe, Plaintiff in this action and the eldest child of Jane Doe. I am submitting this
    declaration in my own name and on behalf of the concerns shared by my siblings, who are
    also minors living in the same household. I make this declaration because what happened to
    my family did not only happen to my mother. It happened to all of us. And what we are
    afraid of is not abstract. It is specific, it is ongoing, and it is something this Court has the
    power to address.

2.  I adopt and incorporate by reference the Second Amended Complaint and my mother's
    declaration filed herewith. I have reviewed both and they accurately describe what
    happened to our family.

**II. WHAT HAPPENED TO US**

**A. We Were There**

3. My siblings and I were present at Defendant's property during the period my mother was working on his production. We stayed in the main house. We were not visitors passing through. We slept in the guest bedrooms. We used the bathrooms. We were in those spaces every day, trusting that we were guests in a private home where we had a reasonable expectation of privacy. We were children. We had no reason to believe we were being watched.

4. We did not know at the time that Defendant had placed cameras in those spaces. We found out later, after we had already left, when Defendant made clear to my mother that he had footage of us in those private spaces and intended to use it. I cannot fully describe what it felt like to learn that. We had been children in what we thought was a home. We now know that was not true.

**B. The Night We Left**

5. I was present on the night my mother announced we were leaving. I witnessed what Defendant did. I heard what happened. I saw my mother the following morning after he had assaulted her in the night, pulled her from the shower, and threw us outside with our belongings and our dog in the freezing cold. I saw my younger sister's distress after what Defendant had done to her. I helped my mom pack up our scattered belongings on the driveway and place them into the car before heading to the Hilton Hotel in Vestal, New York.

6. I am not going to describe every detail of that night in this declaration because my siblings should not have to read those details in a public court filing about themselves. But I want this Court to know that I was there, that what my mother has described is true, and that the night before we left was the most frightening night of my life.

**C. What Has Happened Since**

7. Since we left, our lives have not returned to normal. My mother had to move our family multiple times because Defendant posted our location and identifying information online. I

was removed from my school because of false allegations Defendant made. My siblings and I were subjected to multiple interrogations by CPS officers sent to our home and school based on false reports Defendant filed. Each time a CPS officer came to our door with Law Enforcement, my younger siblings were frightened they would be taken away from our mother and each other. Each time, we had to explain to people in authority that what Defendant was saying about our family was not true.

8. I lost athletic opportunities I had worked years toward because of the repeated disruptions to our family's stability. I do not raise this to ask for sympathy. I raise it because this Court should understand that the harm Defendant has caused is not limited to my mother's professional reputation or her career. It has shaped the lives of three children who had nothing to do with his scheme and no power to protect themselves from its consequences.

9. The defamatory website that remains live as the top search result for my mother's name contains a false allegation about my family that I have seen. My friends have seen it. People who know our family have seen it. I cannot search my mother's name without seeing it. My younger siblings will one day be old enough to search her name and find it if this Court does not act. That is not a hypothetical harm. That is what will happen if the website stays up.

## III. WHAT WE ARE AFRAID OF

### A. The Surveillance

10. My mother has asked me not to describe in detail what we know about the surveillance in this public declaration, and I am respecting that. There are legal reasons for that and I understand them. What I can say, in my own words, is this: we know that Defendant had cameras in the spaces where we slept and bathed. We know that he told my mother he had footage. We know that he used the existence of that footage as a threat to keep her silent. And we know that the threat was directed specifically at my younger sister.

11. My sister was a child when this happened. She is still a child. She has had to live with the knowledge that an adult male who climbed into her bed and held her against his body in the middle of the night may also have filmed her in private spaces in his home. I am her older brother. I am asking this Court, as plainly as I know how to ask: please do not let this case be dismissed. Please let us get to discovery. Please let us find out the full truth of what he had. Because my sister deserves to know, and she deserves protection, and right now she has neither.

**B. The Ongoing Campaign**

12. The defamatory websites, the false CPS reports, the false criminal complaint, and the Order of Protection Defendant obtained through his personal friendship with the local justice in Smithville who had been presiding over the criminal case Rees filed against my mother — and which was later vacated by the proper court — all of it has continued long after we left. We are not people who wronged this man. We are a family he recruited, deceived, assaulted, surveilled, and has spent two and a half years trying to destroy. Every time something new happens in this case — a new filing, a new CPS call, a new social media post — my siblings and I feel it.

13. My mother, my siblings and I have an Order of Protection against him, which includes an order for him to remove the website. He has moved to another state. He sold his house. And yet the website is still up. And yet he went back to that same justice in Smithville — his personal friend, the one who had been presiding over the criminal case Rees himself filed against my mother — and obtained a new three-year temporary protective order against her, without any hearing, without her knowledge, through a court that no longer had any jurisdiction over the case. Then he filed it in a federal case involving a different woman and posted it on social media. The proper court later vacated it. Nine months after he said he fled New York in fear of his life. A man who is genuinely afraid does not keep doing things

to the person he claims to fear. He keeps doing these things because he is not afraid of her. He is trying to harm her. And through her, he is harming us.

**C. What We Are Asking For**

I am not a lawyer. I am a young man in college who has helped my mother fight this case without any legal assistance while she raises three children, navigates a false prosecution, and contends with the ongoing destruction of her career by a website that remains the first result when her name is searched. I originally intended to study Astronomy and Physics, but the experiences my family has endured at the hands of Defendant led me to change my major to Forensic Psychology; I now hope to work with the FBI profiling predators in order to protect other families from similar harm.

I am asking for three things on behalf of myself and my siblings.

First, I am asking this Court not to dismiss this case. We need the discovery process. We need the full truth to come out in a proceeding with proper legal authority to compel it. My mother and I cannot get there without this case surviving.

Second, I am asking this Court to order that website taken down. Not eventually. Now. Every day it is up is another day that anyone who searches my family's name finds those lies. My mother's career is not the only thing at stake. Our family's name is at stake.

Third, I am asking this Court to consider what Defendant has done to my younger sister specifically. She was a child when he held her against him in her bed and wouldn't let her leave. She was a child when she may have been filmed in a bathroom without her knowledge. She is still a child. This Court has equitable authority to protect her. I am asking this Court to use it.

**IV. CLOSING**

I understand that courts decide cases based on law and evidence. I am not asking this Court to decide based on emotion. I am asking this Court to recognize that behind the legal

arguments in mine and my mother's brief, there are two minor children whose lives have been materially harmed by what this man did, and who have no power to protect themselves except through this proceeding.

20. My mother has told the truth in every filing she has made in this Court. We have both complied with every order. Her and I have done this alone, without a lawyer, while my mother works to rebuild a career that he systematically destroyed. She deserves the chance to have this case heard on its merits. So do we.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief.

Executed on _____04/05_____, 2026

J. Doe
_____

John Doe

*Filed under pseudonym pursuant to the Court's prior order permitting the use of pseudonyms for Plaintiffs in this action. John Doe's true identity is known to the Court.*